**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JASON BRAUN and STEPHANIE CARTER,<br><br><br>Plaintiffs,<br><br>v.<br><br>THE PHILADELPHIA INQUIRER, LLC,<br><br><br>Defendant. | Case No. 2:22-cv-04185-JMY |

**<u>DEFENDANT THE PHILADELPHIA INQUIRER, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Angelo A. Stio, III
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
301 Carnegie Center
Suite 400
Princeton, New Jersey 08540

-and-

Ronald I. Raether
(admitted *pro hac vice*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
5 Park Plaza
Suite 1400
Irvine, CA 92614

*Attorneys for Defendant The Philadelphia Inquirer, LLC*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 4
        A.      The Philadelphia Inquirer ........................................................................ 4
        B.      Plaintiffs' Theory ..................................................................................... 4
        C.      Plaintiffs' Example of the Information Transmitted to Facebook .............. 5
        D.      Plaintiffs' Claims .................................................................................... 6

III.    LEGAL STANDARDS ...................................................................................... 6
        A.      Legal Standard Under Fed. R. Civ. Proc. 12(b)(1) ................................. 6
        B.      Legal Standard Under Fed. R. Civ. Proc. 12(b)(6) ................................. 7

IV.     LEGAL ARGUMENT ....................................................................................... 8
        A.      Plaintiffs Lack Article III Standing Because They Fail To Allege a
                Concrete Injury ...................................................................................... 8
        B.      Plaintiffs Fail to State a Claim Under the VPPA .................................... 13
                1.      Plaintiffs Fail to Allege the Inquirer Knowingly Discloses a
                        Consumer's Identity ................................................................... 13
                2.      Plaintiffs Fail To Allege Any "Specific Video Materials or
                        Services" Are Being Disclosed ................................................... 15
        C.      Plaintiffs Fail to State a Claim for a Violation of the PA Wiretapping Act ........ 17
                1.      The Complaint Fails to Allege the Contents of an Electronic
                        Communication Were Disclosed ................................................. 18
                2.      The PA Wiretapping Act Claim Fails Because Plaintiffs Consented
                        to the Disclosure of Any Alleged Information ............................. 19
                3.      The PA Wiretapping Act Claim Also Should be Dismissed
                        Because the Plaintiffs Have Impliedly Consented to the Alleged
                        Disclosures ............................................................................... 23

V.      CONCLUSION ................................................................................................ 25

-i-

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................7

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*,
473 F.3d 506 (3d Cir. 2007)..................................................................................7

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009)..................................................................24

*Barclift v. Keystone Credit Servs.*,
2022 WL 1102122 (E.D. Pa. Apr. 13, 2022)
*appeal filed*, No. 22-1925 (3d Cir. May 13, 2022) ...............................................9

*Buckley v. Early Warning Servs., LLC*,
2021 WL 5413887 (E.D. Pa. Sept. 28, 2021) ........................................................9

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)...............................................................................23

*Centrella v. Barth*,
633 F.Supp. 1016 (E.D. Pa. 1986) .......................................................................12

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998)...................................................................................8

*Colburn v. Upper Darby Township*,
838 F.2d 663 (3d Cir. 1988)...................................................................................7

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020) ........................................................................19, 22, 24

*Commonwealth v. Diego*,
119 A.3d 370 (Pa. Super. 2015)...........................................................................23

*Commonwealth v. Proetto*,
771 A.2d 823 (Pa. Super. 2001)...........................................................................23

*Constitution Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014)...................................................................................7

*Cottrell v. Alcon Labs.*,
874 F.3d 154 (3d Cir. 2017)...................................................................................8

*Del. River Waterfront Corp. v. Wellspring Software, Inc.*,
  2022 WL 17869139 (E.D. Pa. Dec. 22, 2022) ....................................................................21

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
  232 F.3d 173 (3d Cir. 2000)..............................................................................................12

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ......................................................................................11, 14

*Fraser v. Nationwide Mut. Ins. Co.*,
  352 F.3d 107 (3d Cir. 2004)..............................................................................................18

*Garcia v. Enter Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ..............................................................................22

*Genesis Bio–Pharmaceuticals, Inc. v. Chiron Corp.*,
  27 Fed. Appx. 94 (3d Cir. Jan. 10, 2002)..........................................................................12

*Gilday v. Dubois*,
  124 F.3d 277 (1st Cir. 1997) ............................................................................................18

*Gould Elecs. Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000)................................................................................................7

*Hendrick v. Aramark Corp.*,
  263 F. Supp. 3d 514 (E.D. Pa. 2017) ..............................................................................6, 9

*Ideal Aerosmith, Inc. v. Acutronic United States, Inc.*,
  2007 WL 4394447 (W.D. Pa. Dec. 13, 2007)...................................................................17

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................18

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..........................................................................................24

*Martin v. Meredith Corp.*,
  No. 22-cv-4776 (DLC),
  2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023)........................................2, 15, 16, 17

*Massie v. Gen. Motors LLC*,
  2022 WL 534468 (D. Del. Feb. 17, 2022) ..........................................................................9

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016)................................................................................... *passim*

*Oxenberg v. Sec'y U.S. Dep't Health & Hum. Servs.*,
  2022 WL 336996 (3d Cir. Feb. 4, 2022) ............................................................................9

*Pearson v. Tanner*,
   513 Fed. App'x. 152 (3d Cir. 2013)..................................................................8

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) ........................................................................19

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015).............................................................11

*Smith v. Facebook, Inc.*,
   745 F.App'x. 8 (9th Cir. 2018) .....................................................................22

*Spokeo, Inc. v. Robins*,
   578 U.S. 330, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016)...............................4, 9

*State v. Townsend*,
   147 Wash.2d 666 (2002)...............................................................................22

*Tomaszewski v. Trevena, Inc.*,
   482 F. Supp. 3d 317 (E.D. Pa. 2020) ............................................................20

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)...................................................................................9

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .........................................................11

