IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON BRAUN, JIM CUMMINS and  :
STEPHANIE CARTER on behalf of  :        No. 22-cv-4185-JMY
themselves and all others similarly situated,  :
   :        CONSOLIDATED ACTION
    v.  :
   :
PHILADELPHIA INQUIRER, LLC.  :

**MEMORANDUM**

**Younge, J.**                                    **November 13, 2023**

Currently before the Court is a motion to dismiss Plaintiffs' consolidated Class Action

Complaint filed by Defendant, the Philadelphia Inquirer, LLC ("the Inquirer"), pursuant to

Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6).  The

Court finds this Motion appropriate for resolution without oral argument.  Fed. R. Civ. Pro. 78:

L.R. 7.1(f).  The Inquirer's motion to dismiss will be denied for the reasons set forth in this

Memorandum.

## I.      PROCEDURAL AND FACTUAL BACKGROUND:

Plaintiffs Jason Braun and Stephanie Carter (the "Plaintiffs") are Facebook users and paid

subscribers to *The Philadelphia Inquirer's* digital content.  (Amended Complaint, ECF No. No.

28 ("Am. Compl.") ¶¶ 14, 15.)  Plaintiffs have sued the Inquirer claiming generally, that the

Inquirer unlawfully disclosed to Meta Platforms, Inc., their Facebook User ID[1] and the Uniform

Resource Locators (URLs) to webpages that they viewed on www.Inquirer.com or on the

Inquirer's mobile application – thereby disclosing the titles to specific videos that Plaintiffs

---

[1] A Facebook User ID is a string of numbers that Facebook assigns to a Facebook user that corresponds with the user's Facebook profile.  (Compl., ¶ 42.)  Meta Platforms, Inc., was formerly named Facebook, Inc., and it is the current owner/operator of Facebook which is an internet based social media network.

requested or viewed.  (*Id.* ¶¶ 5, 6.)  Plaintiffs claim that these disclosures were made without their consent and in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("PA Wiretapping Act"), 18 Pa. C.S. § 5701, *et seq*.

The Inquirer is a news media company that owns *The Philadelphia Inquirer*.  (*Id.* ¶¶ 16, 27.)  The Inquirer also owns and operates a website, www.Inquirer.com, and a mobile application, which provide digital news coverage and community interest stories to subscribers on an ongoing basis.  (*Id.* ¶¶ 16, 27, 31.)  The news coverage and community interest stories offered on Inquirer.com, come in the form of news articles and/or a news article with an embedded video in it.  (*Id.* ¶¶ 50-51.)

Plaintiffs contend that the Inquirer allowed Facebook to install Meta Pixel tracking software on its website, Inquirer.com, and that Meta Pixel enables Meta Platforms to receive subscribers' video viewing information when they are logged in and/or when they view videos on the website or mobile application for Inquirer.com.  (*Id.* ¶ 5.)  The video viewing information that Plaintiffs claim is shared with Meta Platforms consists of a subscriber's Facebook User ID that is embedded into software code known as a digital cookie (the "Facebook Cookie") and a URL address for a webpage that was visited on Inquirer.com.  (*See id.* ¶¶ 42, 43 and 51; *see also id.* ¶ 5.)

According to the Amended Complaint, when a Facebook user with a Facebook Cookie installed on a web browser device views videos on Inquirer.com, Meta Pixel tracking software causes the Facebook user's web browser device to transmit the subscriber's video viewing information to Meta Platforms, without their consent.  (*See id.* ¶ 43.)  To demonstrate the type of information that is shared without a subscriber's consent, the Amended Complaint contains an

example of the Facebook Cookie and URL that are shared with Meta Platforms when a subscriber allegedly clicks on a webpage located on Inquirer.com.  (*See id.*, ¶¶ 51-52.)

## II.   LEGAL STANDARD:

### A.   Legal Standard: Failure to State a Claim under Fed. R. Civ. P. 12(b)(6):

The standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'"  *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

### B.   Legal Standard: Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1):

A Motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.  *Kehr Package, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045

(3d Cir. 1993)).  In reviewing a motion brought pursuant to Rule 12(b)(1), the Court should determine whether the motion presents a facial or factual challenge.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction."  *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999).  A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists.  *Mortensen*, 549 F.2d at 891; *see also Cardio-Med. Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983).  A factual attack under Rule 12(b)(1) challenges the very power of a district court to hear a case, independent of the pleadings.  *Mortensen*, 549 F.2d at 891.

