# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON BRAUN and STEPHANIE CARTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PHILADELPHIA INQUIRER, LLC,<br><br>Defendant. | Case No.:  2:22-cv-04185-JMY<br><br>CONSOLIDATED ACTION |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

### I.      INTRODUCTION

Plaintiffs Jason Braun and Stephanie Carter (collectively, "Plaintiffs" and, together with Defendant The Philadelphia Inquirer, LLC, "Parties"), and on behalf of the Class (as defined in Section IV. A, below), submit this memorandum in support of their Motion for Preliminary Approval of Class Action Settlement (referred to interchangeably as the "Settlement" or "Settlement Agreement") under Fed. R. Civ. P. 23(e), and for, *inter alia*, approval of their proposed form of notice to the Class, permission to disseminate the same, the appointment of the Settlement Administrator, and the appointment of Spector Roseman & Kodroff and Goldenberg Schneider as

Class Counsel. The Settlement Agreement is attached as Exhibit A to the Declaration of John Macoretta in Support of Plaintiffs' Motion for Preliminary Approval of the Class Settlement ("Macoretta Decl."). The Defendant does not oppose this Motion.

Plaintiffs brought this class action individually and on behalf of a Class whose members established a digital subscription account with Defendant at any time from October 1, 2019 until January 16, 2024. Plaintiffs allege that Defendant violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 and, the Pennsylvania Wiretap and Electronic Surveillance Control Act ("PA Wiretap Act"), 18 Pa. C.S. § 5701 et seq., and thus Plaintiffs' and Class Members' statutorily protected right to privacy related to their video-watching habits by knowingly sharing without consent their personal viewing information and personally identifiable information with Facebook ("Meta").[1] Plaintiffs allege that as a result, Defendant profited from advertising revenue it would not have otherwise received.  Defendant denies the allegations and denies it has any liability for the claims asserted in the litigation.

After a year and a half of litigation, Plaintiffs and Defendant have reached a Settlement which, if approved, would resolve the litigation. The proposed Settlement will conclude all claims against Defendant concerning the alleged violations of the VPPA and PA Wiretap Act for all Class Members who established a digital subscription account with Defendant at any time between October 1, 2019 until January 16, 2024. The Settlement provides for Defendant to deposit $1.125 million dollars into a settlement fund (the "Settlement Fund") to pay all the costs associated with the administration of this Settlement, issuing class notice, paying claims of class members, paying

---

[1] Consolidated Class Action Complaint, Dkt. 28, page 2, paragraph 1.

service awards, paying the counsel fee and cost awards, and paying any taxes and tax-related expenses.

Class Counsel strongly recommends approval of the proposed Settlement. Given the inherent costs, delays, and risks of continued litigation, the prospect of individual litigation without class resolution, uncertain results, and potential appeals, Class Counsel believe the proposed Settlement is fair, reasonable, adequate and in the best interests of Plaintiffs and the Class. Indeed, Class counsel believes the proposed Settlement is an excellent result for Plaintiffs and the Class.

## II.    STATEMENT OF FACTS

The Consolidated Class Action Complaint, Dkt. 28, alleges that Defendant knowingly intercepted and disclosed personally identifiable information from thousands of its digital subscribers—including a record of every video clip they viewed—to third-party Meta without first obtaining their express consent, in violation of the VPPA and PA Wiretap Act.   In the litigation Defendant has denied these allegations.

The VPPA prohibits the knowing disclosure of a customer's video rental or sale records without the informed, written consent of the customer in a form distinct and separate from any form setting forth other legal or financial obligations. 18 U.S.C. § 2710. The PA Wiretap Act prohibits the interception, disclosure, or use of a person's wire, electronic, or oral communications. 18 Pa. C.S. § 5725(a).

Plaintiffs allege the Class Members paid for a subscription to Defendant's website, Inquirer.com. Plaintiffs allege that during the subscription onboarding process, they were not notified that Defendant would share their Personal Viewing Information with third parties such as Meta, nor was this disclosed in any privacy policy on Defendant's website. Plaintiffs further allege

3

the Subscribers were never asked to consent to such information sharing. In the litigation Defendant has denied these allegations.

The Consolidated Class Action Complaint, Dkt. 28, alleges that Defendant collected and shared Class Members' Personal Viewing Information with Meta by installing the Meta Pixel, which is an invisible tool created by Meta that tracks users' actions on Facebook advertisers' websites, such as Defendant's website, and reports the actions to Meta. It further alleges that when Defendant's subscribers clicked on a video on Defendant's website, Defendant automatically sent to Meta certain information about the subscribers, including but not limited to the name of video content they watched, its URL, and the subscribers' Facebook ID ("FID"). The Consolidated Class Action Complaint, Dkt. 28, further alleges that (1) the FID is a unique and persistent identifier that Facebook assigns to each user that is linked to the user's Facebook profile and (2) by using the FID, any ordinary person can look up the user's Facebook profile. Based on these allegations, Plaintiffs contend the FID, the video content name, and the URL shared by Defendant, allowed Meta to learn the identity of the Class Members and the specific video content they viewed on Defendant's website. In the litigation, Defendant has denied these allegations.