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ......................................................................18

**Statutes**

18 Pa.C.S.A. § 5703 ............................................................................................17

18 Pa.C.S.A. § 5702 ............................................................................................17

18 Pa.C.S.A. § 5704(4) ........................................................................................19

18 U.S.C. § 2710(b)(1) ........................................................................................13

PA Wiretapping Act....................................................................................... *passim*

Video Privacy Protection Act ......................................................................... *passim*

**Other Authorities**

*Fed. R. Civ. Proc.* 12(b)(1) ....................................................................6, 7, 12, 24

*Fed. R. Civ. Proc.* 12(b)(6) .......................................................................7, 12, 24

S. Rep., No. 100-599..............................................................................................................15

U.S. Constitution Article III...........................................................................3, 8, 12, 24

## I.    INTRODUCTION

Defendant, The Philadelphia Inquirer, LLC (the "Inquirer"), is a news media company that owns and operates, among other things, *The Philadelphia Inquirer*, the nation's third longest continually operating daily newspaper. Plaintiffs Jason Braun and Stephanie Carter (the "Plaintiffs") are Facebook users and paid subscribers to *The Philadelphia Inquirer's* digital content. Plaintiffs have sued the Inquirer claiming generally, that the Inquirer unlawfully disclosed to Facebook their Facebook User ID ("FID") and the titles to specific videos that they requested or viewed when they logged on to *The Philadelphia Inquirer* webpage or mobile application. Plaintiffs claim that the disclosure of their FIDs and the URLs to webpages they visited was made without their consent and in violation of the Video Privacy Protection Act ("VPPA") and the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("PA Wiretapping Act"). As explained in this memorandum of law, even if Plaintiffs' well-pleaded allegations are taken as true, their claims fail and must be dismissed as a matter of law because close scrutiny of those claims reveals the absence of any allegations that the Inquirer violated the VPPA or the PA Wiretapping Act.

First, the VPPA claim must be dismissed because Plaintiffs have not plausibly alleged the essential elements to assert a cognizable claim. For there to be a violation of the VPPA, Plaintiffs must allege a knowing disclosure to a third party of (1) Plaintiffs' identities, **and** (2) the specific titles of videos they requested or viewed on the Inquirer.com website or the mobile application. Neither of these elements are present in the Complaint. The FID that Plaintiffs claim discloses their identities is a digital cookie that Facebook creates and Facebook assigns to Facebook users like Plaintiffs. Under the Third Circuit's holding in *In re Nickelodeon Consumer Privacy*

*Litigation*,[1] this type of digital cookie identifier is not personally identifiable information under the VPPA because it is not the type of information that would easily enable an ordinary person to identify an individual.  On this basis, the Third Circuit in *In re Nickelodeon Consumer Privacy Litigation* affirmed the dismissal of a VPPA claim for failure to allege the essential element of personally identifiable information under the VPPA.[2]  This precedent requires the same result here.

In addition, the VPPA claim also must be dismissed because the URL containing the name of a webpage that an Inquirer subscriber may have visited, does not constitute the disclosure of video viewing information to support a cognizable claim.  Recently, the United States District Court for the Southern District of New York, in *Martin v. Meredith Corp.*[3], dismissed a VPPA claim based on almost identical allegations to those alleged here.  In *Martin*, like here, the plaintiff alleged that the disclosure of a URL to a webpage was sufficient to satisfy the VPPA element of a disclosure of video viewing information.  The *Martin* court made quick work of plaintiff's argument finding that "[s]imply sending a URL of a People.com webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services."[4]  Like *Martin*, the Complaint here cites to a URL that does not identify any video or any titles to a video that the named Plaintiffs requested or viewed.  At best the example of the information transmitted to Facebook, as outlined in paragraph 51 of the Complaint, identifies a URL to a webpage.  This is insufficient as a matter of law to support a VPPA claim, and therefore, like *Martin*, this Court should dismiss Plaintiffs' VPPA claim here.

---

[1] 827 F.3d 262 (3d Cir. 2016).

[2] *Id.*, at 267.

[3] No. 22-cv-4776 (DLC), 2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023).

[4] *Id.*, at *10.

Second, the PA Wiretapping Act claim also must be dismissed.  The PA Wiretapping Act claim fails because Plaintiffs do not allege the essential element of the interception of the "contents of an electronic communication" to support a cognizable claim.  The FID and URL data that Plaintiffs claim is transferred to Facebook without their consent is not substantive information about the content of a communication, but rather is "transactional information" about an electronic communication taking place.  Since the disclosure of transactional information is not prohibited under the PA Wiretapping Act, the claim should be dismissed on this basis.

Separately, the PA Wiretapping Act claim should be dismissed because Plaintiffs expressly consented to the Inquirer sharing their personal information under the Inquirer's Privacy Policy. Plaintiffs also impliedly consented to the sharing their personal information through their use of the internet and by becoming as Facebook users who agreed to have their internet actions tracked via the Facebook Cookie that Facebook assigns to them and installs on their web browsing devices. Plaintiffs' express and implied consent to the sharing of information disposes of any claimed violation of the PA Wiretapping Act asserted here.

Finally, the Complaint also should be dismissed in its entirety because Plaintiffs cannot meet the Article III standing requirements for purposes of pursuing their VPPA claim and PA Wiretapping Act claim.  Plaintiffs do not plausibly allege any cognizable injury they sustained from the purported sharing of their video viewing information.  Indeed, Plaintiffs generally allege that they were harmed from the violation of their rights to privacy in their video-viewing habits. The well-pleaded allegations in the Complaint, however, conclusively establish that information concerning the Plaintiffs' video-viewing habits is not being shared with Facebook.  Thus, without plausible allegations of private information concerning video-viewing habits being shared,

Plaintiffs have no concrete harm to establish Article III standing to pursue their VPPA and PA Wiretapping Act claims.[5]

## II.    FACTUAL BACKGROUND

### A.    The Philadelphia Inquirer

The Philadelphia Inquirer, LLC (the "Inquirer") is a news media company that owns *The Philadelphia Inquirer*, the third longest continually operating daily newspaper in the United States. Complaint, Dkt. No. 28 ("Compl."), ¶¶ 16, 27.[6]  The Inquirer also owns and operates a website, www.Inquirer.com, and a mobile application,[7] which provide digital news coverage and community interest stories to subscribers on an ongoing basis.  Compl., ¶¶ 16, 27, 31. The news coverage and community interest stories offered on Inquirer.com, come in the form of news articles and/or a news article with an embedded video in it.  *Id.*, ¶¶ 50-51.