When evaluating a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.*  Unlike a facial attack, no presumption of truth attaches to the plaintiff's allegations in a factual challenge and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.*  Furthermore, in a factual challenge, the plaintiff bears the burden of establishing that jurisdiction exists.  *Id.*  The district court is not required to convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment merely because the court considers evidence outside the complaint.  *Medica v. City of Philadelphia*, 219 F. App'x 169, 172 (3d Cir 2007).

Federal Rule of Civil Procedure 12(h)(3) states, "if the court determines at any time that it lacks subject matter jurisdiction, the Court must dismiss the action." A federal district court is a court of limited jurisdiction and has an independent obligation to inquire into whether it has subject matter jurisdiction to preside over a case. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003). Federal courts have an ever-present obligation to ensure that subject matter jurisdiction exists, and they can raise issues of subject matter jurisdiction *sua sponte* at any time. Fed. R. Civ. P. 12(h)(3); *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*."); *Johnson v. United States*, No. 08-0816, 2009 U.S. Dist. LEXIS 76545, at *6 (M.D. Pa. Aug. 27, 2009). A district court should dismiss a complaint if it lacks subject matter jurisdiction over the claims because without subject matter jurisdiction the court does not have the power to hear the case. Fed. R. Civ. P. 12(b)(1); *Mortensen v. First Fed. Sav and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## III. DISCUSSION:

Plaintiffs' Amended Complaint sets forth sufficient facts to survive the Inquirer's motion to dismiss. In the Amended Complaint, Plaintiffs assert that the Inquirer discloses their Facebook User ID and the URLs to webpages they visit without their consent in violation of the VPPA and PA Wiretapping Act. The Inquirer moves to dismiss the VPPA claim by arguing that: (1) Plaintiffs fail to allege facts to establish that it knowingly disclosed or discloses a consumer's identity, and (2) Plaintiffs fail to allege that any specific video materials or services were or are being disclosed. (MTD page 13.) The Inquirer moves to dismiss Plaintiffs' claim for violation of the PA Wiretapping Act by arguing that the Amended Complaint fails to establish that the substantive content of a communication is intercepted or disclosed. The Inquirer also moves to

5

dismiss the PA Wiretapping Act claim by arguing that Plaintiffs gave consent to disclosure of the content of their communication with the website Inquirer.com.  Finally, the Inquirer attacks Plaintiffs' Article III standing and ability to establish injury in fact.

A. **Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710:**

Under Fed. R. Civ. P. 12(b)(6), the Inquirer moves to dismiss Plaintiffs' claim for violation of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710.  In 1988, Congress passed the VPPA "after the *Washington City Paper* published Supreme Court nominee Robert Bork's video rental history.  The paper had obtained (without Judge Bork's knowledge or consent) a list of the 146 films that the Bork family had rented from a Washington, D.C.--area video store."  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).  The Senate Report explaining the passage of the VPPA states that Congress's intent was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials."  *Senate Report*, No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1.

Under the VPPA "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection [(c)]."  18 U.S.C. § 2710(b)(1).  The VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."  18 U.S.C. § 2710(a)(4).  A "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).  "Personally identifiable information," or PII, is defined as "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  The Third Circuit has held

that "personally identifiable information under the Video Privacy Protection Act means the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon,* 827 F.3d at 290.  The Court has further explained, "[T]o the average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person." *Id.* at 283, 285.

The Inquirer argues that the disclosure of Plaintiffs' Facebook User ID does not constitute a disclosure of personal identifiable information for the purpose of the VPPA.  The Inquirer cites to *In re Nickelodeon* and argues that the Court should apply the Third Circuit's "ordinary person" standard and find that Plaintiffs do not plausibly allege that the identity of a "specific individual" is disclosed to Meta Platforms by means of their Facebook User ID embedded in the Facebook Cookie.  (MTD page 21 (citing *In re Nickelodeon,* 827 F.3d at 285.)).  The Inquirer further contends that the Amended Complaint merely alleges that URLs or web addresses for websites that Plaintiffs viewed were forwarded to Meta Platforms.  (MTD page 21.)  Therefore, the Inquirer argues that the Amended Complaint fails to identify the disclosure of any specific videos that were viewed or requested by Plaintiffs.  According to the Inquirer, the mere transmission of URLs for webpages containing video content is insufficient to support a VPPA claim because it does not prove that the user actually requested or watched the video.  (MTD at 15-17 (citing *Martin v. Meredith Corp.*, No. 22-cv-4776 (DLC), 2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023).)