The Consolidated Class Action Complaint further alleges that information intercepted via the Meta Pixel allowed Defendant and/or Meta or its advertisers to directly target advertising to Class Members based on the video media they viewed privately and that in exchange for providing the conduit for this information (permitting the installation and functioning of the Meta Pixel on Inquirer.com), Defendant received a financial benefit. In the litigation, Defendant has denied these allegations.

Defendant has denied that it shared any video watching information of its users and denies it violated the VPPA or the PA Wiretap Act, Dkt. 58.

### III.      HISTORY OF THE LITIGATION

On October 19, 2022, Plaintiffs Jason Braun and Jim Cummings filed a Class Action Complaint ("CAC") against Defendant alleging Defendant violated the VPPA. Dkt. 1. On October 31, 2022, Plaintiff Stephanie Carter filed a CAC alleging the same conduct. 2:22-cv-04355, Dkt. 1. The two cases were consolidated under Case No. 2:22-cv-04185 on December 7, 2022. Dkt. 19. On January 1, 2023, this Court appointed Spector Roseman & Kodroff (SRK) and Goldenberg Schneider, LPA (GS) as Interim Class Counsel. Dkt. 27. Plaintiffs filed an Amended Consolidated Class Action Complaint on February 17, 2023. Dkt. 28.

On April 14, 2023, Defendant filed a Motion to Dismiss the Complaint, Dkt. 33. On June 14, 2023, the Court entered a scheduling order regarding fact discovery, expert reports and discovery, class certification and other dispositive motions, and referred the case to United States Magistrate Judge Carol Sandra Moore-Wells  for settlement purposes. Dkt. 43. On November 13, 2023, the Court denied Defendant's Motion to Dismiss after extensive briefing from both parties, Dkt. 53, 54, and also ordered the parties to participate in a settlement conference. Dkt. 52. Defendant filed its Answer on December 11, 2023, wherein it denied it violated the VPPA or the PA Wiretap Act. Dkt. 58.

The parties conducted discovery and engaged in informal settlement conferences, exchanged mediation briefs, and participated in a formal mediation process before Judge Moore-Wells beginning on December 1, 2023. *See* Dkt. 60. The mediation process and efforts of Judge Moore-Wells proved successful, as the parties reached an agreement in principle on January 18,

2024. Since then, the parties continued to negotiate the details of a fair and reasonable settlement, which is now being presented to the Court.

## IV.   SUMMARY OF SETTLEMENT

### A.   The Class

The Settlement Agreement defines the Class as follows:

> "Settlement Class" is defined as: the approximately 180,000 individuals identified on the "Settlement Class List" generated by Defendant who established a digital subscription account with Defendant at any time from October 1, 2019 until January 16, 2024 and used Facebook during that time.

Excluded from the proposed Class are the following persons and entities:

    a.    The Judge presiding over this Action;

    b.    Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, and employees;

    c.    Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out deadline.

Ex. A to Macoretta Decl., ¶ 29.

### B.   The Settlement Fund.

Defendant has agreed to pay One Million One Hundred Twenty-five Thousand Dollars ($1,125,000.00) (the "Settlement Amount") into a common fund. The Settlement Amount is the full and complete amount of Defendant's financial obligations with respect to the Settlement. *See* Ex. A to Macoretta Decl., ¶32. Within thirty (30) days of the entry of the Preliminary Approval Order, Defendant shall deposit the Settlement Amount into an interest-bearing account established and administered by the Settlement Administrator at a financial institution agreed upon by Class Counsel and Defendant. Subject to Court approval, the Settlement Amount will be used to pay all costs associated with administration of this Settlement, class notice, claim processing, and paying

approved claims, service award payments, fee awards and costs, and taxes and tax-related expenses.

The Settlement Fund is non-reversionary. If any residual funds remain in the Settlement Fund after the payment of all valid Claims and following the expiration of time permitted to deposit Settlement Payments made by a check, the remaining funds shall be paid to a *cy pres* recipient recommended by Class Counsel, with the consent of Defendant, and as approved by the Court.