### B.    Plaintiffs' Theory

Plaintiffs' claims in this case are based on the contention that Inquirer.com allowed Facebook to install a Meta Pixel on its website and this pixel enabled Facebook to receive subscribers' video viewing information when they are logged in and/or when they viewed videos on the Inquirer.com website or mobile application.  *Id.*, ¶ 5.  The video viewing information that

---

[5] *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635, 644 (2016) (recognizing that "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist" for there to be standing) (internal citations omitted).

[6] The Inquirer accepts as true, solely for purposes of this Motion to Dismiss, the well-pleaded allegations in the Complaint.

[7] All references to "Inquirer.com" include reference to the Inquirer digital subscription and the mobile application.

Plaintiffs claim is shared with Facebook consists of a subscriber's Facebook ID ("FID")[8] that is embedded into software code known as a digital cookie (the "Facebook Cookie") and a URL address for a webpage that was visited on Inquirer.com.  *See id.*, ¶¶ 42, 43 and 51; *see also id.*, ¶5.

According to the Complaint, when a Facebook user with a Facebook Cookie installed on a web browser device views videos on Inquirer.com, the Meta Pixel causes the Facebook user's web browser device – not Inquirer.com – to transmit a subscriber's video viewing information to Facebook, without their consent.  *See id.*, ¶ 43.

C.    Plaintiffs' Example of the Information Transmitted to Facebook

To demonstrate the type of information that is shared without a subscriber's consent, the Complaint contains an example of the Facebook Cookie and URL that are shared with Facebook when a subscriber allegedly clicks on and watches a video on Inquirer.com.  *See id.*, ¶¶ 51-52. When the URL identified in paragraph 51 of the Complaint is accessed, the webpage contains a news article and an embedded video.[9]  *See id.*  The URL in the screenshot in paragraph 51 of the Complaint, however, ***does not*** indicate that any video is located on the webpage associated with it and certainly ***does not*** disclose the title to a video that was requested or viewed.  *See id.*  Indeed, the video located on the webpage associated with the URL in paragraph 51 is not titled "*These South Philly mural[s] tell Latino immigrants' stories*," as Plaintiffs allege.  *Id.*, ¶ 51.  The video is

---

[8] This FID is a string of numbers that Facebook assigns to a Facebook user.  *See id.*, ¶ 42. According to the Complaint, the FID "doesn't personally identify [a subscriber] but does connect to [a subscriber's] Facebook profile."  *Id.*  The Third Circuit in *In re Nickelodeon Consumer Privacy Litig.* concluded that digital identifiers, such as IP addresses or a digital code in a cookie file, do not qualify as personally identifiable information and fall outside the VPPA's protections. 827 F.3d at 267.

[9] *See*  https://www.Inquirer.com/news/south-philly-murals-showcase-immigrant-stories-20221027.html.

entitled "*New murals painted at Puentes de Salud in South Philly showcase Latino culture and history.*"[10]   In other words, the URL in paragraph 51 discloses the title to a webpage visited and not the title to any video on that page.

      D.    <u>Plaintiffs' Claims</u>

Despite the fact that Plaintiffs have not adequately alleged the Inquirer transmits any video information to Facebook, the Plaintiffs claim the Inquirer has violated the VPPA and the PA Wiretapping Act by disclosing their "Personal Viewing Information" to Facebook without their consent. *See id.*, ¶¶ 75-85 and 87-96.  With respect to the VPPA claim, Plaintiffs seek to recover actual damages related to their alleged loss of privacy in their video viewing in an amount to be determined at trial, or in the alternative, liquidated damages of $2,500 per Plaintiff, plus attorneys' fees and costs, injunctive and declaratory relief, and punitive damages. *Id.*, ¶ 85.  As to the PA Wiretapping Act claim, Plaintiffs seek to recover actual damages of no less than liquidated damages computed at a rate of $100 per day for each violation or $1,000 per violation, plus punitive damages, and reasonable attorneys' fees and costs. *Id.*, ¶ 95.

Since neither claim is cognizable as a matter of law, and Plaintiffs lack standing to pursue both claims, the Inquirer now files this motion to dismiss.

**III.    LEGAL STANDARDS**

      A.    <u>Legal Standard Under *Fed. R. Civ. Proc.* 12(b)(1)</u>

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)).

---

[10] *See* <u>*New murals painted at Puentes de Salud in South Philly showcase Latino culture and history* - YouTube</u>.

-6-

Rule 12(b)(1) challenges may be either facial or factual challenges. *Id.* A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Id.* In addressing a facial challenge, a court considers the allegations of the complaint and the attached documents in deciding whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A factual challenge, in contrast, focuses on the failure of a plaintiff's claims to "comport with the jurisdiction prerequisites." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). In addressing a factual challenge, a court is free to consider and weigh evidence outside the Complaint to satisfy itself that it has the power to hear the case, and no presumption of truthfulness attaches to the plaintiff's allegations. *Aichele*, 757 F.3d at 357. When a challenge to standing is brought under Rule 12(b)(1), the plaintiff bears the burden of showing the court has subject matter jurisdiction. *Gould Elecs. Inc.*, 220 F.3d at 176.

As explained below, Plaintiffs do not allege that they suffered any injury-in-fact from the Inquirer's actions. Accordingly, because they did not sustain any no injury-in-fact, Plaintiffs lack standing to pursue their VPPA and PA Wiretapping Act claims.