In an attempt to defeat Plaintiffs' VPPA claim, the Inquirer makes arguments that rely on factual assumptions that have not been established in the factual record at this stage of litigation. It would be more appropriate for the Court to evaluate these arguments on a developed factual record after the Parties have engaged in discovery, rather than at the initial pleading stage of this

litigation.  With specific regard to the question of whether a Facebook User ID can be equated with personal identifiable information, a court located in the Northern District of California wrote, "Most, if not all, courts to address the question have found, at the pleadings stage, that Facebook IDs are [personal identifiable information]." *Ghanaat v. Numerade Labs, Inc.*, No. 23-cv-833, 2023 U.S. Dist. LEXIS 157378, *8-9 (N.D. Cal. August 28, 2023) (citing *Jackson v. Fandom*, No. 22-cv-4423, 2023 U.S. Dist. LEXIS 125531, (N.D. Cal. July 20, 2023) ("explaining that the [Facebook User ID] can readily be used by the average person to access a consumer's Facebook page, which may contain substantial personal information").

A developed factual record would also aid in answering any question about the status of the web addresses or URLs in the context of this litigation.  In the context of privacy litigation, the Third Circuit Appellate Court stated that URLs could be considered dialing, routing, addressing or signaling information in one context, but in another context these same URLs contain substantive content that could be improperly disclosed.  *In re Google, Inc.*, 806 F.3d 125 (3d Cir. November 10, 2015) (URLs under certain circumstance can be considered "substantive content of a communication").  Therefore, the question about whether URLs should be considered substantive content of a communication – as defined by the VPPA in the context of Meta Pixel litigation – would tend to be a question that would require a developed factual record beyond the mere pleading stage of litigation to adequately evaluate.  *Ghanaat v. Number Labs, Inc.*, No. 23-cv-833, 2023 U.S Dist. LEXIS 157378 (N.D. Cal Aug 28, 2023); *Feldman v. Star Trib. Media Co. LLC*, No. 22-cv-1731, 2023 U.S. Dist. LEXIS 37416, (D. Minn. Mar. 7, 2023) (stating "most district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions"); *Belozerov v. Gannett Co., Inc.*, No. 22-cv-10838, 2022 U.S. Dist. LEXIS 229436, (D. Mass. Dec. 20, 2022); *Czarnionka v.*

*The Epoch Times Ass'n Inc.*, No. 22-cv-6348, 2022 U.S. Dist. LEXIS 209067, *10-11 (S.D.N.Y. Nov. 17, 2022); *Lebakken v. WEBMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. Nov. 4, 2022); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 853 (N.D. Cal. Oct. 13, 2022); *Ambrose v. Boston Globe Media Partners LLC*, No. 21-cv-10810-RGS, 2022 U.S. Dist. LEXIS 168403, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022).

Therefore, Plaintiffs aver sufficient facts in the Amended Complaint for their VPPA claim to survive the Inquirer's motion to dismiss, and Inquirer's motion to dismiss will be denied.

**B.    Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, *et seq.*:**

Under Fed. R. Civ. P. 12(b)(6), the Inquirer moves for dismissal of Plaintiffs' claim for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, *et seq.*  The PA Wiretapping Act prohibits the interception of communications while allowing someone whose communications have been intercepted to sue the offender.  "The [Pa Wiretapping Act] offers a private civil cause of action to '[a]ny person whose wire, electronic or oral communication is intercepted, disclosed, or used in violation of [that statute]' against 'any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication.'"  *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. October 18, 2022) (citing 18 Pa. C.SC. § 5725(a)).)  To properly plead an "interception" under the PA Wiretapping Act, a plaintiff must allege that the "contents of an electronic communication were intentionally intercepted through the use of a device."  *See* 18 Pa. C.S. § 5702; *see also Ideal Aerosmith, Inc. v. Acutronic United States, Inc.*, No. 07-cv-1029, 2007 U.S. Dist. LEXIS 91644, at *10 (W.D. Pa. Dec. 13, 2007).