**V.      THIS SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23**

In evaluating a motion for preliminary approval of a class settlement where settlement precedes class certification, the court may preliminarily certify the class for purposes of providing notice. *Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *2 (E.D. Pa. Mar. 13, 2024). In these situations, the court approves preliminary certification of the class but reserves final certification until it approves the final settlement agreement. *Wood v. Saroj & Manju Invs. Philadelphia LLC*, No. CV 19-2820-KSM, 2020 WL 7711409, at *3 (E.D. Pa. Dec. 28, 2020)

"The [United States] Supreme Court has made clear that '[s]ettlement is relevant to a class certification.'" *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619 (1997)). Accordingly, a district court may consider the existence of a proposed settlement when evaluating whether class certification is appropriate, *Pet Food*, 529 F.3d at 341 (*citing In re Prudential Ins. Co*., 148 F.3d 283, 308 (3d Cir.1998)), and thus need not inquire, in the context of a request to certify a settlement class, "whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products v. Windsor*, 521 U.S. 591, 620 (1997).

7

While the Third Circuit stressed in *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008) that limited consideration of the merits may be relevant in considering a motion for class certification, it also made clear that the reason for this is not to predict which party will prevail on the merits. *Id*. at 317 n. 17. Rather, consideration of merits issues is permissible only as those issues pertain to the requirements of Rule 23; if there is no such Rule 23 connection, the inquiry is inappropriate. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 294 (3d Cir. 2010), as amended (Oct. 20, 2010) (citations omitted). The touchstone of the class certification inquiry thus remains whether the Rule 23 requirements have been satisfied, not whether the plaintiffs have stated a cause of action. *Id*. at 294-95 (citations omitted).[2]

The overarching purpose of Rule 23 is to ensure that courts will identify the common interests of the class members and evaluate the ability of the named plaintiffs and their counsel to fairly and adequately protect the interests of the class. *Id.* at 291 (citation omitted). For the reasons set forth below, the proposed settlement class meets all the Rule 23 requirements for certification.

A.    **The Elements of Rule 23(a) are Satisfied.**

1.   **Numerosity is Present.**

The first element of Rule 23(a) requires that the class be of sufficient size that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff need not show that joinder is "impossible" to show that it is "impracticable." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 260 (E.D. Pa. 2012). Generally, though, if the "potential number of

---

[2] Here, the Plaintiffs' claims have survived a Motion to Dismiss.

plaintiffs exceeds 40, the [numerosity] prong of Rule 23(a) has been met." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016) (citation omitted).

Here, because each Class Member established a digital subscription account with Defendant between October 1, 2019 and January 16, 2024, and because Defendant maintains records of such subscriptions, Plaintiffs can identify each Class member as well as the number of potential class members: approximately 180,000 individuals. Thus, the numerosity prong is satisfied.

### 2. There are Common Questions of Law and Fact.

The Rule 23(a)(2) commonality provision is also met here. This requires that there be "questions of law or fact common to the members of the class." Fed. R. Civ. P. 23(a)(2). A common question is one that "is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality "does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) (quoting *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). A "single common question is sufficient" to establish commonality. *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (citation omitted).

This action alleged common questions of law and fact to be decided by the fact-finder's analysis of common evidence. Such questions include:

- whether Defendant knowingly disclosed Class Members' Personal Viewing Information to Meta;

- whether the information disclosed to Meta concerning Class Members' Personal Viewing Information constitutes personally identifiable information under the VPPA;

- whether Class Members consented to Defendant's disclosure of their Personal Viewing Information to Facebook in the manner required by the VPPA;

- whether Defendant intentionally intercepted or procured another person to intercept Class Members' electronic communications in violation of the Pennsylvania Wiretap Act;

- whether Defendant intentionally disclosed the contents of Class Members' electronic communications;

- whether Defendant intentionally used the contents of Class Members' electronic communications; and

- whether the Class is entitled to damages and other relief as a result of Defendant's conduct.

Plaintiffs alleged that Defendant's conduct and the various statutory requirements are common threads running through each of these issues. The Eastern District of Pennsylvania has found commonality satisfied in similar circumstances. See *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *4 (E.D. Pa. Sept. 24, 2019); *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2023 WL 6690705, at *4 (E.D. Pa. Oct. 12, 2023).

### 3.   Plaintiffs' Claims are Typical of the Class's Claims.

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality factor examines "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). Typicality is satisfied where class representatives' claims and those of the putative class members arise from the same conduct. *In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705 at *4.

10

Here, Plaintiffs Braun's and Carter's claims and all Class Members' claims arise from the same alleged conduct: Defendant disclosing Plaintiffs' and Class Members' Personal Viewing Information to Meta without obtaining express written consent. Plaintiffs Braun and Carter also alleged that their claims are based on the same legal theories as the claims of other Class Members: Defendant violated the VPPA and PA Wiretap Statutes. Both statutes provide for statutory damages which would apply identically to Plaintiffs and the Class.