     B.    <u>Legal Standard Under *Fed. R. Civ. Proc.* 12(b)(6)</u>

A complaint should be dismissed pursuant to Rule 12(b)(6) when it "[f]ails to state a claim upon which relief can be granted." *Fed. R. Civ. Proc.* 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Colburn v. Upper Darby Township*, 838 F.2d 663, 665-66 (3d Cir. 1988). However, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Nor is a complaint sufficient if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).  "Legal conclusions," "bald assertions," and statements which qualify as merely rhetoric, must be disregarded by the court. *Pearson v. Tanner*, 513 Fed. App'x. 152, 154 (3d Cir. 2013).  As noted by the Third Circuit:

> [C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner.

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998).

As explained below, the Complaint fails to meet the 12(b)(6) pleading standard because even accepting as true all of Plaintiffs' well-pleaded allegations, both the VPPA and PA Wiretapping Act claims fail as a matter of law because Plaintiffs do not allege the essential elements to pursue either claim.

## IV.    LEGAL ARGUMENT

As an initial matter, the Complaint must be dismissed because Plaintiffs lack standing to assert their VPPA and PA Wiretapping claims because they do not plausibly allege an injury-in-fact as required under Article III of the U.S. Constitution.  Moreover, even if Plaintiffs could establish standing, their claims are still subject to dismissal because the Complaint does not plausibly allege the essential elements of cognizable claims under the VPPA and the PA Wiretapping Act.

### A.    Plaintiffs Lack Article III Standing Because They Fail To Allege a Concrete Injury

To establish standing, a plaintiff must demonstrate: "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

a favorable judicial decision." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (quoting

*Spokeo, Inc. v. Robins*, 136 S. Ct. at 1540). The injury-in-fact element of the standing test requires

a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Hendrick*,

263 F. Supp. 3d at 519 (citing *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife,* 504

U.S. 555, 560 (1992))). "For an injury to be particularized, it must affect the plaintiff in a personal

and individual way." *Id.* To be "concrete," an injury must be "real" as opposed to "abstract," and

must "actually exist." *Spokeo*, 136 S. Ct. at 1548-49. Importantly, this injury-in-fact element must

be satisfied "even in the context of a statutory violation" by demonstration of a concrete harm

other than the violation of a statute. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).[11]

     Plaintiffs lack of standing to pursue their VPPA claim and their PA Wiretapping Act claim

because they do not allege they suffered any injury-in-fact. In the Complaint, Plaintiffs' purported

injury-in-fact is harm arising from a violation of their statutorily protected right to privacy in their

video-watching habits. *See* Compl., ¶ 84 (thereby violating their "statutorily protected right to

privacy in their video-watching habits."); ¶ 92 ("Defendant intentionally disclosed to Facebook

the contents of Plaintiffs' and Class members' electronic communications in the form of their

viewing histories"); ¶ 11 ("Defendant chose to disregard Plaintiffs' and other Subscribers'

---

[11] *See also Oxenberg v. Sec'y U.S. Dep't Health & Hum. Servs.*, 2022 WL 336996, at *4 (3d Cir. Feb. 4, 2022) (affirming dismissal where plaintiffs merely alleged violation of statute without alleging concrete harm under *TransUnion*); *Barclift v. Keystone Credit Servs.*, 2022 WL 1102122, at *5 (E.D. Pa. Apr. 13, 2022) *appeal filed*, No. 22-1925 (3d Cir. May 13, 2022) (holding plaintiff's allegations that unauthorized persons having access to plaintiff's personal information insufficient to establish standing because plaintiff did not allege any person actually viewed her personal information); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing California and federal wiretap claims due to lack of alleged injury); *Buckley v. Early Warning Servs., LLC*, 2021 WL 5413887, at *1, n.1 (E.D. Pa. Sept. 28, 2021) (dismissing plaintiff's complaint where plaintiff only alleged statutory violation without a concrete harm).

statutorily protected privacy rights by releasing their [identities and the videos they watched] to Facebook.").

      This generalized allegation of an injury to privacy rights, however, does not demonstrate standing because the specific allegations in the Complaint establish that Plaintiffs' privacy rights in their video watching habits are not being violated. The Court needs to look no further than paragraph 51 of the Complaint to reach this conclusion. Paragraph 51 of the Complaint purports to show an example of the video-viewing habits that Plaintiffs claim is shared with Facebook in violation of their statutory protected right to privacy in their video-watching habits. A screenshot of the example is as follows:



Compl., ¶ 51. Plaintiffs allege the lower red box containing the "c_user=" code is the Facebook Cookie that discloses their FID (or identity), and the top red box contains the URL and title to a video that was requested or viewed and shared with Facebook by way of the Meta Pixel. *Id.*, ¶ 52.

However, when the URL referenced in paragraph 51 is accessed,[12] the webpage contains a news article and an embedded video in the article.  Nothing in the URL in paragraph 51 of the Complaint, however, discloses there is a video associated with the webpage, and certainly nothing in paragraph 51 of the Complaint discloses that a video on the webpage was ever requested or viewed. All that is shared in the example in paragraph 51 of the Complaint is the URL and the name of a webpage on Inquirer.com that was visited by a Facebook user.  This sharing of a webpage, without video viewing information, is not a violation of the VPPA and does not violate any statutory protected right to privacy in video-viewing habits.  Indeed, the VPPA was enacted to protect an individual from, for example, having Blockbuster disclose whether the individual rented *Rocky*, not whether that individual simply entered the store and browsed the inspirational drama aisle but did not rent or watch any video.  *See, e.g., In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d at 285 (quoting *In re Hulu Privacy Litig.*, 2014 U.S. Dist. LEXIS 59479, 2014 WL 1724344, at *8 (N.D. Cal. 2014)) (the VPPA "protects personally identifiable information that identifies a specific person and ties that person to ***particular videos that the person watched***."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (recognizing that the VPPA prohibits a video rental store from disclosing "the name and address of a customer—along ***with a list of the videos that the customer had viewed***"); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017) (to state a VPPA claim, plaintiffs must demonstrate that the disclosures "are 'reasonably and foreseeably likely to reveal' ***what video content Plaintiffs have watched***"); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (recognizing that

---

[12]  *See*  https://www.Inquirer.com/news/south-philly-murals-showcase-immigrant-stories-20221027.html.