The Inquirer argues that the PA Wiretapping Act claim fails because the Amended Complaint does not plausibly allege there was an interception of the contents of an electronic

communication.  According to the Inquirer, the PA Wiretapping Act protects only the "contents" of an electronic communication, which is defined as "information concerning the substance, purport, or meaning of" a communication.  (MTD page 24 (citing 18 Pa. C.S. § 5703).) The Inquirer asserts that the Amended Complaint merely avers that the Facebook Cookie and URL for the Inquirer.com webpage were shared with Facebook.  The Inquirer contends that the Facebook Cookie and URL are transactional information that do not fall within the purview of the PA Wiretapping Act; therefore, the Amended Complaint fails to establish that substantive information about the content of a communication was disclosed.

The Inquirer's attempt to defeat the Plaintiffs' PA Wiretapping Act claim bears striking similarity to its attempt to defeat Plaintiffs' VPPA claim.  The Inquirer's argument to the effect that URLs are not substantive content of a communication fails for all of the same reasons that its opposition to the VPPA claim fails to persuade the Court to dismiss this litigation.  See *In re Google, Inc.*, 806 F.3d 125 (3d Cir. November 10, 2015) (see the discussion hereinabove – URLs under certain circumstance can be considered "substantive content of a communication").  It would be more appropriate for the Court to evaluate and assess the arguments made by the Inquirer on a developed factual record at the close of discovery.

### C.  Consent to Disclosure under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, *et seq.*:

An exception to liability under the PA Wiretapping Act is prior consent.  This is codified in 18 Pa. C.S.A. § 5704(4), which states that it is "not unlawful for someone to 'intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception.'"  *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022).  *Commonwealth v. Byrd*, 235 A.3d 311 (Pa. 2020).

The Inquirer argues in its motion to dismiss under Fed. R. Civ. P. 12(b)(6) that Plaintiffs' claim for violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, *et seq*, should be dismissed because Plaintiffs gave consent for any purported disclosure. The Inquire offers the Privacy Policy in the Terms of Use for its website – Inquirer.com – and asserts that subscribers, like the Plaintiffs, agreed to disclosure when they accessed content on its website.  The Inquirer also references Plaintiffs' status as Facebook members and a purported agreement between Plaintiffs and Facebook to allow Meta Platforms to monitor Plaintiffs' internet usage.

The question about whether Plaintiffs gave consent to disclosure under the PA Wiretapping Act would appear to be factual in nature – involving issues of factual dispute and interpretation.  *Putt v. TripAdvisor, Inc.*, 20-cv-3836, 2021 WL 242470, at *7 (E.D. Pa. Jan 25, 2021) (The question of whether or not a clickwrap or browserwrap agreement is enforceable cannot be resolved at the motion to dismiss stage.).  Therefore, the Court finds that it is appropriate to defer ruling on questions about whether Plaintiffs gave consent until after the Parties engage in discovery and develop the factual record.

**D.    Article III Standing & the Court's Subject Matter Jurisdiction:**

The Inquirer moves for dismissal under Fed. R. Civ. P. 12(b)(1) by arguing that Plaintiffs lack Article III standing because they have failed to establish an injury within the meaning of the VPPA or PA Wiretapping Act.  When attacking Plaintiffs' Article III standing and/or federal court subject matter jurisdiction, the Inquirer attempts to illustrate that Plaintiffs are incapable of establishing the necessary elements of a tort claim for violation of the VPPA or the PA Wiretapping Act.  The Inquirer's attack on Article III standing and the Court's subject matter jurisdiction fails for all of the same reasons previously discussed herein when the Court

dispensed with the Inquirer's Fed. R. Civ. P. 12(b)(6) motion.  Plaintiffs have plead sufficient facts to establish a claim under the VPPA and the PA Wiretapping Act.  Plaintiffs do not need to plead or establish a pecuniary injury in the nature of financial loss to proceed with their invasion of privacy claims under the VPPA or PA Wiretapping act.  *In re google, Inc.*, 806 F.3d at 135 (At the motion to dismiss stage of litigation, a plaintiff need not show actual monetary loss for purposes of injury in fact to establish standing in an invasion of privacy case arising from allegations that tracking cookies were implanted in their personal computers.).

## IV.   CONCLUSION:

For these reasons, the Inquirer's motion to dismiss will be denied.  The Court will enter an appropriate order denying the outstanding motion to dismiss.

BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge

12