### 4. The Class is Adequately Represented.

The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation with two objectives: (1) "ensure that the named plaintiff[s] and its counsel have the ability and the incentive to represent the claims of the class vigorously," and (2) "[ensure] that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 199 (E.D. Pa. 2017).

The adequacy standard is met here. First, Plaintiffs are represented by experienced counsel thoroughly familiar with litigating complex class actions. Class Counsel, Spector Roseman & Kodroff, P.C. and Goldenberg Schneider, LPA have served in leadership roles in numerous consumer class actions, including similar cases involving disclosure of personal data.[3] Since the inception of this litigation, Class Counsel have consistently demonstrated the willingness and ability to fairly and adequately represent the proposed Class.

Over the past year and a half, Class Counsel devoted the time and resources required to

---

[3] *See* Ex. B to Macoretta Decl., Firm Resumes.

achieve the best recovery possible on behalf of the Class, briefing and defeating a motion to dismiss, negotiating a stipulation regarding the discovery of documents and electronically stored information, and participating in informal settlement discovery and conferences as well as a formal mediation. *See Diaz v. BTG Int'l Inc.*, No. 19-CV-1664-JMY, 2021 WL 2414580, at *7-8 (E.D. Pa. June 14, 2021) (finding adequacy satisfied where the attorneys representing the plaintiffs and the class were highly qualified and experienced in the subject litigation); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 262 (E.D. Pa. 2012) (finding adequacy satisfied where interim co-lead counsel demonstrated their dedication and ability through their handling of the subject litigation).

The second prong of the adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 431 (3d Cir. 2016), as amended (May 2, 2016). Here, the interests of the Plaintiffs and the putative Class are aligned; all have the same interest in establishing Defendant violated the VPPA and PA Wiretap Act, and that they are subsequently entitled to damages. By pursuing this litigation, each Plaintiff necessarily advances the common interests of all other Class members. Nothing suggests that Plaintiffs have interests antagonistic to the Class.  To the contrary, Plaintiffs Braun and Carter have vigorously and zealously pursued their claims for the benefit of the Class. To this point, Plaintiff Braun and Carter both attended and participated in the formal mediation session with Judge Moore-Wells. Macoretta Decl., ¶ 5.

As discussed above, all the requirements of Rule 23(a) are satisfied here.

A.     **The Requisite Elements of Rule 23(b)(3) are Satisfied.**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Class satisfies one of the provisions of Rule 23(b). Plaintiffs make such a showing here.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is similar to commonality and tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 49 (E.D. Pa. 2019), *aff'd sub nom. In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020). What matters for purposes of predominance is whether there are common questions. *Id.* at 52. Common questions are those where the same evidence will suffice to show the issues are susceptible to generalized, class-wide proof, as opposed to individual questions where members of a proposed class would need to present evidence that varies from member to member. *Id.*

Here, as explained in Section V(A)(2), common questions of law and fact about The Philadelphia Inquirer's conduct and whether such conduct violated the VPPA and The PA Wiretap Act predominate over any individual questions. Moreover, the answers to those common questions will turn on the same evidence: evidence of Defendant's installation of the Meta Pixel on its website; evidence as to how the Meta Pixel functions; evidence as to what information Meta receives from Defendant via the Meta Pixel, if any; and evidence as to whether Subscribers to Defendant's website, who all followed the same steps to subscribe, were notified of and required to give consent to the disclosure of their Personal Viewing Information. Thus, predominance is satisfied.

Plaintiffs must next show that a class action is superior to individual actions. This is

evaluated by four considerations: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.[4] Fed. R. Civ. P. 23(b)(3).

Here, any Class Member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Approximately 180,000 individuals were subscribers to Defendant with access to digital media and videos and watched videos on Defendant's website during the relevant time period; settling these claims in the context of a class action in this Court conserves both judicial and private resources and hastens these Class Members' recovery. Additionally, there are no other pending cases asserting the same claims already commenced by any members of the Class and concentrating the litigation of these claims in one forum, the Eastern District of Pennsylvania, is desirable insofar as it will allow Class Members to resolve their claims within the state where Defendant, The Philadelphia Inquirer LLC, does business. *See Katz v. DNC Servs. Corp.*, No. CV 16-5800, 2024 WL 454942, at *6 (E.D. Pa. Feb. 6, 2024) (finding superiority satisfied under similar circumstances).