-11-

information disclosed must identify a particular person "**and connect this particular person with his or her viewing history**") (emphasis added).

Further, the VPPA claim also fails because the embedded video located on the webpage that corresponds to the URL in paragraph 51, is not entitled "*These South Philly mural[s] tell Latino immigrants' stories*" as Plaintiffs allege.  *See* Compl., ¶ 51.  The video is available on the Inquirer's YouTube page, and it is entitled "*New murals painted at Puentes de Salud in South Philly showcase Latino culture and history.*"[13]  The fact that the video has a completely different title than what is mentioned in the URL in paragraph 51, demonstrates that Plaintiffs cannot allege any injury-in-fact associated with violations of their statutory protected right to privacy under the VPPA or the PA Wiretapping Act.

Importantly, Plaintiffs cannot be heard to complain that their general allegations about loss of privacy rights must be accepted as true despite the contradicting information in paragraph 51 of the Complaint.  It is well-settled that if a plaintiff's allegations are contradicted by documents attached to the complaint or incorporated in a complaint by reference, the court does not need to accept a plaintiff's general factual allegations.  *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000); *Genesis Bio–Pharmaceuticals, Inc. v. Chiron Corp.*, 27 Fed. Appx. 94, 99-100 (3d Cir. Jan. 10, 2002); *Centrella v. Barth*, 633 F.Supp. 1016, 1019 (E.D. Pa. 1986).

Here, the example in paragraph 51 of the Complaint conclusively establishes no video viewing information is being shared.  Therefore, under the above authorities, Plaintiffs'

---

[13] *See* New murals painted at Puentes de Salud in South Philly showcase Latino culture and history - YouTube.

generalized and conclusory allegations about harm to privacy rights must be rejected and their claims must be dismissed under *Fed. R. Civ. Proc.* 12(b)(1) for lack of Article III standing.

      B.    <u>Plaintiffs Fail to State a Claim Under the VPPA</u>

In addition to a lack of standing, Plaintiffs VPPA claim must be dismissed under *Fed. R. Civ. Proc.* 12(b)(6) because the Complaint does not adequately allege the essential elements for a cognizable claim. Under the VPPA, only "[a] video tape service provider who ***knowingly discloses***, to any person, ***personally identifiable information*** concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection [(c)]." 18 U.S.C. § 2710(b)(1) (emphasis added). In interpreting this statutory provision of the VPPA, the court in *In re Hulu Privacy Litigation*, found that "knowingly discloses" requires "actual knowledge" or "consciousness of transmitting private information." 86 F. Supp. 3d at 1095. In addition, the *In re Hulu Privacy Litigation* court held that for there to be an actionable VPPA claim, a video tape service provider must knowingly disclose "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified requested or obtained that material." *See id.* at 1105.

Here, the VPPA claim fails as a matter of law because the Complaint does not plausibly allege any of these elements.

      1.    **Plaintiffs Fail to Allege the Inquirer Knowingly Discloses a Consumer's Identity.**

The seminal case in the Third Circuit addressing the elements of a VPPA claim is *In re Nickelodeon Consumer Privacy Litig.* There, plaintiffs claimed that Viacom violated the VPPA by disclosing to Google certain information about children who had registered to use the Nickelodeon website. *Id.* at 268-69. In interpreting the VPPA, the Third Circuit found that personally identifiable information ("PII") under the Act means a disclosure of "the kind of

information that would readily permit an ***ordinary person to identify a specific individual's video-watching behavior*.*"  *See id.*, 827 F.3d at 267 (emphasis added).  The Third Circuit reached this conclusion noting that Congress's purpose in passing the VPPA was "quite narrow: to prevent disclosures of information that would, ***with little or no extra effort***, permit an ordinary recipient to identify a particular person's video-watching habits."  *Id.* at 284 (emphasis added).

In applying this "ordinary person" standard, the Third Circuit affirmed a district court's dismissal of a VPPA claim because, "[t]o an average person, an IP address or ***a digital code in a cookie file*** would likely be of little help in trying to identify an actual person."  *Id.*, at 283 (emphasis added).  The Third Circuit noted that these digital identifiers are not personally identifiable information for purposes of the VPPA.[14]

Applying the Third Circuit's "ordinary person" test here reveals that Plaintiffs do not plausibly allege that the identity of a "specific individual" is disclosed to Facebook by means of the FID embedded in the Facebook Cookie.  Like the digital identifier in *In re Nickelodeon Consumer Privacy Litigation*, the Facebook Cookie here is a digital cookie file, which is "of little help in trying to identify an actual person," without reference to other materials and resources.  *See id.*, at 283.  Indeed, as evidenced by the Complaint, in order to even understand what the Facebook Cookie represents, a recipient would need to reference the Facebook Policies discussed in the Complaint (*see* Compl., ¶ 42), have an explanation of where the Facebook Cookie is located and how it works (*see id.*, ¶¶ 51, 52), and have access to additional resources that are not available to

---

[14] The Third Circuit's "ordinary person" test for PII, has been adopted by the Ninth Circuit Court of Appeals in *Eichenberger*, 876 F.3d at 985.  There, the Ninth Circuit found that the disclosure of a plaintiff's Roku device serial number and the videos he watched did not constitute a disclosure of PII because the information cannot "identify the plaintiff and his viewing habits unless it is combined with other data in Adobe's possession."  *Id.* at 906.

an "ordinary person," including technical know-how and a computer server to process and receive the software code.  Because an "ordinary person" would need access to additional information and technical resources to begin to even understand how the Facebook Cookie functions and where it is located, it is not the type of information that permits an "ordinary person" to identify a particular person as having requested or viewed a video as required by Third Circuit precedent.  *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 283.