Accordingly, common questions predominate, and the proposed class action is superior to

---

[4] While Plaintiffs see no management difficulties in this case, this consideration is irrelevant to certifying the proposed Settlement Class. *See Corra v. ACTS Ret. Servs., Inc.*, No. CV 22-2917, 2024 WL 22075, at *5 (E.D. Pa. Jan. 2, 2024) ("[W]here, as here, the Court is confronted with a request for settlement-only class certification, the Court need not inquire whether the case, if tried, would present intractable management problems") (internal citations omitted).

other available methods (if any) for the fair and efficient adjudication of the controversy relating to Defendant. Plaintiffs satisfy Rule 23(b)(3).

**B.      Ascertainability is Satisfied.**

The Third Circuit has a heightened ascertainability requirement. *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015). In addition to demonstrating the existence of an objective class definition, the proponent of class certification must submit evidence of an administratively feasible methodology for ascertaining class members before class certification. *Id*. at 164-65.

The Third Circuit has held that, like manageability, ascertainability is not a factor when considering approval of a class action settlement. *In re Comcast Corp. Set–Top Cable Television Box Antitrust Litig.*, 656 F. App'x 8, 9 (3d Cir. 2016). Moreover, even if ascertainability was a factor, Plaintiffs have shown an administratively feasible methodology for ascertaining class members: Defendant has already identified, from its own records, data, including contact information, for the approximately 180,000 members of the proposed Class.

**VI.      BECAUSE THE SETTLEMENT SATISFIES FED. R. CIV. P. 23(e) PRELIMINARY APPROVAL IS WARRANTED.**

Federal courts favor class action settlements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing the "strong presumption in favor of voluntary settlement agreements" and noting that it is "especially strong" in the context of  class action cases); *Austin v. Penn. Dept. of Corrections*, 876 F. Supp 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest.'") (citation omitted); *see also Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) ("[T]he settlement of complex litigation before trial is favored by the federal courts.").

At the preliminary approval stage, the court may direct notice to the class members if such notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). The relevant Rule 23(e)(2) factors are whether:

>  (A) the class representatives and class counsel have adequately represented the class;

>  (B) the proposal was negotiated at arm's length;

>  (C) the relief provided for the class is adequate, taking into account:
>  (i) the costs, risks, and delay of trial and appeal;
>  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>  (iv) any agreement required to be identified under Rule 23(e)(3); and

>  (D) the proposal treats class members equitably relative to each other.

>  Fed. R. Civ. P. 23(e).

These factors are analyzed below.

### A.      Plaintiffs and Class Counsel have Adequately Represented the Class.

The settlement negotiations were conducted for Plaintiffs by counsel with extensive experience in litigating data breach and privacy lawsuits, class actions generally, and other complex cases. Class Counsel know how to pursue data privacy cases and, after nearly a year and a half of litigation, were intimately familiar with the strengths and weaknesses of their case. The vast experience of Class Counsel in litigating similar cases, while not dispositive, suggests the Settlement is fair. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight.").

16

Class Counsel firmly believe that the proposed Settlement is fair, reasonable, and adequate and should be approved. Courts in other cases have found it appropriate to strongly consider the recommendations of experienced counsel who have negotiated arm's-length settlements. *See, e.g., Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel . . . who have negotiated this settlement at arms-length and in good faith"); *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (citation, internal quotation omitted).

Moreover, the Class Representatives, Plaintiffs Braun and Carter, have vigorously and zealously pursued their claims for the benefit of the Class, attending and participating in the formal mediation session with Judge Moore-Wells. Macoretta Decl., ¶5.

**B.    <u>The Settlement is the Result of Arm's Length Negotiation</u>.**

Whether a class action settlement arises from arm's length negotiations is often the central focus of the analysis on a motion for preliminary approval. *Mehling*, 246 F.R.D. at 472; *Curiale*, 2008 WL 4899474, at *4. The proposed Settlement is the result of non-collusive, good faith efforts between adversaries to resolve the case before further dispositive motions, trial and ensuing appeals. *See* Macoretta Decl., ¶¶6-8. The Parties' participation in a mediation before Judge Moore-Wells is further evidence of such efforts. *Bellum v. L. Offs. of Frederic I. Weinberg & Assocs., P.C.*, No. CV 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal citations omitted). This factor thus supports preliminary approval. *See In re Nat'l Football League Players'*

17

*Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) (granting preliminary approval where the parties participated in a mediation and class counsel "fought hard for the greatest possible benefits").

       **C.**      **<u>The Relief Provided to the Class is Adequate</u>.**

As referenced above, when evaluating whether the relief provided to the Class is adequate, courts assess the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3).