Similar to the digital identifiers in *In re Nickelodeon Consumer Privacy Litigation*, the Facebook Cookie here is a digital identifier that is not the type of information that an "ordinary person" would understand identifies a specific individual.  *Id.* at 284.  Accordingly, applying the holding from *In re Nickelodeon Consumer Privacy Litigation* here requires this Court to dismiss the VPPA claim as a matter of law because Plaintiffs fail to allege the disclosure of a consumer's identity to support a cognizable VPPA claim.

        2.       **Plaintiffs Fail To Allege Any "Specific Video Materials or Services" Are Being Disclosed.**

Separately, the VPPA claim also must be dismissed because Plaintiffs do not plausibly identify a specific video they viewed or requested was disclosed.  *See id.*, at 285 (concluding that "specific video materials or services" for purposes of the VPPA means "particular videos . . .watched"); *see also* S. Rep., No. 100-599 at 7 (the VPPA "prohibits video stores from disclosing 'personally identifiable information' – information that links the customer or patron to ***particular materials or services***.") (emphasis added).

As outlined *supra* in Section IV.A of this Memorandum, the Complaint does not allege any specific videos that any named Plaintiffs requested or viewed from Inquirer.com.  Instead, the Complaint alleges generally that Plaintiffs requested and viewed "Video Material," but the specific allegations in paragraph 51, conclusively establish no titles (or other unique identifiers) of any

-15-

video requested or watched were contained in the code let alone shared with Facebook.  *See*, *supra*, Sec. IV.A.

This failure to plausibly identify any specific videos that were requested or viewed by a plaintiff was the basis for the Southern District of New York dismissing a VPPA claim in *Martin v. Meredith Corp.*, No. 22-cv-4776 (DLC), 2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023) and requires the same result here.  In *Martin*, a plaintiff subscriber to People.com alleged that the defendants violated the VPPA by placing the Meta Pixel on the People.com website, which contained video content.  *Id.* at *3, 9.  Plaintiff claimed that the Meta Pixel transmitted to Facebook the identity of a subscriber and the titles of the videos that were viewed.  *Id.* at *9.  Like the Complaint here, the complaint in *Martin* included screenshot examples of the software code being transmitted to Facebook, including FIDs and URLs to webpages that plaintiff claimed contained the titles to videos he requested or viewed.  *Id*.

The *Martin* court dismissed the VPPA claim because the examples of information transmitted to Facebook identified in the *Martin* complaint, do "not indicate that a website visitor requested or obtained specific video materials on that webpage."  *Id.* at *8.  The *Martin* court noted that the examples in the complaint contained URLs that disclosed the name of a webpage, but not any information to identify whether a specific video was on the webpage or whether a specific video was requested or viewed by any People.com subscriber.  The *Martin* court noted:

> . . . sending the URL of a . . . webpage which may or may not include a video ***does not show that a person requested or obtained specific video materials or services. And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on the page*** since the person may instead have merely reviewed an article on the page or opened the page and done nothing more.

*Id.* at *12 (emphasis added).  In other words, the *Martin* court made clear that the transmission of a webpage URL that contains a video without evidence that a person actually requested or viewed a video on the webpage, will not give rise to a VPPA claim.  Moreover, the *Martin* court had no trouble rejecting the plaintiff's generalized allegations about the disclosure of video viewing information that were contradicted by the actual information from the software code examples that were pled in the complaint.  *See id.*, at *9-10.  The *Martin* court noted that "despite a handful of generalized allegations saying that People.com shares video titles with Facebook, the specific allegations reveal that People.com shares only webpage titles."  *Id.* at *10.

As in *Martin*, the URL example Plaintiffs identify in paragraph 51 of the Complaint, ***does not*** disclose whether a video is on a webpage, let alone a video that was requested or viewed by any named Plaintiff.  Consistent with the holding in *Martin*, this Court should dismiss the VPPA claim as a matter of law because Plaintiffs do not identify any specific video they requested or watched, which was transmitted to Facebook to give rise to a VPPA claim.  *See id.*, at *11.

      C.    <u>Plaintiffs Fail to State a Claim for a Violation of the PA Wiretapping Act</u>

Plaintiffs also allege that the Inquirer violated the PA Wiretapping Act by "procur[ing] Facebook to automatically and surreptitiously intercept [their video viewing histories and FIDs] by installing the Meta Pixel on its website."  Compl., ¶¶ 91-92.  Plaintiffs PA Wiretapping Act claim fails because the Complaint does not plausibly allege there was an interception of the ***contents of an electronic communication*** and, even if the contents of an electronic communication were intercepted, the claim still fails as a matter of law, because Plaintiffs consented to the alleged disclosures.

-17-

1.  **The Complaint Fails to Allege the Contents of an Electronic Communication Were Disclosed.**

The PA Wiretapping Act prohibits a person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept any wire, electronic or oral communication[.]" 18 Pa.C.S.A. § 5703.  To properly plead an "interception" under the PA Wiretapping Act, a plaintiff must allege that the "***contents of an electronic communication*** were intentionally intercepted through the use of a device."  *See* 18 Pa.C.S.A. § 5702 (emphasis added); *see also Ideal Aerosmith, Inc. v. Acutronic United States, Inc.*, 2007 WL 4394447, at *4 (W.D. Pa. Dec. 13, 2007).  Significantly, the PA Wiretapping Act protects only the "contents" of an electronic communication, which are defined as "information concerning the substance, purport, or meaning of" a communication.  18 Pa.C.S.A. § 5703.