The proposed Settlement has no obvious shortcomings and is plainly within the range of possible approval. It provides for the payment of the Settlement Amount into an account established for the benefit of the Class and administered by the Settlement Administrator. Subject to the plan of allocation, after deduction of fees, expenses, and service awards to the Plaintiffs, the balance in the Settlement Fund ("Net Settlement Fund") will be distributed to Class Members *pro rata*.

Class Members will thus be in a position to receive substantial relief that would have been substantially delayed and difficult to obtain had the case gone to trial. Further, the amount of damages allowed by statute, as compared to the time and expense required to undertake litigation, would likely have dissuaded Class members from individually pursuing relief. Plus, it would all be for naught in the presence of an adverse verdict, or the Defendant's inability to pay multiple judgements. An appeal of an adverse verdict, or defending an appeal from a successful verdict, would add still more time and expense. In sharp contrast, the proposed Settlement provides a certain and substantial recovery to members of the Class who submit valid claims.

Such recovery will be administered to the Class Members by the Settlement Administrator. The Settlement Administrator will process all submitted claim forms and will implement technology to identify fraudulent and duplicate claims. *See* Ex. C to Macoretta Decl., Declaration of Steven Weisbrot. If the Settlement Administrator approves the claim, that Class Member will receive a mailed check and/or an electronic payment.

At least thirty (30) days before the opt-out and objection deadlines, Class Counsel will file a fee application for an award of attorneys' fees, litigation costs, and expenses. Attorneys' fees will be paid from the Settlement Fund and are not to exceed one-third (33.33%) of the Settlement Fund, or $374,962 plus 33.33% of any interest earned. Litigation costs and expenses will not exceed $15,000. Thus, members of the Class can file their objections to Class Counsel's fee request for the Court's consideration.  The attorneys' fees, litigation costs, and expenses shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than ten (1) days after the Effective Date, which is one (1) business day after the later of: (i) the date upon which the time expires for filing or noticing an appeal of the Final Approval Order, (ii) entry of the Final Approval Order if no parties have standing to appeal; or (iii) if any appeal, petition, request for rehearing, or other review has been filed, the final Approval order is affirmed without material change or the appeal is dismissed, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, request for rehearing, or other review has expired.

Courts must consider the degree of case development that class counsel had accomplished prior to settlement to determine whether counsel had an adequate appreciation of the merits of the case before negotiating. *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. at 390. Even if a settlement occurs in an early stage of litigation, because there are means for class

counsel to apprise themselves of the merits of the litigation, complete discovery is not necessary for an adequate settlement. *Id*.

Here, Class Counsel had the opportunity to consider the merits of the case during briefing of the Motion to Dismiss, which the Court ultimately denied. The Parties then engaged in discovery and conferences during which they further evaluated the strengths and weaknesses of their respective arguments. The risks faced by both parties associated with a continuation of the litigation favor resolution on the terms to which they have agreed. In cases such as this, courts have granted preliminary approval of class action settlements occurring before formal discovery. *See, e.g., In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. at 387, 424 (granting preliminary approval of class action settlement reached before discovery on the merits); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (granting preliminary approval of class action settlement where only informal discovery was conducted). As part of the settlement process the parties also considered the settlements reached in other, similar, VPPA cases. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 934-35 (N.D. Ill. 2022); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 816-ML-02693-JLS-KES, 2019 WL 12966638, at *10 (C.D. Cal. July 31, 2019).

Pursuant to Rule 23(e)(2)(C)(iv), the only agreement here is the Settlement Agreement itself, attached as Exhibit A to Macoretta Decl. *See* Macoretta Decl., ¶6.

Thus, overall, Class Counsel believes the proposed Settlement represents an excellent result for the Class. The consideration to be paid by the Defendant, when balanced against the risks and potential benefits of continued litigation, demonstrates that the Settlement falls well within the range of what is fair, reasonable, and adequate, and clearly merits preliminary approval.

**D.**      **The Settlement treats All Class Members equitably.**

Under the proposed Settlement Agreement, each Class Member is afforded the same financial and equitable relief. All Class Members submitting claim forms which are approved shall receive a pro-rata settlement payment from the Settlement Fund, and Defendant will suspend operation of the Facebook or Meta Pixel on any pages on its website or app that track video content and have a URL that identifies the video content viewed, a change in business practice that will benefit all Class Members equally.

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Plaintiffs have proposed a single notice plan for informing Class Members about the Court's certification of a settlement class, the Settlement, and their rights related to each. Here, the notice plan consists of emailing the class notice directly to Class Members and supplementing that notice with postcard notices as necessary (e.g., when email notice is returned as undeliverable). *See* Ex. C to Macoretta Decl., Declaration of Steven Weisbrot, ¶¶19-30.