The Third Circuit has found that the PA Wiretapping Act tracks the language of the Federal Wiretapping Act and therefore should be interpreted in the same way.  *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2004) (Pennsylvania statute "interpreted in the same way as the ECPA, [and] the analysis and conclusions in the text apply equally to this state law claim").  In the Third Circuit, the "contents" of an electronic communication subject to the Federal Wiretapping Act are defined as "information the user intended to communicate, such as the words spoken in a phone call." *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 275 (affirming a district court's dismissal of Federal Wiretapping Act claim involving alleged transmission of addresses, phone numbers, and URLs as dialing, routing, addressing, or signaling information).  Other federal courts have reached similar conclusions and rejected efforts to expand a wiretap act to cover mere transactional information about a communication or information about the parties to a communication.  *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not

-18-

include record information."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (holding geolocation data collected by Apple was "generated automatically, rather than through the intent of the user, and therefore [did] not constitute 'content' susceptible to interception."); *Gilday v. Dubois,* 124 F.3d 277, 296 n.27 (1st Cir. 1997) (noting that "the PIN of [a] caller, the number called, and the date, time and length of the call" are not "contents").

Here, the alleged "contents" of an electronic communication that Plaintiffs claim were intercepted do not give rise to a cognizable PA Wiretapping Act claim.  The Facebook Cookie and URL for the Inquirer.com webpage identified in paragraph 51 of the Complaint that Plaintiffs allege were intercepted do not include substantive information about the underlying communication, like the words that were conveyed by the parties.  Instead, the Facebook Cookie and URL are transactional information is generated automatically and concerns the Facebook users' visit to Inquirer.com and have nothing to do with the underlying message communicated between the parties.  For this reason, the PA Wiretapping Act fails as a matter of law and must be dismissed.  *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 275.

### 2.  The PA Wiretapping Act Claim Fails Because Plaintiffs Consented to the Disclosure of Any Alleged Information.

The PA Wiretapping Act claim also must be dismissed because Plaintiffs unquestionably consented to the sharing of their information with Facebook.  One of the exceptions to liability under the PA Wiretapping Act is prior consent.  This is codified in 18 Pa.C.S.A. § 5704(4), which states that it is "not unlawful for someone to 'intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception.'"  *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022).  This exception applies here to bar Plaintiffs' PA Wiretapping Act claim.

In interpreting whether consent exists for a disclosure under the PA Wiretapping Act, the analysis from the Pennsylvania Supreme Court's opinion in *Commonwealth v. Byrd*, 235 A.3d 311 (Pa. 2020) is instructive.  In *Byrd*, the Court held that the prior consent exception to liability under the PA Wiretapping Act ***does not*** require "actual knowledge" of the interception or recording. *Byrd*, 235 A.3d at 319.  Instead, the *Byrd* Court found that "prior consent" can be established where the person being recorded "knew or should have known, that the conversation was being recorded." *Id.* (internal citation omitted).  The *Byrd* Court further recognized this "knew or should have known" standard for prior consent is an objective "reasonably intelligent person" standard that can be established through either express or implied conduct that evidence consent. *Id.*

In this case, there is no question that the prior consent exception to the PA Wiretapping Act applies.  The Complaint and the documents incorporated confirm that Plaintiffs consented to the tracking and the sharing of their web browsing activities with the Inquirer's marketing partners and social media platforms, including Facebook.  This is made clear by the Inquirer's Privacy Policy which contains:

- a description of the types of information the Inquirer collects from subscribers, including identity data, contact information, financial data, transaction data, mobile device location data, usage data, marketing data, communication data, and technical data. *See id.*, ¶¶ 32-33; *see also* **Exhibit A**, Privacy Policy, § II.[15]

- a description about how the Inquirer shares Personal Information with third parties, including digital advertising partners, social media platform providers, and research and analytics solution providers.  *See* Ex. A, § III.

[15] While not attached to the Complaint, the Privacy Policy, images of the Privacy Policy, and a hyperlink to the Privacy Policy are included and referenced in the Complaint and form the basis of Plaintiffs' causes of action.  *See* Compl., ¶¶ 32-38.  Accordingly, The Inquirer's submission of the complete Privacy Policy for the Court's consideration in support of its Motion does not convert the Motion into one for summary judgment because the Privacy Policy is integral and explicitly relied on in the Complaint. *See Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 326 (E.D. Pa. 2020).

-20-

- a disclosure about how the Inquirer uses widgets and other tools to collect and share information with social media platforms, including the sharing of "**personal data with third parties** for marketing and advertising, **such as Google and Facebook**, so they can assist us in promoting our Services on and off our Digital Properties to current and future readers and subscribers through targeted advertisements." *See id.* (emphasis added).

These disclosures in the Privacy Policy that govern use of the Inquirer.com website, clearly evidence that Plaintiffs "knew or should have known," that their web browsing activities were being tracked and shared with Facebook.

Moreover, Plaintiffs cannot be heard to contend that they had no knowledge of the Inquirer's Privacy Policy.  Prospective subscribers to Inquirer.com are required to agree to the terms of the Privacy Policy as a condition of activating their subscriptions.  This agreement is evidenced by the following language in a drop-down menu and button click action that each subscriber must agree to before their subscription is activated: "By subscribing, you agree to the subscription offer, the Terms of Purchase, Terms of Use and Privacy Policy . . .".  *See* **Exhibit B**[16] (The Philadelphia Inquirer - Subscribe Now. Never Miss a Story).  An example of this drop-down agreement is as follows:

---

[16] On this motion to dismiss this Court can consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss into a motion for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).  Moreover, when a party relies on a website for the allegations in the Complaint, courts consider the website incorporated by reference, and can consider the website on a motion to dismiss.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting the Court may examine the full context from which a screenshot or webpage was taken and included in pleading on a motion to dismiss stating, "[t]he rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material,"); *see also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 (S.D.N.Y. 2009) ("Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss.") (collecting cases).