Likewise, the Court should approve the selection of Angeion as the Settlement Administrator and permit it to disseminate notice. Angeion is an experienced, Philadelphia based, administration firm, *see id*, ¶¶9-12.

**A.**      **The Proposed Manner of Notice Complies with Rule 23.**

Pursuant to Fed. Civ. P. 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The best notice practicable is notice that can be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950). Notice may be provided by "United States mail,

21

electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

Under this standard, the best method of notice for these Class Members is direct individual notice. *See* MANUAL FOR COMPLEX LITIGATION (4th ed.) § 21.311 at 488; Rule 23(c)(2)(B). Because Defendant knows the identities of the Class members and also has contact information for them (e.g., email addresses and/or mailing addresses), the notice plan relies upon providing individual notice.

The proposed Notice Plan is detailed in the Declaration of Steven Weisbrot, attached as Exhibit C to Macoretta Decl., and provides that within five (5) business days after the date of the Preliminary Approval Order, Defendant shall provide the Settlement Class List to the Settlement Administrator. Within thirty (30) days after receipt of the Settlement Class List, the Settlement Administrator shall disseminate electronic notice by email to the 180,000 Class Members listed on the Settlement Class List,[5] supplemented with direct postcard notice by first-class mail for any Class Member whose email address is determined to be invalid and for whom a mailing address is available. Additionally, should the Settlement Administrator determine that publication notice is required to reach more Class Members, the Parties have agreed that such notice shall be provided by Defendant in the print and electronic versions of the Philadelphia Inquirer free of charge, and

---

[5] Individualized notice via e-mail has been repeatedly recognized as an appropriate manner of delivering notice. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2021 WL 5758896, at *4 (E.D. Pa. Dec. 3, 2021) ("individualized notice may properly be provided by first-class mail or email, so long as it is, in fact, individualized notice."); *Talone v. Am. Osteopathic Ass'n*, No. 1:16-CV-04644-NLH-JS, 2018 WL 6318371, at *6 (D.N.J. Dec. 3, 2018) (settlement administrator sending notice of settlement and class certification via email); *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2016 WL 4033969, at *3 (D.N.J. July 26, 2016) (settlement administrator disseminating notice of settlement via email to the 111,893 class members who had email addresses).

in a size and location as reasonably determined by Defendant and the Settlement Administrator. This notice plan is estimated to reach an estimated 70% of Class members.  *See* Ex. C to Macoretta Decl., Declaration of Steven Weisbrot, ¶40.

Notice plans with these attributes have been approved in similar cases.[6] Plaintiffs submit that the manner of giving notice they propose in this case should be approved as well.

**B.**     **The Form of Notice Complies with Rule 23.**

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language:

  i.    the nature of the action;
  ii.   the definition of the class certified;
  iii.  the class claims, issues, or defenses;
  iv.   that a class member may enter an appearance through an attorney if the member so desires;
  v.    that the court will exclude from the class any member who requests exclusion;
  vi.   the time and manner for requesting exclusion; and
  vii.  the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed postcard notice and electronic notice, attached as Exhibits D and E to the Macoretta Decl., meet these requirements by providing an easily understood description of the subject matter and claims at issue in the litigation. *See In re Prudential Ins. Co. of Am. Sales*

---

[6] *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, No. 816-ML-02693-JLS-KES, 2019 WL 12966639, at *13-14 (C.D. Cal. Jan. 4, 2019) (court finding proposed notice sufficient in VPPA case where notice plan consisted of combination of email notice for class members for which defendant had email addresses, digital advertising campaign, and television notice (where defendant Vizio's products, smart televisions, were at the heart of plaintiffs' VPPA claims just as Defendant Philadelphia Inquirer's product, Inquirer.com, is at the heart of the present case); *In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (court granting final approval of settlement in VPPA case where notice plan consisted of providing class members with notice via email, notification via print and online publication, and maintaining a settlement website).

*Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998) (notice is sufficient where it informs class members of the nature of the litigation, the general terms of the settlement, where complete information can be located, the time and place of the final fairness hearing, and the opportunity for objectors to be heard); *see also Nichols v. SmithKline Beecham Corp.*, Civ. A. 00-6222, 2005 WL 950616, at *9 (E.D. Pa. Apr. 22, 2005) (same as *Prudential*).

The proposed notice materials are based on samples promulgated by the Federal Judicial Center and are like those regularly used in similar class actions across the country. They explain the case in "clear, concise, easily understood language," and fairly apprise Class members of the Settlement's terms and their options in connection with the proceedings, including the opportunities to opt out or attend and participate in the final fairness hearing. The materials are also neutral and convey no opinion of the Court about the Settlement.