*Id.* Plaintiffs cannot escape the consequences of drop-down menu agreement as Courts have routinely enforced these types of agreements in Pennsylvania, even in instances where a party contends it did not read the terms. *See*, *e.g.*, *Del. River Waterfront Corp. v. Wellspring Software, Inc.*, 2022 WL 17869139, at *4 (E.D. Pa. Dec. 22, 2022) (enforcing terms of clickwrap agreement noting, "[a] clickwrap agreement 'presents users with a message on his or her computer screen, requiring the user to manifest his or her assent to the terms of the . . . agreement by clicking on an icon.'") (internal citation omitted).

Thus, because the Privacy Policy reveals that tracking technologies were being utilized and that their personal data was being shared with advertising and marketing partners and social media platforms (including Facebook), the prior consent standard articulated in *Byrd* is easily satisfied and their PA Wiretapping Act claim is barred. This Privacy Policy established Plaintiffs' express or,

at a minimum, implied consent, and therefore the PA Wiretapping Act claim must be dismissed as a matter of law.[17]

It also is worth noting that Plaintiffs' allegation that the Privacy Policy "does not allow third parties like Facebook to collect Subscribers' 'Identity Data'", (Compl., ¶ 37) does not alter the conclusion that Plaintiffs consented to the disclosure of information here.  The "Identity Data" that Plaintiffs allege was shared with Facebook is an FID that is an identifier that Facebook assigns to a Facebook user and is not an identifier that is collected or shared by the Inquirer.  *Id.*, ¶ 42. This is made clear by the allegations in paragraph 43 of the Complaint which recognize the FID is embedded in Plaintiffs' web browser and this FID is transferred to Facebook by the Plaintiffs' own web browsing device (*e.g.*, the Plaintiffs' phones).  *Id.*, ¶ 43.  There is no violation of the Inquirer's Privacy Policy when the person sharing and transmitting the FID is the Plaintiff and not the Inquirer.

> 3.  **The PA Wiretapping Act Claim Also Should be Dismissed Because the Plaintiffs Have Impliedly Consented to the Alleged Disclosures.**

Even if there was no evidence of Plaintiffs' express agreement to the Privacy Policy, the PA Wiretapping Act claim still fails because Plaintiffs impliedly consented to the sharing of their information simply by being Facebook users and utilizing the Internet.  Pennsylvania courts have recognized that a reasonable person's knowledge that he is being recorded may be "surmised from the very nature of the selected means of transmission" of information.  *Commonwealth v. Diego*,

---

[17] Courts throughout the United States have routinely found consent to the sharing of information based on the terms of a privacy policy.  *See*, *e.g.*, *Smith v. Facebook, Inc.*, 745 F.App'x. 8, 9 (9th Cir. 2018) (consent established for wiretapping claims given that "[t]erms and [p]olicies contain numerous disclosures related to information collection on third-party websites"); *Garcia v. Enter Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015)  (dismissing CIPA claim where app provider's terms and privacy policy provided consent for the alleged disclosures); *State v. Townsend*, 147 Wash.2d 666, 673 (2002) (implied consent to recording based on terms of privacy policy).

-23-

119 A.3d 370, 377 (Pa. Super. 2015).  In this case, the Plaintiffs' transmission of information was over the Internet and through use of their web browser.  Pennsylvania courts have held that "[a]ny reasonably intelligent person, savvy enough to be using the Internet" is aware that such communications "are received in a recorded format, by their very nature." *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001) (stating, "[b]y the very act of sending a communication over the Internet, the party expressly consents to the recording of the message."). The Third Circuit is in accord, finding that "[m]ost of us understand that what we do on the Internet is not completely private," and "our data has to be going somewhere," "feeding an entire system of trackers, cookies, and algorithms." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 266.

Here, the contents of the electronic communication that Plaintiffs claim were intercepted are all internet based and involve software code and the transmission of web browsing information to Facebook.  Under Pennsylvania law, this use of the internet demonstrates Plaintiffs' implied consent and knowledge that their web-based activities were being tracked.  Further, the existence of implied consent is even greater in this case because Plaintiffs were Facebook users, who allowed Facebook to assign them an FID and install a Facebook Cookie on their phone or computer to affirmatively track their activities.  *See* Compl., ¶¶ 42-43 (referring to Facebook's website); *see also* Facebook's Cookie Policy, which is located at http://www.facebook.com/policy/cookies (last visited Apr. 11, 2023) and attached as **Exhibit C**.

Thus, simply by going on the Internet and browsing Inquirer.com, Plaintiffs, as Facebook users, knew or should have known that any alleged communications with websites they visited were shared with Facebook.  This was made clear by the Inquirer's Privacy Policy, and Facebook's Cookie Policy related to their Facebook accounts.  Under these circumstances, the consent

exception under the PA Wiretapping Act applies and Plaintiffs' claim must be dismissed. *See Byrd*, 235 A.3d at 319.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed under Rule 12(b)(1) as a matter of law because they lack Article III standing to pursue their VPPA and PA Wiretapping Act claims. These claims also must be dismissed under Rule 12(b)(6) because Plaintiffs have failed to plausibly allege the essential elements to state a cognizable cause of action under the VPPA or the PA Wiretapping Act.

**DATED**: April 14, 2023                    Respectfully submitted,

*/s/ Angelo A. Stio*
Angelo A. Stio, III
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
301 Carnegie Center
Suite 400
Princeton, New Jersey 08540
Telephone: 609.951-4125
Email: Angelo.Stio@Troutman.com

-and-

Ronald I. Raether
(admitted *pro hac vice*)
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
5 Park Plaza
Suite 1400
Irvine, CA 92614
Telephone:  949.622.2722
Email:  Ron.Raether@Troutman.com

*Attorneys for Defendant The Philadelphia
Inquirer, LLC*

-25-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss was filed via the Court's CM/ECF system for electronic service on all counsel of record.


Dated:  April 14, 2023                                       <u>*/s/ Angelo A. Stio III*</u>
                                                             Angelo A. Stio III