Similarly, the claim form Class Members must complete to receive any settlement funds is straight-forward, clearly and succinctly explains the information they must provide, and is not overly burdensome or complicated. The claim form indicates the last date by which all claims must be submitted or postmarked, which will be 80 days from the date of entry of the Court's preliminary approval order. A copy of the proposed claim form is attached as Exhibit G to the Macoretta Decl.

Once the Settlement Administrator has completed processing and calculating the settlement awards for all timely-filed claims, its final recommendations will be submitted to the Court for its approval. Then, the Net Settlement Fund will be paid out *pro rata* to each Class Member who submitted a valid claim.

24

**C.**      **Angeion Group is Qualified to Serve as Settlement and Notice Administrator.**

Angeion Group ("Angeion") is an experienced national class action and settlement administrator and has been appointed to the same or similar positions in many consumer and privacy class actions, including in the Eastern District.[7] Angeion successfully executed the court-approved notice programs in those cases, in addition to claims processing and distribution where required. Because it has exhibited the skill and experience necessary to successfully administer complex notice and claims programs in prior cases, Angeion should be appointed Settlement Administrator. Angeion was selected after a competitive bidding process.

The Settlement Administrator will have the authority to contact the claimants as necessary to confirm information provided in the Claim Forms or to seek additional information as required. Under the supervision of Class Counsel, the Settlement Administrator will ensure that Class members' claims are handled appropriately, inquiries from Class Members are responded to in a timely fashion, and the claims are administered fairly and accurately.  This process will include the evaluation for, and exclusion of, fraudulent claims.

**E.**      **The Proposed Schedule for Final Approval is Adequate and Fair.**

Preliminary approval includes setting the deadlines for providing notice to the Class, objecting to the Settlement, submitting papers related to final approval and an award of attorneys' fees and costs, submitting claims, and setting the date for the final fairness hearing. That hearing will provide a forum for proponents and opponents (if any) of the Settlement to address its terms,

---

[7] *See also* https://www.angeiongroup.com/class-action-administration/.

including its fairness, adequacy, and reasonableness, as well as the motion for attorneys' fees and costs.

Plaintiffs propose, and seek the Court's approval of, the following schedule for these events:

| | Event | Timing |
|---|---|---|
| 1 | Notice and claim form to be sent and posted on InquirerClassActionSettlement.com<br><br>(Notice Deadline) | Within thirty (30) days after Settlement Administrator receives Settlement Class List from Defendant. |
| 2 | Postmark deadline for Opt-Outs, Objections, and notices of intent to appear at Fairness Hearing | Within 45 days after the Notice Deadline |
| 3 | Deadline for filing motions for final approval and for attorneys' fees and reimbursement of expenses | At least thirty (30) days before the Opt-Out and Objection Deadlines. |
| 4 | Final Approval Hearing | _____, 2024, at __:__. |
| 5 | Postmark deadline for filing claims | 45 days after Notice deadline. |

The Settlement Agreement contemplates a period of 45 days from the date of the original notice as the date by which Class members must postmark a request to exclude themselves from the class. The proposed notice directs Class members that wish to opt-out or exclude themselves from the Class to submit their exclusion request to Angeion and to Co-Lead Counsel.

This proposed 45-day period provides members of the Class sufficient time to decide whether to opt out. Courts have approved opt-out periods of 45 days in other cases.[8]

---

[8] *See McGowan v. CFG Health Network, LLC*, No. 322CV02770ZNQRLS, 2023 WL 8014541, at *2 (D.N.J. Nov. 17, 2023); *In re Remeron End-Payor Antitrust Litig.*, No. CIV. 02-2007 FSH, 2005 WL 2230314, at *13 (D.N.J. Sept. 13, 2005) (45 days).

## VIII.   CONCLUSION

Plaintiffs Braun and Carter respectfully request that the Court grant preliminary approval of the proposed Settlement with Defendant Philadelphia Inquirer. The Settlement falls well within the range of possible approval, there are no grounds to doubt its fairness, and it was negotiated at arm's length by experienced counsel who support it. A proposed Order granting this Motion is provided.


Dated: June 6, 2024

*/s/ John A. Macoretta*
John A. Macoretta (PA 60094)
Jeffrey L. Kodroff (PA 55780)
Diana J. Zinser (PA 203449)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300
jmacoretta@srkattorneys.com
jkodroff@srkattorneys.com
dzinser@srkattorneys.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
jgoldenberg@gs-legal.com

*Attorneys for Plaintiffs and Interim Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was filed via the Court's CM/ECF system for electronic service on all counsel of record.


Dated: June 6, 2024                                  /s/ *John A. Macoretta*
                                                           John A. Macoretta