## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON BRAUN and STEPHANIE CARTER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No.: 2:22-cv-04185-JMY |
| v. | CONSOLIDATED ACTION |
| THE PHILADELPHIA INQUIRER, LLC, | |
| Defendant. | |

## DECLARATION OF JOHN A. MACORETTA IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, John A. Macoretta, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, as follows:

1.    I have personal knowledge of the matters described below, and if called to testify upon them, would be competent to do so.

2.    I am a partner in the law firm Spector Roseman & Kodroff, P.C. and submit this Declaration in support of the Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). A copy of the Settlement Agreement is attached as **Exhibit A**. I have served as lead or co-lead counsel on numerous nationwide class actions and have substantial experience litigating class actions and complex civil litigation.

3.      On October 19, 2022, Plaintiffs Jason Braun and Jim Cummings filed a Class Action Complaint against Defendant. On October 31, 2022, Plaintiff Stephanie Carter filed a Class Action Complaint with the same allegations. 2:22-cv-04355. The two cases were consolidated under Case No. 2:22-cv-04185 on December 7, 2022. Dkt. 19.   A Consolidated Class Action Complaint ("CAC")was filed on February  17, 2023, Dkt. 28.

4.      On January 1, 2023, this Court designated Specter Roseman & Kodroff, P.C. and Goldenberg Schneider LPA as Interim Class Counsel. Dkt. 27. The firm and attorney profiles describing our professional background and qualifications to serve as Class Counsel are attached as **Exhibit B**.  Class Counsel have been intimately involved in every aspect of the litigation since its inception.

5.      The CAC alleged that Defendant violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, the Pennsylvania Wiretap and Electronic Surveillance Control Act ("PA Wiretap Act"), 18 Pa. C.S. § 5701 et seq., and thus Plaintiffs' and Class members' statutorily protected right to privacy in their video-watching habits by knowingly sharing their personal viewing information and personally identifiable information with Facebook ("Meta") without consent. Dkt. 28. Defendant moved to dismiss the CAC. Dkt. 33.  After extensive briefing from both parties, the Court denied Defendant's motion to dismiss Dkt. 53, 54.

6.      On June 14, 2023, the Court entered a scheduling order regarding fact discovery, expert reports and discovery, class certification and other dispositive motions, and referring the case to United States Magistrate Judge Carol Sandra Moore-Wells for settlement purposes. Dkt. 43. Thereafter, the parties conducted discovery and engaged in informal settlement conferences with each other, exchanged mediation briefs, and participated in a formal mediation process before Judge Moore-Wells beginning on December 1, 2023. *See* Dkt. 60.  Plaintiffs Braun and Carter

both attended and participated in the formal mediation session with Judge Moore-Wells. Since the formal mediation before Judge Moore-Wells, the parties have continued to negotiate the details of a fair and reasonable settlement, which has now been reached.

7.    There were no commitments made to or by Class Counsel other than what is set forth in the Settlement Agreement. Attorneys' fees were never a part of negotiations for the Settlement.

8.    Based on extensive experience representing plaintiffs in similar class actions, I and my fellow Class Counsel recognize the costs and risk of continued prosecution of the Action and believe that it is in the best interest of Plaintiffs and the Settlement Class to resolve it on the terms set forth in the Settlement Agreement.

9.    I and my fellow Class Counsel believe the Settlement Agreement is fair, adequate, reasonable, and is in the best interests of, and will provide significant benefits to, the Class in light of all known facts and circumstances, including the significant risks and uncertainties that are presented by the case in its current posture. These risks and uncertainties include getting the class certified, potential future summary judgment motions, and a potential future trial.   Class Counsel believe that a $1,125,000 recovery for the Class in these circumstances is an excellent result.

10.    Class Counsel have vigorously represented the interests of Plaintiffs and the Settlement Class members from inception, including the initial investigation, legal and factual analysis, discovery, mediations before Judge Moore-Wells and negotiations with Defendant. Such involvement has enabled Class Counsel to negotiate this beneficial settlement from a position of knowledge and strength, and as advocates for the entirety of the Settlement Class.

11.     Attached as **Exhibit C** is a true and correct copy of the Declaration of Steven Weisbrot of Angeion Group, LLC.   Class Counsel has selected Angeion as the Settlement Administrator.

12.     Attached as **Exhibit D** is a true and correct copy of the proposed Short Form Notice to Class Members.

13.     Attached as **Exhibit E** is a true and correct copy of the proposed Email Notice to Class Members.

14.     Attached as **Exhibit F** is a true and correct copy of the proposed Long Form Notice to Class Members.

15.     Attached as **Exhibit G** is a true and correct copy of the proposed claim form.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 6, 2024 in Philadelphia, Pennsylvania.

John A. Macoretta

4

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between (1) Jason Braun and Stephanie Carter, individually and on behalf of Participating Settlement Class Members (as defined below) (collectively referred to herein as the "Plaintiffs"), and (2) The Philadelphia Inquirer, LLC ("Defendant") (collectively the "Parties"), in the consolidated action styled as *Braun v. The Philadelphia Inquirer*, LLC, Case No. No. 2:22-cv-04185-JMY ("Action"), pending in the U.S. District Court for the Eastern District of Pennsylvania.

## RECITALS

WHEREAS, in the Action Plaintiffs allege Defendant violated of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701 et seq. ("Pennsylvania Wiretap Act") stemming from Defendant's use of Facebook's Meta Pixel on its website, www.inquirer.com, and mobile application; and

WHEREAS, Plaintiffs allege Defendant knowingly intercepted Plaintiffs' and Participating Settlement Class Members' electronic communications without the proper consent, then disclosed to Facebook the contents of these electronic communications, which included  (i) Plaintiffs' Facebook ID ("FID") and (ii) software code containing the name of a video allegedly watched and corresponding URL ("Video Media" and collectively the FID and Video Media are referred to as the "Personal Viewing Information"); and

WHEREAS, two class actions were originally filed in the Action alleging violations of the VPPA and Pennsylvania Wiretap Act in matters entitled: *Jason Braun, et al., v. The Philadelphia Inquirer*, Case No. 2:22-cv-04185-JMY and *Stephanie Carter v. The Philadelphia Inquirer*, Case No. 2:22-cv-04355-JMY; and

WHEREAS, after the *Braun* and *Carter* actions were consolidated on December 5, 2022, a Consolidated Class Action Complaint was filed in the Action on February 17, 2023, and the Honorable Judge John M. Younge appointed Spector Roseman & Kodroff, P.C. and Goldenberg Schneider, LPA as Interim Class Counsel on January 20, 2023; and

WHEREAS, Defendant moved to dismiss the Action  on April 14, 2023 and following the completion of briefing, the Court issued an order on November 13, 2023 largely denying Defendant's motion to dismiss; and

WHEREAS, to avoid the risks and uncertainties of litigation, Plaintiffs and Defendant have engaged in settlement negotiations pursuant to Federal Rule of Evidence ("FRE") 408 in order to avoid the expense and uncertainties of litigation, which included (a) informal settlement discovery and conferences between the Parties; (b) an exchange of mediation briefs; and (c) a formal mediation before the Honorable Magistrate Judge Carol Sandra Moore Wells ("Judge Moore Wells"); and

1

WHEREAS, following extensive, adversarial and arm's length settlement negotiations in an all-day mediation session on December 1, 2023 conducted by Judge Moore Wells, and several weeks of follow up mediation efforts led by Judge Moore Wells, the Parties reached a settlement in principle; and

WHEREAS, Defendant has denied and continues to deny any wrongdoing whatsoever including, without limitation, as to: (a) the allegations and any and all liability or damages with respect to any and all facts and claims alleged in the Action, whether as to individual plaintiffs or as to the putative class, including but not limited to the claims that the Defendant knowingly intercepted Plaintiffs' and Participating Settlement Class Members' electronic communications without the proper consent, then disclosed to Facebook the contents of these electronic communications, including Personal Viewing Information; and (b) that the Action satisfies the requirements to be certified as a class action under Federal Rule of Civil Procedure 23; and

WHEREAS, this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession by Defendant as to any claim, fault, liability, wrongdoing or damage whatsoever, or as to any infirmity in the defenses that Defendant has asserted or would assert, or as to the requirements of Federal Rule of Civil Procedure 23 and whether Plaintiffs satisfy those requirements;

NOW, THEREFORE, in exchange for the mutual promises and valuable consideration described above and provided for in this Agreement, and without any admission or concession by either Party, the Parties agree to a full, complete, and final settlement and resolution of the Action, subject to Court approval, on the following terms and conditions:

I.    **DEFINITIONS**

In addition to terms defined at various points within this Agreement, the following defined terms shall have the meanings set forth below:

1.    "Approved Claim" means the timely submitted Claim Form by a Participating Settlement Member that has been approved by the Settlement Administrator.

2.    "Defendant" or "The Philadelphia Inquirer, LLC" means the Philadelphia Inquirer, and its predecessors, successors, affiliates, subsidiaries, parent and assigns and their respective directors, principals, partners, officers, agents, dealers, suppliers, attorneys, representatives, employees and insurers.

3.    "Defendant's Counsel" means Troutman Pepper Hamilton Sanders LLP.

4.    "Claim Form" or "Claim" means the form Participating Settlement Class Members must timely submit to be eligible for a pro-rata Settlement Payment from the Net Settlement Fund under the terms of this Agreement. The format of the Claim Form , which shall be available on the Settlement Website, and mailed to Settlement Class Members who request that a Claim Form be mailed, will be attached to the Settlement Class Notice.

2

5.      "Claims Deadline" means the last day to submit a timely Claim Form, which will occur forty-five (45) days after the Notice Deadline.

6.      "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement benefits, which will end on the Claims Deadline.

7.      "Class Counsel" means Spector Roseman & Kodroff, P.C. and Goldenberg Schneider, LPA.

8.       "Settlement Class Representatives" means Jason Braun and Stephanie Carter.

9.      "Court" means the Honorable John M. Younge in the U.S. District Court for the Eastern District of Pennsylvania, or such other judge to whom the Action may hereafter be assigned.

10.      "Effective Date" means one (1) business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order and Judgment; (ii) entry of the Final Approval Order and Judgment if no parties have standing to appeal; or (iii) if any appeal, petition, request for rehearing, or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired.

11.      "Fee Application" means any motion for an award of attorneys' fees, Litigation Costs and Expenses, and Service Award Payments to be paid from the Settlement Fund, as set forth in Paragraphs 63 and 65.

12.      "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel and other Plaintiff's counsel at the discretion of Class Counsel.

13.      "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Action with prejudice, otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23, and is consistent with all material provisions of this Settlement Agreement. Class Counsel and Philadelphia Inquirer, LLC's Counsel will work together on a mutually agreeable proposed Final Approval Order and Judgment for the Court's consideration.

14.      "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

15.      "Litigation Costs and Expenses" means costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Action.

3

16.    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (1) Notice and Administrative Expenses; (2) the Fee Award and Costs; and (3) Service Award Payments.

17.    "Notice" or "Settlement Class Notice" means notice of the proposed class action Settlement to be drafted by Class Counsel in conjunction with the Settlement Administrator and subject to approval by Defendant's Counsel and provided to Settlement Class Members pursuant to the Preliminary Approval Order. "Notice" shall be primarily accomplished by electronic means (e.g., email), and if needed, shall include publication notice in the Philadelphia Inquirer newspaper as determined by the Settlement Administrator, at no cost to the Class. One or more reminder Notices shall be emailed to Settlement Class Members prior to the Claims Deadline. Notice may also be sent by postcard to those Settlement Class Members whose email addresses are invalid and for whom an address is available.

18.    "Notice Deadline" means the last day by which Notice must be issued to the Settlement Class Members, and will occur thirty (30) days after receipt by the Settlement Administrator of the Settlement Class List.

19.    "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, providing Notice of the Settlement to appropriate federal and state officials as required by the Class Action Fairness Act (28 U.S.C. §1715), providing reminder notices to the Settlement Class, locating Settlement Class Members, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also includes all taxes and reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

20.    "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement or Fee Application, which will be forty-five (45) days after the Notice Deadline.

21.    "Opt-Out Deadline" is the last day on which a Settlement Class Member may file a Request for Exclusion from the Settlement Class, which will be forty-five (45) days after the Notice Deadline.

22.    "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

23.    "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment, that is consistent with all material provisions of this Settlement Agreement. Class Counsel and Philadelphia Inquirer, LLC's Counsel

will propose to the Court a mutually acceptable proposed Preliminary Approval Order for the Court's consideration.

24.    "Released Claims" means any and all claims, liabilities, rights, demands, suits, obligations, or damages whatsoever, including but not limited to consequential damages, losses or costs, punitive damages, attorneys' fees and costs, action or causes of action, penalties, remedies, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted or could have been asserted, liquidated or unliquidated, legal, administrative, statutory, or equitable—that relate to or arise from the actions and activities alleged in the Action including, but not limited to, actions and activities relating to Defendant's use of the Facebook or Meta Pixel.

25.    "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

26.    "Service Award Payment" means compensation awarded by the Court and paid to the Settlement Class Representatives, Stephanie Carter and Jason Braun, in recognition of their role in this litigation and their efforts on behalf of the Settlement Class.

27.    "Settlement" means the settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

28.    "Settlement Administrator" means Angeion Group. Class Counsel and the Defendant's Counsel may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

29.    "Settlement Class" means the approximately 180,000 individuals identified on the Settlement Class List generated by Defendant who established a digital subscription account with Defendant at any time from October 1, 2019 until January 16, 2024 and who used Facebook during that time. Excluded from the Settlement Class are: (1) the Judge presiding over this Action; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.
1.

30.    "Settlement Class List" means the list generated by Defendant containing the full names, email addresses, and current or last known addresses where known for all persons who fall under the definition of the Settlement Class, which Defendant shall provide to the Settlement Administrator within five (5) days of the Preliminary Approval Order.
2.

31.    "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

5

3.

32.      "Settlement Fund" means one million one hundred twenty-five thousand dollars ($1,125,000.00) to be paid by on behalf of Defendant as specified in Paragraph 36, plus any interest accrued thereon after payment, this being the full and complete limit and extent of the Philadelphia Inquirer, LLC's financial obligations with respect to the Settlement.

33.      "Settlement Payment" or "Settlement Check" mean the payment to be made via mailed check and/or electronic payment to a Participating Settlement Class Member pursuant to Section IV. The value of each Settlement Payment shall be determined by dividing the Net Settlement Fund by the number of valid Claim Forms approved by the Settlement Administrator.

34.      "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, Claim Form, this Agreement, Plaintiff's motion for preliminary approval of the Settlement, the Preliminary Approval Order, the Fee Application, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days after all Settlement Payments have been distributed.

35.      "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendant with respect to any income or gains earned by or in respect of the dollar amount in the Settlement Fund for any period while it is held in the Settlement Fund.

## II.    **SETTLEMENT FUND**

36.      **Establishment of Settlement Fund**. Within thirty (30) days of the entry of the Preliminary Approval Order, Defendant shall deposit the sum of $1,125,000.00 into an account established and administered by the Settlement Administrator at a financial institution agreed upon by Class Counsel and Defendant. This $1,125,000.00 represents the entirety of Defendant's financial obligations for this Settlement and shall be used to pay all the costs associated with the administration of this Settlement, issuing class notice, paying Approved Claims, paying Service Award Payments, paying the Fee Award and Costs and paying any Taxes and Tax-Related Expenses. The Settlement Administrator shall provide wiring instructions and a properly completed and duly executed IRS Form W-9 to Defendant within seven (7) days of the entry of the Preliminary Approval Order.

37.      **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Philadelphia Inquirer, LLC in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Paragraphs 57 or 58.

6

Any residual funds remaining in the Settlement Fund after the payment of all Approved Claims and following the expiration of time permitted to deposit Settlement Payments made by a check, shall be paid to a *cy pres* recipient recommended by Class Counsel, with the consent of Defendant, and as approved by the Court.

38.    **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

39.    **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraphs 56 or 57.

40.    **Use of the Settlement Fund**. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (1) payment of Approved Claims; (2) Notice and Administration Expenses; (3) the Fee Award and Costs; and (4) Service Award Payments approved by the Court. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement. Responsibility for effectuating payments described in this paragraph shall rest solely with the Settlement Administrator and Defendant shall have no responsibility whatsoever with respect to effectuating such payments.

41.    **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund, if any, shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty, and have no responsibility, with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

### III.    SETTLEMENT BENEFITS AND ADMINISTRATION

42.    **Claims Administration Protocol.** Settlement Class Members may submit claims to be compensated from the Settlement Fund. Settlement benefits shall be administered and paid by the Settlement Administrator as set forth in this Settlement Agreement.

43.    **Business Practice Revisions.** Within ninety (90) days of service of the Preliminary Approval Order, Defendant will suspend operation of the Facebook or Meta Pixel on any pages on its website or app that track video content and have a URL that identifies the video content viewed (if any), unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the United States Supreme Court, any federal court of appeals, any U.S. federal district court in located in the Commonwealth of Pennsylvania, or a Pennsylvania state court of general jurisdiction). Nothing herein shall prohibit the use of the Facebook or Meta Pixel where the disclosure of information to Facebook does not identify specific video materials that a user has requested or where Defendant has obtained consent that is compliant with the VPPA and Pennsylvania Wiretap Act. Defendant shall provide written certification of its compliance with the practice revisions in this paragraph at or before the Final Approval Hearing.

### IV.    SETTLEMENT CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

44.    **Notice**. Within five (5) business days after the date of the Preliminary Approval Order, Defendant shall provide the Settlement Class List to the Settlement Administrator. Within thirty (30) days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the Settlement Class Members. Notice shall be accomplished as set forth in Section 17 of this Agreement. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time prior to the Claims Deadline. If the Settlement Administrator determines that publication notice is required, then such notice shall be provided by Defendant in the print and electronic versions of the Philadelphia Inquirer free of charge and in a size and location as reasonably determined by the Defendant and the Settlement Administrator in a size and location as reasonably determined by the Defendant and the Settlement Administrator and consistent with legal notices published by the Philadelphia Inquirer. The Settlement Administrator will also send postcard notice to anyone on the Settlement Class List whose email is determined to be invalid, and for whom an address is available. The process to issue Notice as described in this paragraph and the creation and maintenance of the Settlement Website shall constitute the "Notice Plan."

45.    **Final Approval Hearing.** The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with Paragraph 47 waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

46.    **Opt-Outs**. The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline. The Request for

Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement in the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

47.     **Objections**. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Court no later than the Objection Deadline. A written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, email address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) the identity of any attorneys representing the objector; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney.

## V.     DUTIES OF THE SETTLEMENT ADMINISTRATOR

48.     **Duties of Settlement Administrator and Confidentiality Obligations**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement. Except as required to perform the functions contemplated by this Agreement, the Settlement Administrator shall treat the Settlement Class List as confidential information and shall not use it or share it with any third parties without the consent of Defendant.

49.     **Limitation of Liability**. The Parties, Class Counsel, and Defendant's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

50.     **Indemnification**. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defendant's Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

9

## VI.  PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION

51.    **Certification of the Settlement Class**. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon both the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date.

52.    **Preliminary Approval**. Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval of the Settlement, in a form agreeable to the Parties, within thirty (30) days thereof or a date thereafter that is agreeable to the Parties.

53.    **Final Approval**. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing; within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least 90 days after the Settlement Administrator notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

54.    **Jurisdiction**. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

## VII.  MODIFICATION AND TERMINATION

55.    **Modification**. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

56.    **Settlement Not Approved.** If: (1) the Court does not issue the Preliminary Approval Order or Final Approval Order and Judgment; (2) the Effective Date does not occur; or (3) the Final Approval Order and Judgment is modified or reversed in any material respect by any appellate or other court, the Parties shall have 60 days from the date of such non-occurrence during which the Parties shall work together in good faith in considering, drafting, and submitting reasonable modifications to this Agreement to address any issues identified by the Court or that otherwise caused the Preliminary Approval Order or Final Approval Order and Judgment not to issue or the Effective Date not to occur. If such efforts are unsuccessful, either Party may at their sole discretion terminate this Agreement on seven days written notice to the other Party. For avoidance of any doubt, neither Party may terminate the Agreement while an appeal from an order granting approval of the Settlement is pending.

171643718v1

57.    **Termination**. Defendant may also unilaterally terminate this Agreement on seven (7) days written notice to Class Counsel if more than one hundred (100) individuals submit valid Requests for Exclusion, as agreed to by the Parties and submitted to the Court for *in camera review*.

58.    **Effect of Termination**. In the event of a termination as provided herein, this Agreement and the Settlement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement or the Settlement. Further, in the event of such a termination, the certification of the Settlement Class shall be void. Defendant reserves the right to contest class certification for all purposes other than this Settlement. Any orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion. In addition: (a) the fact that Defendant did not oppose certification of a class under the Settlement shall not be used or cited thereafter by any person or entity, including in a contested proceeding relating to class certification and (b) in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved. Within three (3) business days after termination as provided for herein, the Settlement Fund shall be refunded to Defendant, less any non-refundable, reasonable amounts already paid for Notice and Administrative Expenses.

## VIII.  <u>RELEASES</u>

59.    **The Release**. Upon the Effective Date, and in consideration of the Settlement benefits described herein, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have released, acquitted, and forever discharged any and all Released Claims against Defendant, and each of its predecessors in interest, present and former subsidiaries, parents, affiliates, divisions, joint ventures, and controlled entities, and, solely in its capacity as such, each of the preceding entities' past, present and future insurers, subrogees, co-insurers and reinsurers, agents, representatives, officers, directors, employees, principals, partners, members, shareholders and owners, predecessors, successors, assigns, transferees, heirs, executors, administrators, and attorneys (collectively, "Defendant Releasees").

60.    **Mutual Understanding.** The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

61.    **Release of Settlement Class Representatives and Class Counsel**. Upon the Effective Date, Defendant (as defined herein) shall be deemed to have released, acquitted, and forever discharged the Settlement Class Representatives and Class Counsel from any and all claims

or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses), whether known or unknown, that arise out of, are based upon, or relate to prosecution of the Action, the Settlement Agreement, or the Settlement claims process (provided, however, that this release and discharge shall not include claims relating to the enforcement of the terms of the Settlement or this Agreement).

62.   **Bar to Future Suits.** Upon entry of the Final Approval Order and Judgment, the Settlement Class Representatives and other Participating Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of Defendant Releasees or based on any actions taken by any of Defendant Releasees that are authorized or required by this Agreement or by the Final Approval Order. Likewise, Defendant Releasees, and their representatives, officers, agents, directors, principals, affiliates, employees, insurers, and attorneys shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against Settlement Class Representatives and Class Counsel or based on any actions taken by Settlement Class Representatives and Class Counsel that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## IX.   SERVICE AWARD PAYMENTS

63.   **Service Award Payments**. At least thirty (30) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application that will include a request for Service Award Payments for the Settlement Class Representatives in recognition for their contributions to this Action not to exceed $5,000.00 per representative. The Settlement Administrator shall make the Service Award Payments to the Settlement Class Representatives from the Settlement Fund. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than three (3) days after the Effective Date.

64.   **No Effect on Agreement**. In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## X.   ATTORNEYS' FEES, COSTS, EXPENSES

65.   **Attorneys' Fees and Costs and Expenses**. At least thirty (30) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application for an award of attorneys' fees and Litigation Costs and Expenses to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund for fees, or $374,962 plus 33.33% of any interest earned, and Class Counsel's request for reimbursement of expenses not to exceed $15,000.00. Prior to the

disbursement or payment of the Fee Award and Costs under this Agreement to the IOLTA trust account of Spector Roseman & Kodroff, P.C., Spector Roseman & Kodroff, P.C. shall provide to the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than ten (10) days after the Effective Date.

66.    **Allocation**. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiffs. Defendant shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

## XI.    <u>NO ADMISSION OF LIABILITY</u>

67.    **No Admission of Liability**. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

68.    **No Use of Agreement**. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by the Philadelphia Inquirer, LLC in the Action or in any proceeding in any court, administrative agency or other tribunal.

## XII.    <u>MISCELLANEOUS</u>

69.    **Integration of Exhibits**. The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

70.    **Entire Agreement**. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. Except as otherwise provided in Section 55, this Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

71.    **Confidential Review of Financial Information**. Defendant has produced to Hon. Magistrate Judge Moore-Wells its Audited 2022 Consolidated Income Statement as well as the 2023 Consolidated Income Statement through September 2023 for *in-camera* review.    Judge Moore-Wells has confirmed that those documents support Defendant's representations about the financial results of operations.

72.    **Deadlines**. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

73.    **Construction**. For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

74.    **Cooperation of Parties**. The Parties agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

75.    **Obligation to Meet and Confer**. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other in good faith prior to seeking Court intervention.

76.    **Governing Law**. The Agreement shall be construed in accordance with, and be governed by, the laws of the Commonwealth of Pennsylvania, without regard to the principles thereof regarding choice of law.

77.    **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted electronically through e-mail of an Adobe PDF shall be deemed an original.

78.    **Notices**. All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

John A. Macoretta
Spector Roseman & Kodroff, P.C.
2001 Market Street
Suite 3420
Philadelphia, PA 19103
jmacoretta@srkattorneys.com

All notices to Defendant provided for herein, shall be sent by overnight mail and email to:

Angelo A. Stio, III
Troutman Pepper
301 Carnegie Center
Suite 400
Princeton, NJ 08540
Angelo.stio@troutman.com

The notice recipients and addresses designated above may be changed by written notice.

79.    **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.


By: _____    Date: May   , 2024
John A. Macoretta
Spector Roseman & Kodroff, P.C.


By: _____    Date: May   , 2024
Jeffrey S. Goldenberg
Goldenberg Schneider, LPA

*Counsel for Settlement Class Representatives and*
*Participating Settlement Class Members*


By: _____    Date: May 15, 2024
Angelo A. Stio, III
Troutman Pepper Hamilton Sanders LLP

*Counsel for Defendant, The Philadelphia Inquirer*


15

All notices to Defendant provided for herein, shall be sent by overnight mail and email to:

Angelo A. Stio, III
Troutman Pepper
301 Carnegie Center
Suite 400
Princeton, NJ 08540
Angelo.stio@troutman.com

The notice recipients and addresses designated above may be changed by written notice.

79.    **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

By: _____    Date: May 15 2024
John A. Macoretta
Spector Roseman & Kodroff, P.C.

By: _____    Date: May 15, 2024
Jeffrey S. Goldenberg
Goldenberg Schneider, LPA

*Counsel for Settlement Class Representatives and*
*Participating Settlement Class Members*

By: _____    Date: May 15, 2024
Angelo A. Stio, III
Troutman Pepper Hamilton Sanders LLP

*Counsel for Defendant, The Philadelphia Inquirer*

15

# EXHIBIT B

# SPECTOR ROSEMAN & KODROFF

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
2001 MARKET STREET, SUITE 3420
PHILADELPHIA, PENNSYLVANIA 19103
215.496.0300
FAX 215.496.6611
http://www.srkattorneys.com
Email: classaction@srkattorneys.com

## FIRM BIOGRAPHY

Spector Roseman & Kodroff, P.C. is a highly successful law firm with a nationwide practice that focuses on class actions and complex litigation, including antitrust, consumer protection, securities, and commercial claims. The firm is active in major litigation in state and federal courts throughout the country and internationally. The firm's reputation for excellence has been recognized by numerous courts which have appointed the firm as lead counsel in prominent class actions. As a result of the firm's efforts, defrauded consumers and shareholders have recovered billions of dollars in damages and implemented important corporate governance reforms. The firm is rated "AV" by Martindale-Hubbell, its highest rating for competence and integrity.

Judges throughout the country have recognized the Firm's contributions in class action cases:

- Class counsel "have actively, efficiently, and competently litigated this case for over twelve years. They have applied their past experience in handling antitrust class actions and their extensive knowledge of the applicable law, and they have committed extraordinary resources to this matter" and "have obtained a highly favorable settlement in an extremely complex case despite the fact that an end-payor litigation class was not certified." *Vista Healthplan, et al. v. Cephalon, et al.,* 2-cv-06 1833, Docket No. 614 at 30, 56 (E.D. Pa. April 21, 2020)

- "[T]his case required skill and expertise, which Class Counsel amply demonstrated over nearly ten years of work. The case involved novel issues, including whether the ECPA applied to wireless networks that the owners had failed to encrypt. Class Counsel represented the class well, advocating on behalf of consumers' right to privacy in their wireless network communications, taking on a multinational corporation, and ultimately resolving the case favorably to the class." *In re Google Inc. Street View Electronic Communications Litigation*, Case No. 3:10-MD-02184-CRB (N.D. CA. March 18, 2020)

- "The lawyering in this case was nothing short of superb. … I thought it was just excellent and that makes my job so much easier…" *In re Blood Reagents Antitrust Litigation*, MDL No. 2081 (E.D. Pa.) (approval hearing October 24, 2018)

- "I think in very brief summary form, you know, that counsel for plaintiffs – for direct action plaintiffs have done an outstanding job here with representing the class, and I thought your briefing was always very on point. I thought the presentation of very contentious issues on

-2-

the class action motion was very well done, it was very well briefed, it was well argued." *In re Domestic Drywall Antitrust Litigation*, MDL No. 2437 (E.D. Pa.) (approval hearing June 28, 2018)

- "Certainly the Court relies on the recommendation and work of experienced counsel, and I have indicated this before that I think [] [co-lead] counsel is – has handled this case extremely well, and I do rely on their arm's length negotiations, which I believe has gone on here." *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mi.) (approval hearing February 28, 2018)

- "[Class counsel] did a wonderful job here for the class and were in all respects totally professional and totally prepared. I wish I had counsel this good in front of me in every case." *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) (approval hearing March 2, 2009)

- "Lead class counsel - Jeffrey Corrigan and the other lawyers from Spector Roseman & Kodroff, P.C. - performed brilliantly in this exceptionally difficult case." *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa. Dec. 9, 2008)

- "I think perhaps the most important for the class is the recovery, and I think the recovery has been significant and very favorable to the class given my understanding of the risks in the litigation. And so perhaps that's always the starting point for judging and assessing the quality of representation. The class I think was well represented, in that it got a very significant recovery in the circumstances". *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (formerly known as Converium Holdings)

- "[O]utstanding work [of counsel] … was done under awful time constraints" and the "efforts here were exemplary…under lousy time constraints." *In re Atheros Communications, Inc. Shareholder Litigation*, C.A. No. 6124-VCN (Del. Ch.)

- "Plaintiffs' counsel have been excellent in this complex, hard-fought litigation and innovative in its notice program and efforts to find class members." *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. 05-11148 (D. Mass. Aug. 3, 2009)

- "Here, Plaintiffs' counsel are highly experienced in complex antitrust litigation, as evidenced by the attorney biographies filed with the Court. . . . They have obtained a significant settlement for the Class despite the complexity and difficulties of this case." *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, C.A. No. 03-4578 (E.D. Pa. May 19, 2005)

-3-

- "Counsel are among the most experienced lawyers the national bar has to offer in the prosecution and defense of significant class actions." *In re Lupron Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135, 137-38 (D. Mass. 2004)

- "[T]he class attorneys in this case have worked with enthusiasm and have been creative in their attempt to compensate as many members of the consumer class as possible. . . . This Court has consistently noted the exceptional efforts of class counsel." *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 80 (D. Mass. 2005)

**Antitrust Litigation**

SRK's antitrust practice group regularly oversees important antitrust cases. Among the Firm's most significant cases are:

- *In re Automotive Parts Antitrust Litigation, MDL 12-2311 (E.D. Mich.).* SRK has been appointed Interim Co-Lead Counsel for Direct Purchaser Plaintiffs for all product cases filed (currently comprised of more than 25 different cases). These massive price-fixing class actions are being brought on behalf of direct purchasers who were overcharged for various kinds of automotive parts, including wire harness products, heater control panels, instrument panel clusters, fuel senders, occupant safety restraint system products, bearings, air conditioning systems, starters, windshield wiper systems, windshield washer systems, spark plugs, oxygen sensors, fuel injection systems, alternators, ignition coils, and power window motors. All cases are pending before Judge Marianne Battani in the United States District Court for the Eastern District of Michigan in Detroit. SRK and its Interim Co-Lead Counsel have to date secured more than $300 million in settlements for the various classes.

- *In re Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718-JAG (E.D. Va.). SRK was appointed as Co-Lead Counsel for direct purchaser plaintiffs in this nation-wide price fixing class action. The case recently settled for over $60 million.

- *In re Domestic Drywall Antitrust Litigation,* MDL 12-2437 (E.D. Pa.). SRK was appointed as Co-Lead Counsel for direct purchaser plaintiffs in this nation-wide price fixing class action, which resulted in combined settlements of over $190 million for the class.

- *In re Blood Reagents Antitrust Litigation*, MDL 09-2081 (E.D. Pa.). SRK was appointed sole Lead Counsel in this nation-wide, price-fixing class action. The case settled in May 2018, on the eve of trial, resulting in combined settlements of $41.5 million for the class, which was comprised of hospitals, blood banks, laboratories and the American Red Cross.

- *McDonough, et al., v. Toys R Us, et al.* (E.D. Pa.) (Brody, J.). SRK is Co-Lead Counsel for six sub-classes of Babies "R" Us' customers, a rare case involving resale price maintenance in which a purchaser class was certified. A settlement of $35.5 million was achieved on behalf of the sub-classes.

-4-

- *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.). SRK was appointed co-lead counsel for plaintiffs in this price-fixing antitrust action which settled for total of $202 million, the largest antitrust settlement ever in Third Circuit.

- *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa.). SRK was appointed lead counsel for a nationwide class of direct purchasers, which settled for $120 million.

- *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.). SRK was co-lead counsel for plaintiffs in this price fixing/market allocation antitrust action which settled for $120 million.

- *In re DRAM Antitrust Litigation*, MDL No. 1486 (N.D. Cal.). SRK was a member of the executive committee in this action against all major manufacturers of "dynamic random access memory" ("DRAM"), alleging that defendants conspired to fix the prices they charged for DRAM in the United States and throughout the world. The case settled with all defendants for more than $300 million.

- *In re Vitamins Antitrust Litigation*, Misc. No. 99-0197 (D. D.C.). SRK was a member of the executive committee and co-chair of the discovery committee for plaintiffs in this price-fixing antitrust action which settled for $300 million.

**Pharmaceutical Marketing Litigation**

Since 2001, the Firm has been at the vanguard of identifying and pursuing healthcare reforms. It has developed an extensive practice in representing consumers and third-party payors in class actions against pharmaceutical companies over the unlawfully high pricing of prescription drugs. These cases have proceeded in state and federal courts on a variety of legal theories, including state and federal antitrust law, state consumer protection statutes, common law claims of unjust enrichment, and the federal RICO statute.

As part of their work in this area, the Firm's attorneys have formally and informally consulted with the Attorneys General of a number of states who have been actively involved in drug and health care litigation. The Attorney General of Connecticut chose SRK in a competitive bidding process to help lead the state's pharmaceutical litigation involving use of the Average Wholesale Price. The Firm's clients also include large employee benefit plans as well as individual consumers.

Some of the Firm's important pharmaceutical cases include the following:

- *Vista Healthplan, Inc. v. Cephalon, Inc.,* CA No. 06-1833 (E.D. Pa.). SRK is co-lead counsel in this litigation over the drug Provigil. The Court has just given final approval to $65 million in settlements between a class of end-payors (health plans and consumers in 26 states) and the brand manufacturer and four generic makers over claims of a "pay-for-delay" deal in which the brand company paid the generic manufacturers not to come to

-5-

market. SRK guided the case through almost 14 years of litigation, including discovery, class certification, coordination with related cases, appeals, trial preparation, settlement negotiations and other collateral proceedings.

- SRK, as co-lead counsel, devised the legal theory for claims against most major pharmaceutical companies for using the Average Wholesale Price to inflate the price paid by consumers and third-party payors for prescription and doctor-administered drugs. The larger AWP case, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.), was tried in part to the court in November-December 2006. On June 21, 2007, the judge issued a 183-page opinion largely finding for plaintiffs, and requesting additional evidence on damages. Moreover, plaintiffs have reached settlements in amounts exceeding $230 million. SRK was co-lead counsel for the class.

- *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.). SRK, as co-lead counsel, negotiated a settlement of $150 million for purchasers of the cancer drug Lupron.

- *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. 05-11148 (D. Mass.) and *District 37 Health and Securities Fund v. Medi-Span*, C.A. No. 07-10988 (D. Mass.). SRK was co-lead counsel for a group of third-party payors who pay for prescription drugs at prices based on the AWP. The complaints allege that First DataBank and Medispan, two of the largest publishers of AWP, fraudulently published inflated AWP prices for thousands of drugs. The claims against McKesson settled for $350 million. In addition, the settlement requires First DataBank and Medispan to lower the AWP price they publish for hundreds of drugs (by reducing the formulaic ratio they use to calculate AWP); and to eventually cease publishing AWP prices. Plaintiffs' experts conservatively estimate that the savings from this settlement will be in the hundreds of millions of dollars.

- *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* C.A. 03-4578 (E.D. Pa.). SRK was co-lead counsel on behalf of direct purchasers of the drug Paxil. The complaint alleged that the drug company misled the U.S. Patent and Trademark Office in obtaining the patents protecting Paxil and then used the patents to prevent lower-cost, generic versions of the drug from coming to market. A settlement of $100 million was approved by the court.

- *In re TriCor Indirect Purchaser Antitrust Litigation*, C.A. No. 05-360 (D. Del.). SRK was co-lead counsel for indirect purchasers in prosecuting state antitrust and consumer protection claims against Abbott Laboratories and Laboratoires Fournier S.A.for suppressing competition from generic versions of TriCor. The indirect purchaser case settled for $65.7 million to the class plus a substantial settlement for opt-out insurers.

- *In re Relafen Antitrust Litigation*, C.A. No. 01-12239 (D. Mass.). SRK was co-lead counsel for indirect purchasers in prosecuting state antitrust and consumer protection claims against GlaxoSmithKline for suppressing competition from generic versions of its drug Relafen by

-6-

fraudulently obtaining a patent on the compound. The indirect purchaser settlement for $75 million was approved by the court (the overall settlement for all plaintiffs exceeded $400 million).

- *In re Effexor XR Antitrust Litigation*, CA No. 11-5479 (D.N.J.). SRK is serving as co-lead counsel in on-going litigation over pay-for-delay settlements involving the antidepressant and Effexor XR. The firm represents end -payors (consumers and health plans) who were denied the chance to buy cheaper generic alternatives because of deal making and manipulation of the patent challenge and generic drug approval system by both the brand name company and generic manufacturers.

- *In re Niaspan Antitrust Litigation* MDL No. 2460 (E.D. Pa) and *In re Suboxone Antitrust Litigation* MDL No. 2445(E.D. Pa). SRK was appointed to serve as Liaison Counsel for a purported class of end payors for the drugs Niaspan and Suboxone. In each case, the complaint alleges that the end payors were overcharged by defendants' illegal efforts to keep generic versions off the market which caused the class to pay supra competitive monopolistic prices.

**Privacy Litigation**

SRK is also litigating numerous cases relating to privacy.

- *Frasco et al. v. Flo Health et al.*, No. 3:1-cv-00757-JD (N.D. Cal.). SRK is Co-Lead Counsel for a nationwide class of women who used the Flo Health app to track personal health information including menstrual cycles and pregnancy. Despite assurances to app users that their data would not be shared, defendant Flo Health wrongfully transmitted app users' personally health information to third parties including co-defendants Facebook, Google, and Flurry who used it for their own purposes. Plaintiffs allege that defendants' conduct constitutes a breach of contract and invasion of privacy, and also violates multiple federal and state statutes, including the Federal Wiretap Act, the California Invasion of Privacy Act, the Comprehensive Computer Data Access and Fraud Act, and the California Confidentiality of Medical Information Act.

- *In re Google Inc. Street View Electronic Communications Litigation* (N.D. Cal.). SRK is Co-Lead Counsel for plaintiffs in this action, in which a $13 million settlement was upheld by the Ninth Circuit. Google used its "Street View" vehicles to access wireless internet networks located in the United States and more than thirty countries around the world. Google's Street View vehicles traveled through cities and towns and collected data sent and received over the wireless networks they encountered, including all or part of e-mails, passwords, videos, audio files, and documents, as well as network names and router information. This data was captured and stored without the knowledge or authorization of class members. Plaintiffs allege that Google's conduct violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic

-7-

Communications Privacy Act of 1986, 18 U.S.C. § 2511, *et seq*, also known as the Wiretap Act.

- *In re Wawa, Inc. Data Security Litigation*, Lead Case No. 2:19-cv-06019-GEKP (E.D. Pa.). SRK led the Discovery Committee for a nationwide class of consumers affected by a 2019 data security breach at Wawa. Hackers accessed Wawa's computer systems and stole credit card information belonging to customers who used their credit cards at Wawa stores and gas pumps. The case settled for $9 million.

- *In re Plaid Inc. Privacy Litigation*, Case No. 4:20-cv-03056 (N.D. Cal.). SRK served on the Plaintiffs' Steering Committee for plaintiffs alleging that "fintech" company Plaid breached consumers' privacy rights by taking their bank account information without their knowledge or permission via Plaid's linking and verification services for financial apps such as Venmo, Coinbase, Cash App, and Stripe. The nationwide class action settled for $58 million.

- *In re Heartland Payment Systems Inc. Customer Data Security Breach* MDL No. 2046 (S.D. TX). SRK represents banks in a class action after Heartland disclosed on January 20, 2009 that it had been the victim of a security breach within its processing system in 2008. The data stolen included the digital information encoded onto the magnetic stripe built into the backs of credit and debit cards; with that data, thieves can fashion counterfeit credit cards by imprinting the same stolen information onto fabricated cards.

- *In re: Target Corporation Customer Data Breach* MDL No. 14-2522 (D. Minn). SRK represents banks in a class-action lawsuit against Target claiming the retail giant ignored warnings from as early as 2007 that the company's point-of-sale (POS) system was vulnerable to attack, a move that put more than 40 million credit and debit card records at risk and compromised the personal information of up to an additional 70 million customers after Target's systems were penetrated by attackers from on or about November 27, 2013 through December 15, 2013.

**Securities/Corporate Governance Litigation**

SRK has actively managed important class actions involving securities fraud, winning not only significant damages but also important corporate governance reforms. Some of the Firm's most notable cases include:

- *In re Abbott Labs-Depakote Shareholder Derivative Litigation*, Case No.: 1:11-cv-08114 (VMK) (N.D.Ill.). As the lead counsel, SRK negotiated cutting-edge corporate reforms including new legal and regulatory compliance responsibilities at both the board and management levels, a clawback policy which goes well beyond the requirements under the Dodd-Frank Act of 2010, a change of the "tone at the top" to foster a culture of legal and regulatory compliance, "flow of information" protocols, and other significant reforms designed to address oversight deficiencies that resulted in Abbott having to pay $1.6 billion

-8-

in criminal and civil penalties due to the illegal marketing and sale of its Depakote drug (the second largest penalties ever paid for off-label marketing at that time).

- *In re Lehman Brothers Holdings, Inc. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.). SRK was one of the firms prosecuting the U.S. action against Lehman Brothers arising from a massive fraud pertaining to the credit market meltdown. In this securities class action, SRK represented one of the lead plaintiffs, the Northern Ireland Local Government Officers' Superannuation Committee ("NILGOSC"). The case settled for over $600 million.

- *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.). SRK was one of the co-lead counsel for the lead plaintiffs, who are European institutional bond holders, in this widely-known case, often called the "Enron of Europe." This is a massive worldwide securities fraud action involving the collapse of an international dairy conglomerate, in which major financial institutions and accounting firms created schemes to materially overstate Parmalat's revenue, income, and assets, and understate its considerable and expanding debt. The case was heavily litigated for five years, resulting in settlements of $98 million.

  In addition, settlements with certain accounting firms provided that these defendants confirm their endorsement of specific corporate governance principles of behavior designed to advance investor protection and to minimize the likelihood of future deceptive transactions. This is the first time in a Section 10(b) case that shareholders were able to negotiate corporate governance measures from a defendant other than the issuer.

- *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (formerly known as Converium Holdings). In the *Converium* U.S. class action, SRK was one of the co-lead counsel representing a European institutional investor which served as one of the lead plaintiffs in that action. The Firm negotiated a $145 million recovery for a global class of investors, which involved settling the action on two continents – *the first trans-Atlantic resolution to a securities class action*. Part of the settlement, on behalf of foreign investors, was approved in the Netherlands under the then newly enacted Act on Collective Statement of Mass Claims. What is particularly noteworthy about the *Converium* litigation is that the Amsterdam Court of Appeal, in a landmark decision, ruled that it had jurisdiction to declare the two international settlements of that action binding. What makes the *Converium* decision groundbreaking is that, in addition to showing its willingness to provide an effective forum for European and other investors to settle their claims on a pan-European or even global basis, the Amsterdam Court of Appeal substantially broadened its jurisdictional reach – to the benefit of investors in this case and in future actions. The Dutch Court secured jurisdiction even though the claims were not brought under Dutch law, the alleged wrongdoing took place outside the Netherlands, and none of the potentially liable parties and only a limited number of the potential claimants are domiciled in the Netherlands. The decision means that European Union Member States, as well as Switzerland, Iceland and Norway, must recognize it, under the Brussels I

-9-

Regulation and the Lugano Convention. Without the approval of the settlements by the Amsterdam Court of Appeal, common stock holders of Converium, who were excluded from the U.S. action, would not have been able to recover a portion of their losses.

- *Utah Retirement Systems v. Strauss*, No. 09-cv-3221 (E.D.N.Y.). SRK served as counsel in an individual (opt-out) action brought on behalf of the Utah Retirement Systems relating to the scandal at American Home Mortgage – one of the companies involved in the subprime market meltdown. This action alleged violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934, as well as various state laws. Although the monetary terms of the settlement are confidential, SRK was able to negotiate an amount that was nearly four times more than what the Utah Retirement Systems would have received had it participated in the class action.

- *In re Laidlaw, Inc. Bondholders Securities Litigation*, No. 3-00-2518-17 (D.S.C.). SRK was a member of the Executive Committee in this complex accounting case which resulted in a settlement of $42,875,000.

- *In re Abbott Laboratories, Inc. Derivative Shareholder Litigation*, C.A. No. 99-C 07246 (N.D. Ill.) (Abbott I). SRK was co-lead counsel for plaintiffs. The case was dismissed twice but reversed on appeal, and settled in 2004 for substantial corporate governance reforms funded by $27 million from directors. The ABA's *Securities Litigation Journal* called the Seventh Circuit's opinion the second most important decision in 2003.

- *Felzen v. Andreas (Archer Daniels Midland Co. Derivative Litigation)*, C.A. No. 95-2279 (C.D. Ill.). As co-lead counsel, SRK negotiated broad corporate governance changes in the company's board structure including strengthening the independence of the board of directors, creating corporate governance and regulatory oversight committees, requiring that the audit committee be composed of a majority of outside directors, and establishing a $8 million fund for educational seminars for directors and the retention of independent outside counsel for the oversight committees.

The Firm has been at the forefront of advising and representing foreign institutional investors in U.S. class actions and in group actions in Europe, Australia and Japan. During the past 20 years, SRK has been working with and representing various European investors and conducting educational seminars on securities class actions, as well as speaking at international shareholder and corporate governance conferences. The Firm is currently counsel to numerous large European entities.

## PARTNERS

**EUGENE A. SPECTOR**, founding partner, has extensive experience in complex litigation, and has represented both plaintiffs and defendants in antitrust and securities. Mr. Spector has handled many high profile cases, including such antitrust class actions as *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.), in which he was co-lead counsel and which settled

-10-

for more than $200 million, the largest antitrust case settlement ever in the Eastern District of Pennsylvania, where Judge Dubois stated: "The Court has repeatedly stated that the lawyering in this case at every stage was superb ...." 2004 WL 1221350, *6 (E.D. Pa. June 2, 2004). Mr. Spector was also co-lead counsel in *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.), in which a settlement of $75 million was obtained for the class, which Judge Young described as "the result of a great deal of very fine lawyering." Mr. Spector has been involved in securities class action litigation including *Rosenthal v. Dean Witter*, which resulted in a landmark decision by the Colorado Supreme Court that recognized, for the first time, that securities fraud could be proved without reliance being alleged. This precedent-setting case was important because under state securities law the reliance element sometimes proved difficult, especially when large numbers of people were involved in a class action suit.

Mr. Spector served as sole lead counsel in *In Re Blood Reagents Antitrust Litigation*, MDL No. 02081 (E.D. Pa.); as co-lead counsel in such antitrust cases as *In re Domestic Drywall Antirust Litigation*, MDL No. 2437 (E.D. Pa.); *In Re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.); *McDonough, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*,2:06-cv-00242-AB (E.D. Pa.); *Elliott, et al. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*,2:09-cv-06151-AB (E.D. Pa.); and as a member of the trial team in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1869 (D.D.C.).

Mr. Spector has served as lead or co-lead counsel for plaintiffs in numerous cases with successful results, such as:

- *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.) (settled for $202 million, the largest antitrust settlement ever in the Third Circuit)

- *In re Relafen Antitrust Litigation*, C.A. No. 01-12239 (D. Mass.) (a drug marketing case that settled for $75 million for indirect purchasers)

- *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.) (a price-fixing/market allocation antitrust action that settled for $120 million)

- *In re Mercedes Benz Antitrust Litigation, No. 99-4311* (D.N.J.) ( a price-fixing class action against Mercedes-Benz U.S.A. and its New York tri-state area dealers in which a $17.5 million settlement was obtained for the class)

- *Cohen v. MacAndrews & Forbes Group, Inc.*, No. 7390 (Del. Ch.) (a class action on behalf of shareholders challenging a going-private transaction under Delaware corporate law in which a benefit in excess of $11 million was obtained for the class)

Mr. Spector has also served as lead counsel or co-lead counsel in a number of other securities fraud class action cases and shareholder derivative actions: *Shanno v. Magee Industrial Enterprises, Inc.*, No. 79-2038 (E.D. Pa.) (trial counsel for defendants); *In re U.S. Healthcare Securities Litigation*, No. 88-559 (E.D. Pa.) (trial counsel); *PNB Mortgage and Realty Trust by Richardson v. Philadelphia National Bank*, No. 82-5023 (E.D. Pa.); *Swanick v. Felton*, No. 91-

-11-

1350 (E.D. Pa.); *In re Surgical Laser Technologies, Inc. Securities Litigation*, No. 91-CV-2478 (E.D. Pa.); *Tolan v. Adler*, No. C-90-20710-WAI (PVT) (N.D. Cal.); *Rosenthal v. Dean Witter, Reynolds, Inc.*, No. 91-F-591 (D. Colo.); *Soenen v. American Dental Laser, Inc.*, No. 92 CV 71917 DT (E.D. Mich.); *In re Sunrise Technologies Securities Litigation*, Master File No. C-92-0948-THE (N.D. Cal.); *The Berwyn Fund v. Kline*, No. 4671-S-1991 (Dauphin Cty. C.C.P.); *In re Pacific Enterprises Securities Litigation*, Master File No. CV-92-0841-JSL (C.D. Cal.); *In re New America High Income Fund Securities Litigation*, Master File No. 90-10782-MA (D. Mass.); and *In re RasterOps Corp. Securities Litigation*, No. C-92-20349-RMW (EAI) (N.D. Cal. 1992).

Further, Mr. Spector has actively participated as plaintiffs' counsel in national class action antitrust cases, including *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M-02-1486 PJH (N.D. Cal.) (executive committee); *In re Vitamins Antitrust Litigation*, Misc. No. 99-0197 (TFH) (D.D.C.) (Chair of the discovery committee); *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D. N.J.) (executive committee); *Ryan-House v. GlaxoSmithKline, plc*, No. 02-CV-442 (ED Va.) (co-chair class certification committee); *In re Bulk [Extruded] Graphite Products Antitrust Litigation*, Master File No. 02-CV-06030 (D. N.J.) (chair of experts committee); *In re Publication Paper Antitrust Litigation*, No 04-MD-1631 (D. Conn.); *In re Polyester Staple Antitrust Litigation*, No. 03-CV-1576 (W.D.N.C.); *Chlorine & Caustic Soda Antitrust Litigation*, No. 86-5428 (E.D. Pa.); *In re Brand Name Prescription Drug Antitrust Litigation*, MDL No. 997 (N.D. Ill.); *Polypropylene Carpet Antitrust Litigation*, MDL No. 1075 (N.D. Ga.); *NASDAQ Market Markers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.); *Potash Antitrust Litigation*, MDL No. 981 (D. Minn.); *Commercial Tissue Products Antitrust Litigation*, MDL No. 1189 (N.D. Fla.); *High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.).

In 2002, Mr. Spector obtained a jury verdict of $4.5 million in *Heiser v. SEPTA*, No. 3167 July Term 1999 (Phila. C.C.P.), an employment class action.

Mr. Spector is admitted to practice in the Commonwealth of Pennsylvania; the United States Supreme Court; the United States Courts of Appeals for the First, Third, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits; and the United States District Court for the Eastern District of Pennsylvania and the Eastern District of Michigan. He is a graduate of Temple University (B.A. 1965) and an honors graduate of Temple University School of Law (J.D. 1970), where he was an editor of the *Temple Law Quarterly*. He served as law clerk to the Honorable Herbert B. Cohen and the Honorable Alexander F. Barbieri, Justices of the Pennsylvania Supreme Court (1970-71).

Mr. Spector has written a number of articles over the years which appeared in the *National Law Journal*, the *Legal Intelligencer*, and other trade and legal publications; and he has appeared on CNBC to discuss securities fraud. He is a member of the American, Federal, Pennsylvania and Philadelphia Bar Associations; the American Bar Association's Antitrust and Litigation Sections and the Securities Law Sub-Committee of the Litigation Section; and the Federal Courts Committee of the Philadelphia Bar Association. Mr. Spector has been appointed to the Advisory Board of the American Antitrust Institute and has been named as a leading U.S. plaintiffs' antitrust lawyer by Who's Who Legal Competition 2014, published by the Global Competition Review. Mr. Spector also has been appointed to serve on the Board of Visitors of the James E. Beasley

-12-

School of Law of Temple University. He is A-V rated by Martindale-Hubbell and has been named by Law & Politics to its list of Pennsylvania "Superlawyers."

**JEFFREY L. KODROFF** concentrates his practice in healthcare antitrust, securities and consumer litigation. He was among the first attorneys to represent clients in class action litigation against national health maintenance organizations. (*Tulino v. U.S. Healthcare, Inc.*, No. 95-CV-4176 (E.D. Pa.)). He also filed the first class action complaint against the manufacturers of the cancer drug Lupron relating to the illegal marketing practices and use of the published Average Wholesale Price. Mr. Kodroff was co-lead counsel in *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.), which settled for $150 million. Mr. Kodroff was also co-lead counsel in a consolidated national class action against many of the largest pharmaceutical companies in the world, including GlaxoSmithKline, BMS, J&J, Schering-Plough and AstraZeneca, for their illegal marketing and use of a false Average Wholesale Price. See *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.) (settlement over $300 million.)

He has also served as lead or co-lead counsel in other substantial pharmaceutical marketing cases, including *New England Carpenters Health Benefits Fund v. First Databank, Inc. and McKesson Corp.*, C.A. 05-11148 (D. Mass.); and *District 37 Health and Securities Fund v. Medi-Span*, C.A. No. 07-10988 (D. Mass. 2007). This litigation massive class action was against pharmaceutical wholesaling giant McKesson Corporation ("McKesson") and pharmaceutical pricing publishers First DataBank, Inc. ("FDB") and Medi-Span. The case addressed an unlawful 5% mark-up in the Average Wholesale Prices ("AWPs") of various drugs, causing consumers and third party payors to overpay for pharmaceuticals. The case settled for $350 million plus an agreement to roll back AWPs by 5% thereby saving the Class and others hundreds of millions of dollars.

Mr. Kodroff has also been very active in litigation against brand named pharmaceutical companies in their attempts to keep generic drugs from entering the market.

Mr. Kodroff has served or is serving as co-lead counsel in numerous major cases, including:

- *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (E.D. Pa., Judge Paul S. Diamond) (settled for $120 million)

- *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* C.A. 03-4578 (E.D. Pa., Judge Padova) (settled for $150 million)

- *In re Express Scripts, Inc., PBM Litigation*, Master Case No. 05-md-01672-SNL (E.D. Mo.)

- *In re Lovenox Antitrust Litigation*, Case No. CV05-5598 (C.D. Cal.)

-13-

- *In re DDAVP Indirect Purchaser Antitrust Litigation,* Case No. 05 Civ. 2237 (S.D.N.Y.)

- *Man-U Service Contract Trust, et al. v. Wyeth, Inc. (Effexor Antitrust Litigation)* Civil Action No. 3:11-cv-05661 (D.N.J.)

- *In re: Merck Mumps Vaccine Antitrust Litigation,* Master File No. 2:12-cv-03555 (E.D. Pa., Judge C. Darnell Jones, II)

- *Vista Healthplan Inc. v. Cephalon, Inc., et al.,* Case No. 2:06-cv-1833 (E.D. Pa., Judge Mitchell S. Goldberg) (Provigil)

Mr. Kodroff has served as lead or co-lead counsel in many class action securities fraud cases, including *In re Unisys Corporation Securities Litigation*, No. 99-CV-5333 (E.D. Pa.); *In re Dreyfus Aggressive Growth Mutual Fund Litigation*, No. 98 Civ. 4318 (HB) (S.D.N.Y.); *Kalodner v. Michaels Stores, Inc.*, No. 3:95-CV-1903-R (N.D. Tex.); *In re Valuevision International, Inc. Securities Litigation*, Master File No. 94-CV-2838 (E.D. Pa.); *In re GTECH Holdings Corp. Securities Litigation*, Master File No. 94-0294 (D.R.I.); *In re Surgical Laser Technologies, Inc. Securities Litigation*, No. 91-CV-2478 (E.D. Pa.); and *The Berwyn Fund v. Kline*, No. 4671-S-1991 (Dauphin Cty. C.C.P.).

He has also served as lead or co-lead counsel in many consumer class actions including the current case *In re Google Inc. Street View Electronic Communications Litigation,* Case No. C 10-md-02184 JW (N.D. Cal.), which arise out of Google's interception of electronic communications by its Street View vehicles. Other consumer class actions in which Mr. Kodroff has served as lead or co-lead counsel include: *Kaufman v. Comcast Cablevision of Phila., Inc.*, No. 9712-3756 (Phila. C.C.P.); *LaChance v. Harrington*, No. 94-CV-4383 (E.D. Pa.); *Smith v. Recordex*, No. 5152, June Term 1991 (Phila. Cty. C.C.P.); *Guerrier v. Advest Inc.*, C.A. No. 90-709 (D. N.J.); and *Pache v. Wallace*, C.A. No. 93-5164 (E.D. Pa.).

Mr. Kodroff has served as a Continuing Legal Education presenter on class actions and health care issues as well as making presentations at conferences including the NCPERS Health Care Symposium and the Pennsylvania Public Employees Retirement System Conference.

He also serves on the advisory board for the Bureau of National Affairs Class Action Litigation Report. Mr. Kodroff also appeared with one of his clients before the U.S. House of Representatives, Subcommittee on Housing and Community Opportunity, Committee on Banking and Financial Services on the issue of predatory lending.

Mr. Kodroff has been selected by "Who's Who Legal: Competition" as one of the world's leading competition practitioners and by Lawdragon as one of the leading Plaintiff Financial Lawyers in the country.

Mr. Kodroff is admitted to practice in the Commonwealth of Pennsylvania and the United States District Courts for the Middle and Eastern Districts of Pennsylvania. He is a member of the

-14-

Pennsylvania, Philadelphia and American Bar Associations. A graduate of LaSalle University, where he earned his undergraduate degree in finance (magna cum laude, 1986), Mr. Kodroff received his law degree from Temple University School of Law (1989). He is a resident of Dresher, Pennsylvania. Mr. Kodroff is AV-rated by Martindale-Hubbell.

**JEFFREY J. CORRIGAN** joined SRK in 2000 as a partner to help direct the Firm's complex antitrust litigation. From 1990 until 2000, he was a Trial Attorney with the U.S. Department of Justice in the New York office of the Antitrust Division.

Mr. Corrigan has extensive experience investigating and prosecuting complex antitrust and other white collar criminal cases. He was lead counsel on numerous federal grand jury investigations and has significant federal trial experience as well. His cases include *United States v. Tobacco Valley Sanitation*, Cr. H-90-4 (D. Conn. 1991); and *United States v. Singleton*, Crim. No. 94-10066 (D. Mass. 1995). He was nominated by the Antitrust Division in 1999 for the Attorney General's Distinguished Service Award for his lead role on a major case involving bid-rigging at state courthouses in Queens and Brooklyn in New York City, which resulted in 49 guilty pleas. *United States v. Abrishamian*, No. 98 CR 826 (E.D.N.Y. 1998). Mr. Corrigan also played a major part in *United States v. Canstar Sports USA, Inc.*, C.A. No. 93-7 (D. Vt. 1993), a complex civil antitrust case.

Mr. Corrigan is currently serving as Interim Co-Lead Counsel for direct purchaser plaintiffs in *In re Interior Molded Doors Antitrust Litigation,* File No. 3:18cv-00718-JAG (E.D. Va.), a nation-wide price fixing class action.

Mr. Corrigan served as sole Liaison and Lead Class Counsel in *In re Blood Reagents Antitrust Litigation*, MDL 09-2081 (E.D. Pa.), a nation-wide, price-fixing class action into the market for blood reagents, which are used for testing blood. The case settled on the eve of trial for a total of $41.5 million. Mr. Corrigan also served as Co-Lead Counsel for direct purchaser plaintiffs in *In re Domestic Drywall Antitrust Litigation,* MDL 12-2437 (E.D. Pa.), a nation-wide price fixing class action that settled for more than $190 million.

He has been co-lead counsel in *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa.), where a nationwide class of direct purchasers settled for $120 million; and *In re Mercedes-Benz Antitrust Litigation*, Master File No. 99-4311 (D. N.J.) (settled for $17.5 million). He was also active in *In re Linerboard Antitrust Litigation*, C.A. No. 98-5055 (E.D. Pa.), which settled for $202 million; *In re Buspirone Antitrust Litigation*, MDL Docket No.1413 (S.D.N.Y.) which in 2003 settled for $670 million for all plaintiff groups; and *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.), which settled for $120 million.

Mr. Corrigan is a 1985 graduate of The State University of New York at Stony Brook, where he earned his B.A. in economics. He received his J.D. in 1990 from Fordham University School of Law, where he was a member of the Moot Court Board. Mr. Corrigan is admitted to practice in the states of New York and New Jersey, and in the United States Court of Appeals for the Third Circuit and the D.C. Circuit; and the United States District Courts for the District of New Jersey, Southern District of New York and the Eastern District of New York.

-15-

**JOHN MACORETTA** represents both individuals and businesses in a wide variety of litigation. He currently represents consumers and healthcare payors in several cases alleging that brand name pharmaceutical companies illegally kept generic drug competitors off the market. Mr. Macoretta is also involved in electronic privacy litigation, including the *In re Google Streetview Electronic Communications Litigation*, No. 10-md-02184 (N.D. Cal.) where he is a co-lead counsel representing consumers whose private wi-fi communications were intercepted. Mr. Macoretta also represents investors in stock-broker arbitration and class-action securities fraud litigation.

He has been involved in a number of significant cases, including: *In re Avandia Marketing Sales Practices and Products Liability Litigation*, MDL No. 1871, 07-MD-1871 (E.D. Pa.) (appointed to Third Party Payor Executive Committee); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.) (where he acted as one of the trial counsel); *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); *In re Unisys Corporation Securities Litigation*, No. 99-CV-5333 (E.D. Pa.); *Masters v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (S.D.N.Y.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, C.A. No. M-02-1486 PJH (N.D. Cal.).

Mr. Macoretta graduated with honors from the University of Texas Law School in 1990 and received his undergraduate degree *cum laude* from LaSalle University in 1986. He is admitted to practice in the Commonwealth of Pennsylvania and the State of New Jersey; the United States Court of Appeals for the First, Third and Ninth Circuits; and the United States District Courts in the District of New Jersey, the Eastern District of Michigan and the Middle and Eastern Districts of Pennsylvania. In addition to being a member of the Philadelphia Bar Association, Mr. Macoretta also serves as an arbitrator in the Philadelphia Court of Common Pleas and the US District Court.

Mr. Macoretta received the Champion of Justice award from the Philadelphia Volunteers for the Indigent Program, in recognition for his decade long *pro bono* representation of Philadelphia homeowners facing foreclosure.

**WILLIAM G. CALDES** is a partner in the Antitrust Practice Group. He has a national practice representing plaintiffs in antitrust class actions for over twenty years. He has represented both individual and corporate clients in class actions across the United States. Mr. Caldes has been involved in some of the largest Antitrust cases ever litigated, including *In re NASDAQ Market-Makers Antitrust Litigation,* MDL No. 1023 (S.D.N.Y.) which was the first antitrust case to have settlements in excess of one billion dollars to most recently being co-lead counsel in *In re Automotive Parts Antitrust Litigation,* MDL No. 2311 (E.D. Mich.), regarded as one of the largest antitrust cases to be litigated to date.

Mr. Caldes also represents several unions and their members in litigation against the pharmaceutical industry for various types of antitrust and consumer violations on behalf of the union's pension funds. He is currently involved in *In Re Niaspan Antitrust Litigation* MDL No. 2460 (E.D.Pa.); *In re Loestrin 24 FE Antitrust Litigation*, MDL No. 2472 (D.R.I.); *In Re Lidoderm Antitrust Litigation*, MDL No. 2521 (N.D.Ca.); and *In re Aggrenox Antitrust Litigation*, MDL No.

-16-

2516 (D.Conn.).

Among other cases in which Mr. Caldes has participated are *McDonough, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*, No. 2:06-cv-00242-AB (E.D. Pa.); *Elliott, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*, No. 2:09-cv-06151-AB (E.D. Pa.); *In re Online DVD Rental Antitrust Litigation,* MDL No. 2029 (N.D. Cal.); *In re Processed Eggs Antitrust Litigation,* MDL No. 2002 (E.D. Pa.); *In re Air Cargo Shipping Services Antitrust Litigation,* MDL No. 1775 (E.D.N.Y.); *In Re: Municipal Derivatives Antitrust Litigation,* No. 1:08-md-01950-VM (S.D.N.Y.); *In Re Optical Disk Drive Products Antitrust Litigation,* No. 3:10-ms-02143-RS (N.D. Cal.); *In Re Aftermarket Filters Antitrust Litigation,* No. 1:08-cv-04883 (N.D. Ill.); *In re McKesson HBOC, Inc. Securities Litigation,* Master File No. 99-CV-20743 (N.D. Cal.); *In re K-Dur Antitrust Litigation,* MDL No. 1419 (D.N.J.); *In re Relafen Antitrust Litigation,* C.A. No. 01-12222 (D. Mass); *In re Buspirone Antitrust Litigation,* MDL No. 1413 (S.D.N.Y.); *In re Linerboard Antitrust Litigation,* C.A. No.98-5055 (E.D. Pa.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* No.M-02-1486 PJH (N.D. Cal.); *In re Baycol Products Litigation,* No. 1431 (D. Minn.); and *In re Vitamins Antitrust Litigation,* Misc. No. 99-0197(TFH) (D.D.C.).

Mr. Caldes is a 1986 graduate of the University of Delaware, where he earned a B.A. with a double major in Economics and Political Science. He received his J.D. in 1994 from Rutgers School of Law at Camden, and then served as law clerk to the Honorable Rushton H. Ridgway of the New Jersey Superior Court, Cumberland County.

Mr. Caldes is admitted to practice in the Commonwealth of Pennsylvania, the State of New Jersey, the United States District Court for the District of New Jersey, the United States District Court for Eastern District of Pennsylvania and the United States Court of Appeals for the 3rd Circuit.

**JEFFREY L. SPECTOR** is a partner in the Antitrust Practice Group. Mr. Spector has been prosecuting complex class actions for over a decade, representing consumers and small businesses in a wide array of cases involving products in a variety of industries, including the automotive, protein, construction, health care, baby product and financial instrument markets. Presently, Mr. Spector is helping to lead the litigation for SRK as co-lead counsel for a proposed class of hospitals in *In Re: Da Vinci Surgical Robot Antitrust Litig.*, No. 3:21-cv-03825-VC (N.D. Cal.), and on the Plaintiffs' Steering Committee in *Cheng v. Toyota Motor Corp.*, No. 1:20-cv-00629-WFK-CLP (E.D.N.Y.).

In addition, Mr. Spector is currently working extensively with expert economists in several pending actions, including *In re Broiler Poultry Antitrust Litigation* 1:16-cv-08637 (N.D. Ill), *In re Pork Antitrust Litigation*, No. 0:18-cv-01776-JRT-HB (D. Mn.), and *In re: Local TV Advertising Antitrust Litig.*, MDL No. 2867, No. 18 C 6785 (N.D. Ill.). In November 2021, Mr. Spector received an award for *Outstanding Antitrust Litigation Achievement in Private Law Practice* from the American Antitrust Institute as part of the team that litigated *In re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463-RAJ-LRL (E.D. Va.), which achieved settlements of over $100 million for a class of peanut farmers.

-17-

Mr. Spector has served as part of the SRK co-lead counsel teams in *In re Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718-JAG (E.D. Va.), *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.), *In re Domestic Drywall Antitrust Litigation*, No. 13-md-2437 (E.D. Pa.); *In re Blood Reagents Antitrust Litigation*, No. 09-md-02081 (E.D. Pa.); *McDonough, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*, No. 2:06-cv-00242 (E.D. Pa.); and *Elliott, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*, No. 2:09-cv-06151 (E.D. Pa.), cases which have settled for a combined total of over a half-billion dollars. Mr. Spector has extensive experience working closely with experts on a variety of issues, including analyzing industry market structure, class certification, and estimating damages (including through the use of econometric techniques).

Mr. Spector has previously been involved in litigating, among other cases, *In re Aftermarket Filters Antitrust Litigation*, No. 08-cv-04883 (N.D. Ill.); *In re Municipal Derivatives Antitrust Litigation,* No. 08-md-01950 (S.D. N.Y.); *In re NCAA Student-Athlete Name and Likeness Licensing Litigation,* No. 09-cv-1967 (N.D. Cal.); *In re Optical Disk Drive Products Antitrust Litigation,* No. 10-ms-02143 (N.D. Cal.); and *In re Fresh and Process Potatoes Antitrust Litigation,* No. 10-md-02186 (D. Id.).

Mr. Spector graduated from the Wharton School of the University of Pennsylvania in 2000 with a B.S. in Economics and concentrations in Marketing and Legal Studies. He received his J.D. from Temple University in 2007. Prior to attending law school, Mr. Spector worked for the William Morris Agency in New York as a part of its prestigious Agent Training Program.

Mr. Spector is admitted to practice law in Pennsylvania, New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, and the United States Courts of Appeals for the 3rd Circuit and 4th Circuit. He is currently a member of the American and Philadelphia Bar Associations.

**DIANA J. ZINSER** is a partner concentrating her practice in consumer protection and healthcare litigation. She is currently co-lead counsel, in *Frasco et al. v. Flo Health et al.*, No. 3:21-cv-00757-JD (N.D. Cal.). Ms. Zinser is also currently serving as a member of the Plaintiffs' Executive Committee in *Hasson v. Comcast Cable Communications, LLC*, No. 2:23-cv-05039-JMY (E.D. Pa.). She is involved in litigating other cases including *In re Merck Mumps Vaccine Antitrust Litigation*, No 2:12-cv-03555 (E.D. Pa.); *In re Effexor XR Antitrust Litigation*, CA No. 11-5479 (D.N.J.); *In re Niaspan Antitrust Litigation*, No. 2:13-md-2460 (E.D. Pa.); *In re Suboxone Antitrust Litigation*, (E.D. Pa.), and *Vista Healthplan, Inc. v. Cephalon, Inc. et al.*, C.A. No. 2:06-cv-01833 (E.D. Pa.). Prior to joining SRK, Ms. Zinser was an attorney with the law firm Kessler Topaz Meltzer & Check, LLC, where she was involved with antitrust and complex consumer litigation.

Ms. Zinser graduated *cum laude* from Saint Joseph's University in 2003 with a B.A. in Political Science and a minor in Economics, where she was a member of the Phi Beta Kappa, Pi Sigma Alpha, and Omicron Delta Epsilon Honor Societies. She earned her J.D. from Temple University Beasley School of Law in 2006. While attending law school, she received a summer fellowship from the Peggy Browning Fund and worked as a legal intern for Sheet Metal Workers

-18-

Local Union No. 19.

Ms. Zinser is admitted to practice law in Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. She is currently a member of the Pennsylvania and Philadelphia Bar Associations.

## ASSOCIATES

**ICEE ETHERIDGE** focuses her practice on class actions in the antitrust field. She is currently working on *In Re Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718 (E.D. Va.). Prior to joining SRK, Ms. Etheridge worked extensively on *In re Foreign Exchange Antitrust Matter*, 1:13-cv07789 (S.D.N.Y.).

Ms. Etheridge graduated from Temple University Beasley School of Law in 2003 with her Juris Doctor degree. She has provided pro-bono legal counsel to victims of childhood sexual abuse. She currently volunteers as a certified tax-preparer for low-income families and individuals through the IRS' Volunteer Income Tax Assistance Program. While in law school, Ms. Etheridge served on the board of the Black Law Students Association. She is a proud alumni of the Jackie Robinson Foundation Scholars Program and an avid yoga practitioner.

Ms. Etheridge is currently admitted to practice in the State of New Jersey, the Commonwealth of Pennsylvania, and the Eastern District of Pennsylvania. She is currently a member of the Pennsylvania Bar Association and Philadelphia Bar Association.

**CARY ZHANG** focuses her practice on class actions in the antitrust and consumer protection fields. She is currently working on *Frasco v. Flo Health, Inc.,* No. 3:21-cv-00757 (N.D. Cal.); *Staley v. Gilead Scis., Inc.*, 3:19-cv-02573-(N.D. Cal.); *In re Broiler Poultry Antitrust Litigation* 1:16-cv-08637 (N.D. Ill)*; In re daVinci Surgical Robot Antitrust Litigation* No. 3:21-cv-03825 (N.D. Cal.).

Ms. Zhang graduated from Temple University Beasley School of Law, where she was a Law & Public Policy Scholar, a teaching assistant in constitutional law, and won a Trial Advocacy Certificate. She earned her Bachelor of Science in Psychology from the University of Pittsburgh and graduated *magna cum laude.* Ms. Zhang completed internships with the ACLU-PA, the Education Law Center and AEquitas, a Washington D.C. nonprofit combating gender-based violence and human trafficking.

Her experience also includes internships at the Camden County, New Jersey Prosecutor's Office, Camden and Montgomery County, Pennsylvania Public Defender's Office

Ms. Zhang clerked for the Honorable Michael L. Ravin in the Essex County, New Jersey Criminal Court and assisted the Honorable Viktoria Kristiansson as a judicial intern in the Family Court of the Philadelphia County Court of Common Pleas

-19-

Ms. Zhang is currently admitted to practice in the State of New Jersey and the District of New Jersey.

In addition to English, Cary speaks Spanish and Mandarin Chinese.

<u>OF COUNSEL</u>

**MARY ANN GEPPERT** graduated *cum laude* from St. Joseph's University in 2000, with a B.S. degree in Finance. She received her Juris Doctor degree from the Widener University School of Law in 2003, where she served as the Articles Editor of the Widener Law Symposium Journal. She also was a legal intern for the Honorable James J. Fitzgerald of the Philadelphia Court of Common Pleas.

Among the cases in which Ms. Geppert has participated are *In re Google Inc. Street View Electronic Communications Litigation*, C.A. No. 5:10-md-02184 (N.D. Cal.); *Vista Healthplan, Inc. v. Cephalon, Inc. et al.*, C.A. No. 2:06-cv-01833 (E.D. Pa.); and *In re Merck Mumps Vaccine Antitrust Litigation*, C.A. No. 2:12-cv-03555 (E.D. Pa.).

Ms. Geppert is currently admitted to practice law in Pennsylvania, New Jersey, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the District of New Jersey. Ms. Geppert was named as a Pennsylvania Rising Star by *Philadelphia Magazine* in 2010 and 2013.

**RACHEL E. KOPP** focuses her practice in antitrust litigation. She is involved in a number of significant cases, including *In re Domestic Drywall Antitrust Litigation*, No. 13-md-2437 (E.D. Pa.); *In Re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.); *In Re Blood Reagents Antitrust Litigation*, No. 2:09-md-02081-JD (E.D. Pa.); *In Re: American Express Anti-Steering Rules Antitrust Litigation*, MDL 2221 (E.D.N.Y.); and *In Re Municipal Derivatives Antitrust Litigation*, MDL No. 1950 (S.D.N.Y.). She has also previously been heavily involved in the following securities cases: *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.); *In Re Converium Holding AG Securities Litigation*, No. 04 Civ. 7897 (DLC) (S.D.N.Y.); *Welmon v. Chicago Bridge & Iron Co. N.V.,* No. 06 Civ. 01283 (JES) (S.D.N.Y.); and *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.).

Ms. Kopp earned her Juris Doctor degree from Villanova University Law School, where she received a Public Interest Summer Fellowship, to serve as a legal intern at New York Volunteer Lawyers for the Arts and VH1 *Save The Music*. She received a B.A. in Government and Politics from the University of Maryland, where she concentrated in languages and studied abroad in Florence, Italy. Ms. Kopp is admitted to practice in Pennsylvania and New Jersey, as well as in the U.S. Court of Appeals for the Third Circuit and the U.S. District Court for the Eastern District of Pennsylvania.



Goldenberg Schneider, LPA

4445 LAKE FOREST DRIVE, SUITE 490                    513-345-8291
CINCINNATI, OHIO  45242                              WWW.GS-LEGAL.COM

**GOLDENBERG SCHNEIDER, L.P.A**. was founded in 1996 and focuses on prosecuting actions primarily on behalf of plaintiffs in complex civil litigation and class actions.  The subject matter of the Firm's past and current representations is broad, ranging from consumer protection, defective products, privacy protection and data breach, to employment and labor cases including ERISA and FLSA, to antitrust and insurance actions (including long-term care insurance).  The firm's attorneys are experienced in every level of the state and federal judicial systems in Ohio and the country.

The Firm has demonstrated its capability to successfully represent governmental entities, corporations, and individuals in the most complex types of litigation.  Founding partner Jeff Goldenberg served as special counsel to the Ohio Attorney General in prosecuting Ohio's Medicaid recoupment action against the tobacco industry and has served as lead or co-lead counsel on numerous nationwide class actions. The tobacco Medicaid recoupment litigation settled in 1999, resulting in a recovery to the State of Ohio of more than $9.86 billion. Setting aside the substantial, if not immeasurable non-economic components of the settlement, which curb youth smoking and addiction, the settlement's financial proceeds are a multiple of twelve times larger than the prior largest Ohio-based settlement.

Class actions in which one or more of the Firm's attorneys currently serves or served as class counsel include the following:

➢ *Deloitte Consulting Pandemic Unemployment Assistance Data Breach Litigation* – Goldenberg Schneider served as Lead Counsel representing Plaintiffs and the class of several hundred thousand Covid-19 Pandemic Unemployment Assistance ("PUA") applicants from Ohio, Colorado, and Illinois whose sensitive personal information was made available to third parties without their authorization.  Plaintiffs alleged that Deloitte Consulting designed, operated, and maintained the PUA systems which resulted in the unauthorized exposure.  The case, pending in federal district court for the Southern

District of New York before Judge Lewis J. Liman, settled for $4,950,000, and final approval of the settlement was granted on April 7, 2022.

➢ *In Re: Veterans' Administration Data Theft Litigation* – Goldenberg Schneider served as co-lead counsel for a nationwide class of approximately 20 million veterans and current members of the military who were impacted by the August 2006 theft of personal data. Multiple actions were consolidated by the Panel on Multidistrict Litigation and sent to the Federal District Court in the District of Columbia. Goldenberg Schneider successfully resolved this action with a $20,000,000 settlement.

➢ *In Re: Southern Ohio Health Systems Data Breach Litigation*- Goldenberg Schneider served as co-lead counsel for a class of approximately 400,000 patients whose personal information was stolen during a criminal hacking and ransomware attack that targeted a law firm with whom Defendants entrusted their patients' sensitive information. Final approval was granted to the $1,950,000 common fund settlement on November 30, 2022.

➢ *Acura RDX Infotainment System Litigation* - Goldenberg Schneider filed a nationwide class action alleging that Honda knowingly sold its 2019 and 2020 Acura RDX vehicles with defective infotainment systems. The infotainment systems in these vehicles behave erratically, malfunctioning, freezing, and creating a safety hazard and distraction. The court denied in large part Defendant's motion to dismiss. Following substantial discovery, the Court certified a class of California purchasers of these vehicles. Goldenberg Schneider and co-counsel Hagens Berman Sobol Shapiro negotiated a nationwide class settlement that received final approval on December 20, 2021.

➢ *Ulyana Lynevych v. Mercedes-Benz USA, LLC* – Goldenberg Schneider along with Hagens Berman Sobol Shapiro initiated this lawsuit against Mercedes and Bosch alleging that these defendants knowingly programmed Mercedes' Clean Diesel BlueTEC vehicles to emit illegal and dangerous levels of nitrogen oxide (NOx) in virtually all real-world driving conditions and equipped the vehicles with a "defeat device." Mr. Goldenberg serves on the Executive Committee. Goldenberg Schneider and its co-counsel initiated this litigation nearly six months before the U.S. EPA and the California Air Resources Board began their investigation and eventual enforcement actions. A nationwide settlement with Defendants valued at over $750 million for the benefit of defrauded consumers was granted final approval in July, 2021.

➢ *Estep v. J. Kenneth Blackwell, Ohio Secretary of State* – Goldenberg Schneider served as co-lead counsel on this class action against former Ohio Secretary of State, Ken Blackwell, based upon a violation of privacy rights when personal information was unlawfully disclosed in public records accessible through the Secretary's website. The settlement required the Secretary of State to dramatically improve the protection of social security numbers.

➢ *In re: Google Inc. Street View Electronic Communications Litigation* - In 2010, Goldenberg Schneider and co-counsel filed the first nationwide class action lawsuit against Google for violating the Federal Wiretap Act. The complaint alleges that Google routinely used Google Street View vehicles equipped with special hardware and software "snoopers" and "sniffers" to illegally intercept and record wireless electronic communications. In 2011, the Court denied Google's motion to dismiss the federal wiretapping claim, ruling that plaintiffs stated a viable claim and that none of the statutory exemptions apply to Google's actions. Google appealed to the Ninth Circuit which affirmed the denial. The litigation settled for $13 million.

➢ *City of Cincinnati Pension Litigation* – Goldenberg Schneider and its co-counsel, with the assistance of U.S. District Court Judge Michael Barrett, successfully resolved a series of cases relating to the City of Cincinnati Retirement System, known as the CRS. Judge Barrett granted final approval of the historic and landmark Settlement Agreement on October 5, 2015. The settlement comprehensively reforms the CRS, establishes a consistent level of City funding, and reinstates several key provisions that were eliminated in 2011 changes for employees who were vested in the plan at that time. The settlement benefits for the Current Employees Class members, for whom Goldenberg Schneider was approved as Class Counsel, are valued at approximately $50 million.

➢ *In Re*: *Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation* – Goldenberg Schneider served as co-lead counsel for a national class comprised of approximately 4 million Ford vehicle owners who purchased or leased vehicles containing a 5.4 liter 3-valve engine equipped with defective spark plugs and related engine defects. On January 26, 2016, after Plaintiffs had defeated Ford's motion for summary judgment, Judge Benita Pearson of the Northern District of Ohio granted final

approval of a nationwide settlement that provided reimbursement to class members for expenses related to spark plug replacement.

➢ *Navy Federal Credit Union TCPA Litigation* – Goldenberg Schneider served as co-lead counsel in this nationwide class action alleging that Navy Federal Credit Union violated the Telephone Consumer Protection Act by repeatedly texting non-customers without authorization.  Goldenberg Schneider successfully resolved this litigation through the creation of a $9,250,000 common fund for the benefit of the class.  Judge Leonie M. Brinkema of the Federal Court located in the Eastern District of Virginia granted final approval to the settlement on October 20, 2020.

➢ *Bower v. MetLife* – Goldenberg Schneider served as co-lead class counsel on behalf of a nationwide class of beneficiaries of the Federal Employees Group Life Insurance (FEGLI) Policy, the world's largest group life insurance program.  Following the Court's Order certifying the nationwide Class, the case was settled in 2012 for $11,500,000.

➢ *Vicki Linneman, et al., v. Vita-Mix Corporation* - Goldenberg Schneider served as Class Counsel in this nationwide class action alleging that certain Vita-Mix blenders deposit tiny shards of polytetrafluoroethylene (PTFE), a Teflon-like substance, into foods during use.  Goldenberg Schneider and co-counsel successfully settled the litigation allowing class members to choose between (1) a free replacement blade assembly that does not fleck (valued at over $100) or (2) a gift card valued at $70.00. About 5 million class members were eligible for these benefits.

➢ *Shin v. Plantronics, Inc.* – Goldenberg Schneider served as Lead Class Counsel in this nationwide class action on behalf of more than 1.2 million consumers who purchased defective Plantronics BackBeat FIT wireless headphones. Following oral argument on Defendant's motion to dismiss, Goldenberg Schneider and co-counsel successfully resolved the litigation on a nationwide class basis through mediation.  The court granted final approval to the settlement in January 2020.

➢ *In Re: OSB Antitrust Litigation* – Goldenberg Schneider served on the trial team in a case that alleged illegal collusion and cooperation among the oriented strand board industry. The case was resolved through a series of settlements that collectively exceeded $120,000,000.

➢ *Parker v. Berkeley Premium Nutraceuticals* – Goldenberg Schneider served as co-lead counsel and certified three nationwide classes in a consumer fraud class action on behalf of purchasers of herbal supplements for false and unproven claims and deceptive credit card practices. This case was successfully resolved with a settlement valued in the millions of dollars. Moreover, class members retained all rights to recover a portion of the nearly $30 million that the U.S. Attorney General seized in a civil forfeiture action. Goldenberg Schneider then recovered an additional $24,000,000 for the victims by prosecuting a successful class-wide Petition for Remission through the forfeiture proceedings.

➢ *Cates v. Cooper Tire & Rubber Company/ Johnson v. Cooper Tire & Rubber Company* – Goldenberg Schneider served as co-lead counsel for a class of more than a thousand Cooper Tire retirees who claimed that they were entitled to lifetime health care benefits. Goldenberg Schneider secured a judgment on the pleadings, certified the class, and ultimately resolved the case through a settlement valued at over $50,000,000.

➢ *In Re: Consolidated Mortgage Satisfaction Cases* – Goldenberg Schneider served as lead counsel on behalf of Ohio homeowners against some of the largest national and Ohio banking and lending institutions for their failure to timely record mortgage loan payoffs. The Firm was able to consolidate all twenty actions before one trial judge and successfully upheld all the class certifications before the Ohio Supreme Court. These cases were resolved through multiple settlements valued at millions of dollars.

➢ *In re: Verizon Wireless Data Charges Litigation* – Goldenberg Schneider filed the first nationwide class action challenging Verizon Wireless' improper $1.99 data usage charges to certain pay-as-you-go customers. Goldenberg Schneider, as a member of the Plaintiffs Advisory Committee, played an active role in this litigation which resulted in benefits to the Class in excess of $50,000,000 in refunds and reimbursement payments.

➢ *Daffin v. Ford Motor Company* – Goldenberg Schneider and its co-counsel successfully certified an Ohio statewide class on behalf of all Ohio purchasers or lessors of 1999 and 2000 model year Mercury Villager Minivans. The Sixth Circuit upheld the class certification, and the case was resolved through a settlement. The Sixth Circuit decision was one of the first to recognize diminished value as a viable damage model.

➢ *Meyer v. Nissan North America* – Goldenberg Schneider served as co-lead counsel on behalf of thousands of Nissan Quest minivan owners throughout the United States. The suit alleged that the Quest minivan developed dangerous levels of carbon deposits in the accelerator system causing the gas pedal to stick, resulting in a roadway safety hazard including documented accidents and injuries. The case was resolved by a nationwide settlement that included the application of the vehicle warranty to remedy the problem as well as a refund of prior repair costs.

➢ *Continental Casualty Long Term Care Insurance Litigation* ("Pavlov Settlement") - Goldenberg Schneider served as Lead Class Counsel in this litigation on behalf of certain CNA long term care policyholders nationwide whose claims for stays at certain facilities were wrongly denied based upon a non-existent 24/7 on-site nursing requirement. The Federal District Court in the Northern District of Ohio granted final approval to a nationwide class action settlement negotiated by Goldenberg Schneider that provided damages to those whose claims were improperly denied and expanded the types of facilities now covered by these policies. The settlement value exceeded $25 million.

➢ *Carnevale FLSA Class Action* – Goldenberg Schneider served as co-lead counsel on behalf of employees working for a large industrial company that alleged violations of federal and state labor laws through the systematic misclassification of managers and other employees as salaried professionals. This case successfully resolved with a common fund settlement in excess of $5 million.

➢ *Lesley Conti and Tom Conti v. American Honda Motor Co., Inc.*, - Goldenberg Schneider filed a nationwide class action alleging that Honda knowingly sold its 2018-2019 Honda Odyssey, 2019-2020 Honda Passport, and 2019-2020 Honda Pilot vehicles with defective infotainment systems. The infotainment systems in these vehicles behave erratically, malfunctioning, freezing, and creating a safety hazard and distraction. The defect can cause safety-related systems (including backup camera functions) to fail. The court denied in large part Defendant's motion to dismiss. Goldenberg Schneider and co-counsel Hagens Berman Sobol Shapiro negotiated a nationwide class settlement which received final approval on January 4, 2021.

JEFFREY S. GOLDENBERG
Goldenberg Schneider, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
(513) 345-8291
**www.gs-legal.com**


## LEGAL EXPERIENCE

PARTNER, GOLDENBERG SCHNEIDER, L.P.A. (1996-present) - Civil trial and appellate practice in state and federal courts.  Areas of practice include: class actions, consumer protection, data breach and privacy protection, product defect, long-term care insurance litigation, TCPA litigation, state attorney general cost recoupment including tobacco and pharmaceutical average wholesale price litigation, employment litigation including ERISA and wage and hour (FLSA), toxic torts, lead poisoning, antitrust, environmental, and commercial disputes.

ATTORNEY, DINSMORE & SHOHL (1994-1996) - General litigation practice with an emphasis on environmental litigation and compliance.

### *Bar Admissions/Licenses*

State of Ohio (admitted since 1994)
United States Court of Appeals for the Second Circuit
United States Court of Appeals for the Sixth Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court for the Southern District of Ohio
United States District Court for the Northern District of Ohio
United States District Court for the Northern District of Illinois

### *Activities/Memberships*

Ohio Association for Justice
American Association for Justice
American Bar Association
Ohio State Bar Association
Cincinnati Bar Association
The Cincinnati Academy of Leadership for Lawyers
Volunteer Attorney for the Ohio Foreclosure Mediation Project
Supreme Court of Ohio Lawyer to Lawyer Mentoring Program
Pro Seniors Legal Volunteer
President, Board of Directors, Jewish National Fund – Ohio Valley Region
Board of Directors, University of Cincinnati Hillel Jewish Student Center

## EDUCATION

Indiana University School of Law, Bloomington, Indiana, J.D. 1994
Indiana University School of Public and Environmental Affairs, M.S.E.S. 1994
Indiana University, B.A. Biology, 1988

**JEFFREY S. GOLDENBERG**
**PARTNER, GOLDENBERG SCHNEIDER, LPA**
**www.gs-legal.com**

Mr. Goldenberg's practice includes class action and complex civil litigation with an emphasis on consumer protection. His practice areas include insurance coverage (including long-term care insurance), consumer fraud, data breach and privacy protection, product defects, overtime and wage and hour, ERISA, antitrust, toxic torts, and commercial disputes.

Mr. Goldenberg has served as lead and/or co-counsel in numerous multi-million dollar complex civil cases throughout the United States, including Continental Casualty Long Term Care Insurance Litigation, City of Cincinnati Pension Litigation, Ford Spark Plug Litigation, Enzyte Consumer Fraud Litigation, GEAE FLSA Litigation, VA Data Theft Litigation, Styrene Railway Car Litigation, Ford and Nissan Auto Defect Litigation, Clayton Home Sales Tax Litigation, Metlife FEGLI Litigation, Mercedes Diesel Emissions Fraud Litigation, MetLife Reduced Pay at 65 Litigation, FCA Chrysler 2.4 Liter Engine Oil Consumption Litigation, Honda Odyssey and Pilot Infotainment Defect Litigation, Acura RDX Infotainment System Litigation, Vitamix Blender Litigation, LeafFilter Gutter Litigation, and Oriented Strand Board Antitrust Litigation.  Jeff also served as Special Counsel representing the State of Ohio against the Tobacco industry and was part of the litigation team that achieved an unprecedented $9.86 billion settlement for Ohio taxpayers.  He also served as lead counsel on the In re Consolidated Mortgage Satisfaction Cases involving twenty separate class actions.  That litigation resulted in a significant Ohio Supreme Court decision defining key aspects of Ohio class action law.

Mr. Goldenberg earned three degrees from Indiana University: a Bachelor of Arts in Biology in 1988 (Phi Beta Kappa); a Master of Science in Environmental Science in 1994; and his Juris Doctor in 1994. Jeff has practiced in all levels of Ohio trial and appellate courts as well as other courts across the nation and is admitted to practice in the State of Ohio and the United States District Court for the Southern and Northern Districts of Ohio, the Northern District of Illinois, and the United States Second, Sixth & Ninth Circuit Courts of Appeal. Jeff is a member of the American Association for Justice, the Ohio State Bar Association, and the Cincinnati Bar Association.

**TODD B. NAYLOR**
Goldenberg, Schneider, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
(513) 345-8291
**www.gs-legal.com**

## LEGAL EXPERIENCE

PARTNER, GOLDENBERG SCHNEIDER, L.P.A. (2003-present)  Civil trial practice in state and federal courts, trial and appellate level, in insurance litigation, products liability, securities, antitrust, toxic torts, consumer protection, personal injury and wrongful death, with a focus on complex litigation and class actions.

ATTORNEY, MANLEY BURKE, L.P.A. (1998-2003)   Civil trial practice in state and federal courts, trial and appellate level, in toxic torts, products liability, employment intentional torts, medical malpractice, wrongful death, with an emphasis on representation of workers injured or killed by toxic minerals or chemicals.

ATTORNEY, HERMANIES, MAJOR, CASTELLI & GOODMAN (1997-1998) General civil trial practice with an emphasis on personal injury and products liability.

### *Bar Admissions/ Licenses*

State of Ohio Trial and Appellate Courts (since 1997)
Supreme Court of the United States
United States Court of Appeals for the Sixth Circuit
United States District Court for the Southern District of Ohio
United States District Court for the Northern District of Ohio
Admitted Pro Hac Vice in other Non-Ohio State and Federal Courts

### *Activities/ Honors*

Attorney Mediator- Southern District of Ohio
Arbitrator, Clermont County Court of Common Pleas
Arbitrator, Cincinnati Bar Association Fee Arbitration Committee
Fellow, Cincinnati Academy of Leadership for Lawyers, Class XII
Ohio Association for Justice, Trustee/ Chair Section on Environmental Torts (2000-2004)
Cincinnati Bar Association

## EDUCATION

University of Colorado School of Law, J.D. 1997
        Trial advocacy scholarship winner
        Legal Aid and Defender Program Award
Bradley University, B.A. 1994 (with honors)

**TODD B. NAYLOR**
**PARTNER, GOLDENBERG SCHNEIDER, LPA**
www.gs-legal.com

Mr. Naylor's practice areas primarily include class actions, insurance litigation, products liability, antitrust litigation, toxic and environmental torts, personal injury, and wrongful death. He has appeared as lead counsel in courts across the United States representing clients at all stages of litigation and has lectured on various aspects of the legal profession at numerous seminars and at the University of Cincinnati College of Law.

Mr. Naylor frequently represents large classes and entities. He represented the State of Ohio in a securities lawsuit relating to the merger of Exxon and Mobil. He has also represented multiple states, including Connecticut, in pharmaceutical pricing litigation. Mr. Naylor served on the trial team in antitrust litigation involving the oriented strand board industry that resulted in an aggregate settlement of over $120,000,000. Additionally, Mr. Naylor has served as lead counsel in multiple life insurance cases in which he has obtained contested class certification, ultimately resolving the cases for millions of dollars. One such case was filed on behalf of beneficiaries of the Federal Employees Group Life Insurance (FEGLI) Policy, the world's largest group life insurance program. Mr. Naylor presently serves as lead and/or co-counsel in numerous multi-million dollar complex civil litigation cases throughout the State of Ohio and nationwide.

Mr. Naylor has also represented many individuals in high-value litigation involving severe personal injuries and wrongful death. He recently acted as lead counsel in a case against the Montgomery County, Ohio dog warden for the warden's alleged failure to act to prevent the fatal mauling of a Dayton resident. The multi-million dollar settlement of that case, following Plaintiff's defeat of the Dog Warden's motion for summary judgment, is believed to be the largest recovery ever against an animal control agency. Mr. Naylor also recently obtained a $10.3 million verdict against Ethicon for the alleged failure of one its surgical staplers to function as intended during a bowel resection. He then successfully defended the appeal of that verdict before the Second District Court of Appeals and the Supreme Court of Ohio.

Mr. Naylor is admitted to practice in the State of Ohio, the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and the United States District Court for the Southern and Northern Districts of Ohio. He serves as an Attorney Mediator for the Southern District of Ohio, and an Arbitrator for the Clermont County Common Pleas Court and the Cincinnati Bar Association Fee Arbitration Committee. Mr. Naylor is a Fellow with the Cincinnati Academy of Leadership for Lawyers.

**ROBERT B. SHERWOOD**
Goldenberg Schneider, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
(513) 345-8291
**www.gs-legal.com**

## LEGAL EXPERIENCE

PARTNER, GOLDENBERG SCHNEIDER, L.P.A. (2011-present) - Civil trial practice in state and federal courts, trial and appellate level, in data breach, securities, antitrust, products liability, toxic torts, and consumer protection, with a focus on complex litigation and class actions.

ASSOCIATE, SQUIRE, SANDERS & DEMPSEY, LLP (2007–2010) – Civil trial practice in firm's commercial litigation, complex litigation and class action practice groups.

ASSOCIATE, MEREDITH COHEN GREENFOGEL & SKIRNICK, Philadelphia, PA (2003-2007)  Civil trial practice focusing on complex multi-defendant antitrust and securities class actions.

SUPERIOR COURT OF DELAWARE LAW CLERK, HON. JEROME O. HERLIHY (2002-2003)

### *Bar Admissions/Licenses*

Supreme Court of Ohio
Supreme Court of Pennsylvania
United States District Court for the Southern District of Ohio
United States District Court for the Eastern District of Pennsylvania

### *Activities/Memberships*

Cincinnati Bar Association
Ohio State Bar Association
American Bar Association

## EDUCATION

University of Pennsylvania Law School, Philadelphia, PA, J.D. 2002
Bucknell University, Lewisburg, PA, B.A., Political Science, 1999
Honors: *Phi Beta Kappa, magna cum laude*

**ROBERT B. SHERWOOD**
**PARTNER, GOLDENBERG SCHNEIDER, LPA**
**www.gs-legal.com**

Robert's practice focuses on complex civil and class action litigation. He represents clients in trial and appellate courts on the state and federal level and has experience representing both plaintiffs and defendants in multi-party disputes involving consumer protection, defective products, data breach and personal privacy protection, antitrust, securities, civil conspiracy, qui tam, insurance coverage, and breach of contract claims.

Prior to joining Goldenberg Schneider, LPA, Robert was an associate with a large Cleveland-based corporate law firm and, prior to that, a small Philadelphia-based boutique firm specializing in antitrust class actions. Robert has served as a member of legal teams prosecuting multi-million dollar antitrust class actions, including *In re Dynamic Random Access Memory* (DRAM) Antitrust Litigation, No.M-02-1486 (N.D. Cal.); *In re Carbon Black Antitrust Litigation*, MDL No. 1543 (D. Mass.); *In re OSB Antitrust Litigation*, No. 06-826 (E.D. Pa.); and *In re Mercedes Benz Antitrust Litigation*, No. 99-4311 (D. N.J.).

Robert received his Bachelor of Arts in 1999 from Bucknell University, from which he graduated *magna cum laude* with *Phi Beta Kappa* honors. After earning his Juris Doctor from the University of Pennsylvania in 2002, he subsequently served as law clerk to the Honorable Jerome O. Herlihy of the Superior Court of Delaware. Robert is admitted to practice in the State of Ohio and the Commonwealth of Pennsylvania, the United States District Courts for the Southern District of Ohio and Eastern District of Pennsylvania.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JASON BRAUN and STEPHANIE CARTER, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>  v.<br><br>THE PHILADELPHIA INQUIRER, LLC,<br><br>            Defendant. | Case No. 2:22-cv-04185-JMY<br><br>CONSOLIDATED ACTION |

## <u>DECLARATION OF STEVEN WEISBROT, ESQ.</u><br><u>RE: ANGEION GROUP QUALIFICATIONS & THE PROPOSED NOTICE PLAN</u>

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2.      I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the

author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School *Best Practices Guide to Class Action Litigation*.

5.      I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6.      Prior to joining Angeion's executive team, I was employed as Director of Class Action Services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

7.      My notice work comprises a wide range of class actions that include product defect, false advertising, data breach, mass disasters, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work

in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9.    By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at www.angeiongroup.com.

10.    As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services.

11.    Angeion has extensive experience administering landmark settlements involving some of the world's most prominent companies, including:

**In re: Facebook, Inc Consumer Privacy User Profile Litigation**
Case No. 3:18-md-02843-VC (N.D. Cal.)
Meta agreed to pay $725 million to settle allegations that the social media company allowed third parties, including Cambridge Analytica, to access personal information. Angeion undertook an integrated in-app notification and media campaign to a class in the hundreds of millions of individuals and processed 28.6 million claims, the most claims filed in the history of class action.  In fact, during the September 7, 2023 Final Approval Hearing, U.S. District Judge Chhabria acknowledged the record number of claims filed, stating, "I was kind of blown away by how many people made claims."

**In re Apple Inc. Device Performance Litigation**
Case No. 5:18-cv-02827-EJD (N.D. Cal.)
Apple agreed to pay $310 million to settle allegations of diminished performance in iPhone 6's and 7's. Angeion's direct notification efforts were recognized as reaching 99%+ of the current and former owners of 129 million class devices. Millions of claims were processed.

Declaration of Steven Weisbrot, Esq. re: Angeion Group Qualifications and Proposed Notice Plan

**City of Long Beach, et al. v. Monsanto, et al.**
Case No. 2:16-cv-03493-FMO-AS (C.D. Cal.)
Bayer agreed to pay $650 million to settle allegations of waterbodies impaired by PCBs. Angeion's notice administration was extraordinarily successful. The claims administration includes multiple complex claims filing workflows for different funding allocations, including separate fund for "special needs" claimants.

**Beckett v. Aetna Inc.**
Case No. 2:17-cv-03864-JS (E.D. Pa.)
A consolidated data breach class action that arose from the alleged improper disclosure of Protected Health Information by a health insurer and previous claims administrator, including confidential HIV-related information. Angeion provided specialized training to our support team concerning the sensitive nature of the case and underlying health information. Angeion implemented robust privacy protocols to communicate with and verify the claims of the affected class members, including anonymized notice packets and allowing claimants to lodge objections under pseudonyms.

12.    Angeion will further draw on its extensive experience from administering prior high-profile litigations involving privacy concerns and its vast experience administering matters before the Eastern District of Pennsylvania.

| High-Profile Privacy Cases | Case No. | Court |
|---|---|---|
| Vela, et al. v. AMC Networks Inc. ("VPPA") | 1:23-cv-02524 | S.D.N.Y. |
| In re: Facebook, Inc., Consumer Privacy User Profile Litigation | 3:18-md-02843 | N.D. Cal. |
| In re: TikTok Inc., Consumer Privacy Litigation | 1:20-cv-04699 | N.D. Ill. |
| Lundy v. Meta Platforms Inc. | 3:18-cv-06793 | N.D. Cal. |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. |
| Boone, et al. v. Snap Inc. | 2022LA000708 | Ill. Cir. Ct. |
| In re: Plaid Inc. Privacy Litigation | 4:20-cv-03056 | N.D. Cal. |
| T.K. et al. v. Bytedance Technology Co. Ltd. Et al. | 1:19-cv-07915 | N.D. Ill. |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. |
| Parris, et al. v. Meta Platforms Inc. | 2023LA000672 | Ill. Cir. Ct. |
| McDonald, et al. v. Kiloo A/S, et al.<br>Rushing, et al. v. The Walt Disney Co., et al.<br>Rushing, et al. v. ViacomCBS Inc., et al. | 2:20-cv-09534<br>3:17-cv-04419<br>3:17-cv-04492 | N.D. Cal. |

| Cases in the Eastern District of Pennsylvania | Case No. |
|---|---|
| Alvarez v Bi Incorporated | 2:16-cv-02705 |
| Anderson v. Polymedix Inc. et al. | 2:12-cv-03721 |
| Arrington et al. v. Optimum Healthcare IT, LLC | 2:17-cv-03950 |
| Baker v Glenn M Ross, PC | 2:17-cv-04274 |
| Beckett v Aetna Inc. | 2:17-cv-03864 |
| Cooper v All American Home Care LLC | 2:17-cv-01563 |
| Corra et al. v. Acts Retirement Services, Inc. | 2:22-cv-02917 |
| Crawford v. CDI Corporation | 2:20-cv-03317 |
| Devlin v. Ferrandino & Son, Inc. | 2:15-cv-04976 |
| Ebner v. United Recovery Systems LP | 2:14-cv-06881 |
| Elaine v. Credit Control, LLC et al. | 2:15-cv-01271 |
| Gonzalez v. Veritas Consultant Group, LLC d/b/a Moravia Health Network | 2:17-cv-01319 |
| Graudins v. KOP Kilt LLC | 2:14-cv-02589 |
| Hickman et al. v. TL Transportation LLC, et al. | 2:17-cv-01038 |
| Katz v. DNC Services Corp | 2:16-cv-05800 |
| Kelly v. Verizon Pennsylvania LLC | 2:16-cv-05672 |
| Knight v. Midland Credit Management Inc. | 2:17-cv-03118 |
| Kotchmar v. Movie Tavern Partners LP et al. | 2:15-cv-04061 |
| Mott et al. Driveline Retail Merchandising Inc. | 2:12-cv-05244 |
| Pelletier v. Endo International PLC | 2:17-cv-05114 |
| Richardson, et al. v. Verde Energy USA, Inc. | 5:15-cv-06325 |
| Segebarth v. CertainTeed LLC | 2:19-cv-05500 |
| Silvis v Ambit Energy LP | 2:14-cv-05005 |
| Smith et al. v. Temple University | 2:18-cv-00590 |
| Stockdale v. Allstate Fire and Casualty Insurance Co. | 2:19-cv-00845 |
| Sweda  v. Univ. of Penn | 2:16-cv-04329 |
| Taha v Bucks County | 2:12-cv-06867 |
| Thorpe v. Golden Age Home Care, Inc. | 2:17-cv-01187 |
| Vasco v. Power Home Remodeling Group LLC | 2:15-cv-04623 |

## DATA SECURITY & INSURANCE

13.    Angeion recognizes the critical need to secure our physical and network environments and protect data in our custody. It is our commitment to these matters that has made us the go-to administrator for many of the most prominent data security matters of this decade. We

are ever improving upon our robust policies, procedures, and infrastructure by periodically updating data security policies as well as our approach to managing data security in response to changes to physical environment, new threats and risks, business circumstances, legal and policy implications, and evolving technical environments.

14.    Angeion's privacy practices are compliant with the California Consumer Privacy Act, as currently drafted. Consumer data obtained for the delivery of each project is used only for the purposes intended and agreed in advance by all contracted parties, including compliance with orders issued by State or Federal courts as appropriate. Angeion imposes additional data security measures for the protection of Personally Identifiable Information (PII) and Personal Health Information (PHI), including redaction, restricted network and physical access on a need-to-know basis, and network access tracking. Angeion requires background checks of all employees, requires background checks and ongoing compliance audits of its contractors, and enforces standard protocols for the rapid removal of physical and network access in the event of an employee or contractor termination.

15.    Data is transmitted using Transport Layer Security (TLS) 1.3 protocols. Network data is encrypted at rest with the government and financial institution standard of AES 256-bit encryption. We maintain an offline, air-gapped backup copy of all data, ensuring that projects can be administered without interruption.

16.    Further, our team conscientiously monitors the latest compliance requirements, such as GDPR, HIPAA, PCI DSS, and others, to ensure that our organization is meeting all necessary regulatory obligations as well as aligning to industry best practices and standards set forth by frameworks like CIS and NIST. Angeion is cognizant of the ever-evolving digital landscape and continually improves its security infrastructure and processes, including partnering

with best-in-class security service providers. Angeion's robust policies and processes cover all aspects of information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties. Angeion is also committed to a culture of security mindfulness. All employees routinely undergo cybersecurity training to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

17.    Angeion currently maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage.

## SUMMARY OF THE NOTICE PLAN

18.    This declaration will describe the notice plan that we will implement in this matter, including the considerations that informed the development of the plan and why it will provide due process to the Settlement Class. In my professional opinion, the proposed Notice Plan described herein is the best practicable notice under the circumstances and fulfills all due process requirements, fully complying with Fed. R. Civ. P. 23.

19.    The proposed Notice Plan provides for individual direct notice to all reasonably-identifiable Settlement Class Members, via email or mail combined with the implementation of a dedicated website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement. The Notice Plan also includes the issuance of a reminder notice via email.

## DIRECT NOTICE

**Settlement Class Member Data**

20.     Angeion will receive, review, and analyze the Settlement Class Member data provided to it. Angeion performs a thorough analysis to identify duplicative records, as well as missing/incomplete data fields. Angeion will then assign identification numbers to each unique record, which will comprise the final Settlement Class Member list ("Class List").

**Email Notice**

21.     As part of the Notice Plan, Angeion will send direct email notice to Settlement Class Members who have valid email addresses included on the Class List provided to Angeion.

22.     Angeion follows best practices to both validate emails and increase deliverability. Specifically, prior to distributing the email notice, Angeion subjects the email addresses on the Class List to a cleansing and validation process. The email cleansing process removes extra spaces, fixes common typographical errors in domain names, and corrects insufficient domain suffixes (*e.g.*, gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.). The email addresses are then be subjected to an email validation process whereby each email address will be compared to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email address exists.

23.     Further, Angeion designs the email notice to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the email notice as spam.

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior campaigns. Where an address has been returned as a hard bounce within the last year, that email is designated as a known bad email address.

For example, Angeion does not include attachments like the Long Form Notice to the email notice, because attachments are often interpreted by various Internet Service Providers ("ISP") as spam.

24.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, Angeion, after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire) causes a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

25.     In addition to the comprehensive methods described above, Angeion will cause any email address for which email notice could not be delivered to be subjected to an email change of address search in an attempt to locate updated email addresses. Angeion will then send email notice to any updated email addresses obtained via this process.

26.     At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct email notice campaign.

**Mailed Notice**

27.     As part of the Notice Plan, Angeion will send notice of the Settlement via first class U.S. Mail, postage pre-paid, to all Settlement Class Members for whom delivery via email pursuant to the process described above is unsuccessful, and for whom a mailing address is provided on the Class List.

28.     Angeion will employ the following best practices to increase the deliverability rate of the mailed notices: (i) Angeion will cause the mailing address information for Settlement Class Members to be updated utilizing the United States Postal Service's ("USPS") National Change of Address database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS; (ii) Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS; (iii) Notices returned to Angeion by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses; (iv) Notices will be re-mailed to Settlement Class Members for whom updated addresses were identified via the skip tracing process.

**Reminder Notice Efforts**

29.     Prior to the claim form deadline, one or more reminder notices will be sent via email to those Settlement Class Members who have a valid email address and have not submitted a claim form.

30.     The Settlement Agreement (§IV. 44.) specifies that if the Settlement Administrator determines that publication notice is required, then such notice shall be provided by the Defendant in the print and electronic versions of the Philadelphia Inquirer. It is Angeion's recommendation to utilize publication in the Philadelphia Inquirer to further aid in disseminating notice and awareness of the Settlement to Settlement Class Members. Angeion will work with the Defendant to determine an ad size and location appropriate to disseminate notice of the settlement.

## SETTLEMENT WEBSITE & TELEPHONE SUPPORT

31.     The Notice Plan will also implement the creation of a case-specific Settlement Website, where Settlement Class Members can easily view general information about this Settlement, and review relevant Court documents, including the Long Form Notice, the Claim Form, a copy of the Settlement Agreement and the Preliminary Approval Order. The Settlement Website will be designed to be user-friendly to make it easy for Settlement Class Members to find information about the case, view dates and deadlines, and will have a "Contact Us" page containing a dedicated email address by which Settlement Class Members can send additional questions regarding the Settlement.

32.     The Settlement Website will also feature functionality to allow Settlement Class Members to look up their specific notice identification number. Settlement Class Members can also securely submit a Claim Form online via the Settlement Website.

33.     The Settlement Website will be designed to be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the Settlement Website will be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the Settlement Website's metadata to maximize search engine rankings.

34.     A toll-free hotline devoted to this case will be created and provided on the Settlement Website to further apprise Settlement Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and other essential information regarding the Settlement. The hotline will be accessible 24 hours a day, 7

days a week. Settlement Class Members will have the ability to request a copy of the Notice and/or Claim Form via the toll-free hotline.

## **FRAUD DETECTION**

35.    Angeion has developed and deployed a real-time fraud detection system, AngeionAffirm, which is the first and only comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data. AngeionAffirm was developed to combat the rising tide of fraudulent claims in class action settlements and the increasingly sophisticated technologies and techniques used by fraudulent actors in their attempt to perpetuate fraud.

36.    Key highlights of AngeionAffirm include: (1) The implementation of enhanced, machine learning based fraud prevention mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities even before they infiltrate the system; (2) Employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) Performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions, to help ensure that claims are genuine and justifiable; (4) Analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) Deploying a dynamic IP monitoring system to identify and flag suspicious activities across all case engagements; (6) Analysis of over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies, and known bad actors, that may signify fraudulent intent, thus ensuring only bona fide claims are approved; and (7) Utilization of multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

37.     AngeionAffirm will be implemented to detect fraudulent claim submissions in this Settlement as part of the ongoing, comprehensive anti-fraud efforts.

38.     In addition to AngeionAffirm, Angeion maintains a robust, multi-tiered detection system to identify duplicate claims submissions. By way of example, we employ an elaborate technical process to identify potential claim duplication using a series of database-driven searches to find duplicate names and addresses in our claims database. Normally, both the claimant's name and associated nicknames are analyzed, as well as the corresponding standardized addresses, for purposes of claim duplication detection. Additional data points may be used depending on the information available.

## NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

39.     Within ten (10) days of Settlement Agreement filed with this Court, Angeion will cause notice of the settlement to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

## CONCLUSION

40.     The Notice Plan outlined above includes direct notice to all reasonably identifiable Settlement Class Members, with reminder notice efforts, combined with the implementation of a dedicated Settlement Website and toll-free hotline to further inform Settlement Class Members of their rights and options in the Settlement. The Notice Plan is designed to deliver notice to at least 70% of the Settlement Class.

41.     The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

Declaration of Steven Weisbrot, Esq. re: Angeion Group Qualifications and Proposed Notice Plan

13

42.     It is my professional opinion that the Notice Plan will provide full and proper notice to Settlement Class Members before any applicable settlement deadlines, and that the proposed Notice Plan is the best notice that is practicable under the circumstances, will fully comport with due process requirements and is fully compliant with Fed. R. Civ. P. 23. Angeion will report on the successful implementation of the Notice Plan after it has concluded.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: June 4, 2024

_____

STEVEN WEISBROT

# Exhibit A



# INNOVATION
## IT'S PART OF OUR DNA

**Class Action Administration | Mass Arbitration Administration**
**Mass Tort Services | Regulatory Remediation**



Judicial Recognition

© Angeion Group, LLC



## IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION
**Case No. 3:18-md-02843 (N.D. Cal.)**

The Honorable Vincent Chhabria (March 29, 2023): The Court approves the Settlement Administration Protocol & Notice Plan, amended Summary Notice (Dkt. No. 1114-8), second amended Class Notice (Dkt. No. 1114-6), In-App Notice, amended Claim Form (Dkt. No. 1114-2), Opt-Out Form (Dkt. No. 1122-1), and Objection Form (Dkt. No. 1122-2) and finds that their dissemination substantially in the manner and form set forth in the Settlement Agreement and the subsequent filings referenced above meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, the effect of the proposed Settlement (including the releases contained therein), the anticipated motion for Attorneys' Fees and Expenses Award and for Service Awards, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

## IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION
**Case No. 8:22-ml-03052 (C.D. Cal.)**

The Honorable James V. Selna (October 31, 2023): The Court has considered the form and content of the Class notice program and finds that the Class notice program and methodology as described in the Settlement Agreement (a) meet the requirements of due process and Federal Rules of Civil Procedure 23(c) and (e); (b) constitute the best notice practicable under the circumstances to all persons entitled to notice; and (c) satisfies the constitutional requirements regarding notice.

## IN RE: PHILLIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION
**Case No. 2:21-mc-01230 (MDL No. 3014) (W.D. Pa.)**

The Honorable Joy Flowers Conti (October 10, 2023): The Court finds that the method of giving notice to the Settlement Class ("Notice Plan")...(a) constitute the best notice practicable under the circumstances, (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms and benefits of the proposed Settlement...(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and any other persons entitled to receive notice, (d) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Rule 23(c), the Due Process Clause(s) of the United States Constitution, and any other applicable laws...

## IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION
**Case No. 2:18-mn-02873 (D.S.C.)**

The Honorable Richard Mark Gergel (August 29, 2023): The Court also approves the proposed Notice Plan set forth in Exhibit C to the Settlement Agreement.  The Court finds that the proposal for (i) direct mailing of the Notice, as well as emailing of the Summary Notice, to each known Class Member, (ii) personalized outreach to national and local water organizations, (iii) national publication of the Summary Notice and a media campaign targeting all Active Public Water Systems that may potentially meet the qualifications to become Class Members, and (iv) a website that potential Class Members will be directed to displaying a long-form Notice that sets forth the details of the proposed Settlement and provides a toll-free hotline, meets the requirements of Rule 23 and due process and shall constitute due and sufficient notice to all Persons potentially entitled to


participate in the proposed Settlement. The proposed Notice Plan is the best practicable notice under the circumstances of this case; is reasonably calculated under the circumstances to apprise potential Class Members of the Settlement Agreement and of their right to object to or exclude themselves from the proposed Settlement Class; is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive it; and meets all applicable requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and other applicable laws and rules.

### KUKORINIS v. WALMART, INC.

**Case No. 8:22-cv-02402 (M.D. Fla.)**

The Honorable Virginia M. Hernandez Covington (January 19, 2024): The Notice Plan, including the form of the notices and methods for notifying the Settlement Class of the Settlement and its terms and conditions…a. meet the requirements of the Federal Rules of Civil Procedure (including Rule 23 (c)-(e)), the United States Constitution (including the Due Process Clause), and the Rules of this Court; b. constitute the best notice to Settlement Class Members practicable under the circumstances…

### LE ET AL. v. ZUFFA, LLC

**Case No. 2:15-cv-01045 (D. Nev.)**

The Honorable Richard F. Boulware, II (November 17, 2023): The proposed Notice Plan, including the proposed forms and manner of notice, constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure.

### AMANS v. TESLA, INC.

**Case No. 3:21-cv-03577 (N.D. Cal.)**

The Honorable Vince Chhabria (October 20, 2023): The Court further finds that the Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due, and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated, under all circumstances, to apprise members of the Settlement Class of the pendency of this case, the terms of the Settlement Agreement, the right to object to the Settlement, and the right to exclude themselves from the Settlement Class.

### LUNDY v. META PLATFORMS, INC.

**Case No. 3:18-cv-06793 (N.D. Cal.)**

The Honorable James Donato (April 26, 2023): For purposes of Rule 23(e), the Notice Plan submitted with the Motion for Preliminary Approval and the forms of notice attached thereto are approved…The form, content, and method of giving notice to the Settlement Class as described in the Notice Plan submitted with the Motion for Preliminary Approval are accepted at this time as practicable and reasonable in light of the rather unique circumstances of this case.

**ANGEION GROUP**
Writing the Rules

## IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION

**Case No. 5:18-md-02827 (N.D. Cal.)**

The Honorable Edward J. Davila (March 17, 2021): Angeion undertook a comprehensive notice campaign…The notice program was well executed, far-reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to provide "direct notice in a reasonable manner."

## IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION

**Case No. 1:20-cv-04699 (N.D. Ill.)**

The Honorable John Z. Lee (August 22, 2022): The Class Notice was disseminated in accordance with the procedures required by the Court's Order Granting Preliminary Approval…in accordance with applicable law, satisfied the requirements of Rule 23(e) and due process, and constituted the best notice practicable…

## IN RE: GOOGLE PLUS PROFILE LITIGATION

**Case No. 5:18-cv-06164 (N.D. Cal.)**

The Honorable Edward J. Davila (January 25, 2021):  The Court further finds that the program for disseminating notice to Settlement Class Members provided for in the Settlement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes best notice reasonably calculated under the circumstances to apprise Settlement Class Members…

## MEHTA v. ROBINHOOD FINANCIAL LLC

**Case No. 5:21-cv-01013 (N.D. Cal.)**

The Honorable Susan van Keulen (August 29, 2022): The proposed notice plan, which includes direct notice via email, will provide the best notice practicable under the circumstances. This plan and the Notice are reasonably calculated, under the circumstances, to apprise Class Members of the nature and pendency of the Litigation, the scope of the Settlement Class, a summary of the class claims, that a Class Member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, the binding effect of final approval of the proposed Settlement, and the anticipated motion for attorneys' fees, costs, and expenses and for service awards. The plan and the Notice constitute due, adequate, and sufficient notice to Class Members and satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable laws and rules.

## ADTRADER, INC. v. GOOGLE LLC

**Case No. 5:17-cv-07082 (N.D. Cal.)**

The Honorable Beth L. Freeman (May 13, 2022):  The Court approves, as to form, content, and distribution, the Notice Plan set forth in the Settlement Agreement, including the Notice Forms attached to the Weisbrot Declaration, subject to the Court's one requested change as further described in Paragraph 8 of this Order, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court further finds that the Notice is reasonably calculated to, under



all circumstances, reasonably apprise members of the AdWords Class of the pendency of this Action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the AdWords Class. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice Plan fully complies with the Northern District of California's Procedural Guidance for Class Action Settlements.

### IN RE: FACEBOOK INTERNET TRACKING LITIGATION
**Case No. 5:12-md-02314 (N.D. Cal.)**

The Honorable Edward J. Davila (November 10, 2022): The Court finds that Plaintiffs' notice meets all applicable requirements of due process and is particularly impressed with Plaintiffs' methodology and use of technology to reach as many Class Members as possible. Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### CITY OF LONG BEACH v. MONSANTO COMPANY
**Case No. 2:16-cv-03493 (C.D. Cal.)**

The Honorable Fernando M. Olguin (March 14, 2022): The court approves the form, substance, and requirements of the class Notice, (Dkt.278-2, Settlement Agreement, Exh. I). The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

### STEWART v. LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC
**Case No. 3:20-cv-00903 (E.D. Va.)**

The Honorable John A. Gibney Jr. (February 25, 2022): The proposed forms and methods for notifying the proposed Settlement Class Members of the Settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to notice...Based on the foregoing, the Court hereby approves the notice plans developed by the Parties and the Settlement Administrator and directs that they be implemented according to the Agreement and the notice plans attached as exhibits.

### WILLIAMS v. APPLE INC.
**Case No. 3:19-cv-04700 (N.D. Cal.)**

The Honorable Laurel Beeler (February 24, 2022): The Court finds the Email Notice and Website Notice (attached to the Agreement as Exhibits 1 and 4, respectively), and their manner of transmission, implemented pursuant to the Agreement (a) are the best practicable notice, (b) are reasonably calculated, under the circumstances, to apprise the Subscriber Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement, (c) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (d) meet all requirements of applicable law.

### CLEVELAND v. WHIRLPOOL CORPORATION
**Case No. 0:20-cv-01906 (D. Minn.)**

The Honorable Wilhelmina M. Wright (December 16, 2021): It appears to the Court that the proposed Notice Plan described herein, and detailed in the Settlement Agreement, comports with

due process, Rule 23, and all other applicable law. Class Notice consists of email notice and postcard notice when email addresses are unavailable, which is the best practicable notice under the circumstances…The proposed Notice Plan complies with the requirements of Rule 23, Fed. R. Civ. P., and due process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

### RASMUSSEN V. TESLA, INC. D/B/A TESLA MOTORS, INC.
**Case No. 5:19-cv-04596 (N.D. Cal.)**

The Honorable Beth Labson Freeman (December 10, 2021): The Court has carefully considered the forms and methods of notice to the Settlement Class set forth in the Settlement Agreement ("Notice Plan"). The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and the requirements of any other applicable law, such that the terms of the Settlement Agreement, the releases provided for therein, and this Court's final judgment will be binding on all Settlement Class Members.

### CAMERON V. APPLE INC.
**Case No. 4:19-cv-03074 (N.D. Cal.)**

The Honorable Yvonne Gonzalez Rogers (November 16, 2021): The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

### RISTO V. SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS ET AL.
**Case No. 2:18-cv-07241 (C.D. Cal.)**

The Honorable Christina A. Snyder (November 12, 2021):  The Court approves the publication notice plan presented to this Court as it will provide notice to potential class members through a combination of traditional and digital media that will consist of publication of notice via press release, programmatic display digital advertising, and targeted social media, all of which will direct Class Members to the Settlement website…The notice plan satisfies any due process concerns as this Court certified the class under Federal Rule of Civil Procedure 23(b)(1)…

### JENKINS V. NATIONAL GRID USA SERVICE COMPANY, INC.
**Case No. 2:15-cv-01219 (E.D.N.Y.)**

The Honorable Joanna Seybert (November 8, 2021):  Pursuant to Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), the Court approves the proposed Notice Plan and procedures set forth at Section 8 of the Settlement, including the form and content of the proposed forms of notice to the Settlement Class attached as Exhibits C-G to the Settlement and the proposed procedures for Settlement Class Members to exclude themselves from the Settlement Class or object. The Court finds that the proposed Notice Plan meets the requirements of due process under the United States Constitution and Rule 23, and that such Notice Plan—which includes direct notice to Settlement Class Members

sent via first class U.S. Mail and email; the establishment of a Settlement Website (at the URL, www.nationalgridtcpasettlement.com) where Settlement Class Members can view the full settlement agreement, the detailed long-form notice (in English and Spanish), and other key case documents; publication notice in forms attached as Exhibits E and F to the Settlement sent via social media (Facebook and Instagram) and streaming radio (e.g., Pandora and iHeart Radio). The Notice Plan shall also include a paid search campaign on search engine(s) chosen by Angeion (e.g., Google) in the form attached as Exhibits G and the establishment of a toll-free telephone number where Settlement Class Members can get additional information—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

### NELLIS v. VIVID SEATS, LLC
**Case No. 1:20-cv-02486 (N.D. Ill.)**

The Honorable Robert M. Dow, Jr. (November 1, 2021):  The Notice Program, together with all included and ancillary documents thereto, (a) constituted reasonable notice; (b) constituted notice that was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Litigation…(c) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice; and (d) met all applicable requirements of due process and any other applicable law. The Court finds that Settlement Class Members have been provided the best notice practicable of the Settlement and that such notice fully satisfies all requirements of law as well as all requirements of due process.

### PELLETIER v. ENDO INTERNATIONAL PLC
**Case No. 2:17-cv-05114 (E.D. Pa.)**

The Honorable Michael M. Baylson (October 25, 2021): The Court approves, as to form and content, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notice, annexed hereto as Exhibits A-1, A-2, and A-3, respectively, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶7-10 of this Order, meet the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

### BIEGEL v. BLUE DIAMOND GROWERS
**Case No. 7:20-cv-03032 (S.D.N.Y.)**

The Honorable Cathy Seibel (October 25, 2021):  The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action…and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

### QUINTERO v. SAN DIEGO ASSOCIATION OF GOVERNMENTS
**Case No. 37-2019-00017834-CU-NP-CTL (Cal. Super. Ct.)**

The Honorable Eddie C. Sturgeon (September 27, 2021):  The Court has reviewed the class notices for the Settlement Class and the methods for providing notice and has determined that the parties will employ forms and methods of notice that constitute the best notice practicable under the circumstances; are reasonably calculated to apprise class members of the terms of the Settlement



and of their right to participate in it, object, or opt-out; are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and meet all constitutional and statutory requirements, including all due process requirements and the California Rules of Court.

## HOLVE v. MCCORMICK & COMPANY, INC.
### Case No. 6:16-cv-06702 (W.D.N.Y.)

The Honorable Mark W. Pedersen (September 23, 2021): The Court finds that the form, content and method of giving notice to the Class as described in the Settlement Agreement and the Declaration of the Settlement Administrator: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action…(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.

## CULBERTSON ET AL. v. DELOITTE CONSULTING LLP
### Case No. 1:20-cv-03962 (S.D.N.Y.)

The Honorable Lewis J. Liman (August 27, 2021): The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

## PULMONARY ASSOCIATES OF CHARLESTON PLLC v. GREENWAY HEALTH, LLC
### Case No. 3:19-cv-00167 (N.D. Ga.)

The Honorable Timothy C. Batten, Sr. (August 24, 2021):  Under Rule 23(c)(2), the Court finds that the content, format, and method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot filed on July 2, 2021, and the Settlement Agreement and Release, including notice by First Class U.S. Mail and email to all known Class Members, is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and due process.

## IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO II)
### Case No. 6:20-md-02977 (E.D. Okla.)

The Honorable Robert J. Shelby (August 23, 2021):  The Court approves the method of notice to be provided to the Settlement Class as set forth in Plaintiffs' Motion and Memorandum of Law in Support of Motion for Approval of the Form and Manner of Class Notice and Appointment of Settlement Administrator and Request for Expedited Treatment and the Declaration of Steven Weisbrot on Angeion Group Qualifications and Proposed Notice Plan…The Court finds and concludes that such notice: (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Settlement Class and to apprise them of the Action, the terms and conditions of the Settlement, their right to opt out and be excluded from the Settlement Class, and to object to the Settlement; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

## ROBERTS ET AL. V. AT&T MOBILITY, LLC

**Case No. 3:15-cv-03418 (N.D. Cal.)**

The Honorable Edward M. Chen (August 20, 2021): The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort, as well as supplemental notice via a social media notice campaign and reminder email and SMS notices; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of this Action …(d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process under the U.S. Constitution, and any other applicable law.

## PYGIN V. BOMBAS, LLC

**Case No. 4:20-cv-04412 (N.D. Cal.)**

The Honorable Jeffrey S. White (July 12, 2021): The Court also concludes that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the Scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court approves the Class Notice and Notice Program and the Claim Form.

## WILLIAMS ET AL. V. RECKITT BENCKISER LLC ET AL.

**Case No. 1:20-cv-23564 (S.D. Fla.)**

The Honorable Jonathan Goodman (April 23, 2021): The Court approves, as to form and content, the Class Notice and Internet  Notice submitted by the parties (Exhibits B and D to the Settlement Agreement or Notices substantially similar thereto) and finds that the procedures described therein meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The proposed Class Notice Plan -- consisting of (i) internet and social media notice; and (ii) notice via an established Settlement Website -- is reasonably calculated to reach no less than 80% of the Settlement Class Members.

## NELSON ET AL. V. IDAHO CENTRAL CREDIT UNION

**Case No. CV03-20-00831, CV03-20-03221 (Idaho Jud. Dist.)**

The Honorable Robert C. Naftz (January 19, 2021): The Court finds that the Proposed Notice here is tailored to this Class and designed to ensure broad and effective reach to it…The Parties represent that the operative notice plan is the best notice practicable and is reasonably designed to reach the settlement class members. The Court agrees.

## IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION

**Case No. 3:20-cv-00812 (N.D. Cal.)**

The Honorable Edward M. Chen (December 29, 2020): The Court finds that the Class Notice and Notice Program satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances.

## IN RE: PEANUT FARMERS ANTITRUST LITIGATION

**Case No. 2:19-cv-00463 (E.D. Va.)**

The Honorable Raymond A. Jackson (December 23, 2020):  The Court finds that the Notice Program...constitutes the best notice that is practicable under the circumstances and is valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of Rule 23(c)(2) and the due process requirements of the Constitution of the United States.

## BENTLEY ET AL. V. LG ELECTRONICS U.S.A., INC.

**Case No. 2:19-cv-13554 (D.N.J.)**

The Honorable Madeline Cox Arleo (December 18, 2020):  The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Litigation, the Settlement, and the Settlement Class Members' rights to object to the Settlement or opt out of the Settlement Class, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

## IN RE: ALLURA FIBER CEMENT SIDING PRODUCTS LIABILITY LITIGATION

**Case No. 2:19-mn-02886 (D.S.C.)**

The Honorable David C. Norton (December 18, 2020):  The proposed Notice provides the best notice practicable under the circumstances. It allows Settlement Class Members a full and fair opportunity to consider the proposed settlement. The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all members of the Settlement Class who would be bound by the settlement. There is no additional method of distribution that would be reasonably likely to notify Settlement Class Members who may not receive notice pursuant to the proposed distribution plan.

## ADKINS ET AL. V. FACEBOOK, INC.

**Case No. 3:18-cv-05982 (N.D. Cal.)**

The Honorable William Alsup (November 15, 2020):  Notice to the class is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co., 399 U.S. 306, 314 (1650).*

## IN RE: 21ST CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION

**Case No. 8:16-md-02737 (M.D. Fla.)**

The Honorable Mary S. Scriven (November 2, 2020):  The Court finds and determines that mailing the Summary Notice and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members.

## MARINO ET AL. V. COACH INC.

**Case No. 1:16-cv-01122 (S.D.N.Y.)**

The Honorable Valerie Caproni (August 24, 2020):  The Court finds that the form, content, and method of giving notice to the Settlement Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.  The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

## BROWN V. DIRECTV, LLC

**Case No. 2:13-cv-01170 (C.D. Cal.)**

The Honorable Dolly M. Gee (July 23, 2020):  Given the nature and size of the class, the fact that the class has no geographical limitations, and the sheer number of calls at issue, the Court determines that these methods constitute the best and most reasonable form of notice under the circumstances.

## IN RE: SSA BONDS ANTITRUST LITIGATION

**Case No. 1:16-cv-03711 (S.D.N.Y.)**

The Honorable Edgardo Ramos (July 15, 2020): The Court finds that the mailing and distribution of the Notice and the publication of the Summary Notice substantially in the manner set forth below meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

## KJESSLER ET AL. V. ZAAPPAAZ, INC. ET AL.

**Case No. 4:18-cv-00430 (S.D. Tex.)**

The Honorable Nancy F. Atlas (July 14, 2020): The Court also preliminarily approves the proposed manner of communicating the Notice and Summary Notice to the putative Settlement Class, as set out below, and finds it is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23.

## HESTER ET AL. V. WALMART, INC.

**Case No. 5:18-cv-05225 (W.D. Ark.)**

The Honorable Timothy L. Brooks (July 9, 2020): The Court finds that the Notice and Notice Plan substantially in the manner and form set forth in this Order and the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.



## CLAY ET AL. V. CYTOSPORT INC.

**Case No. 3:15-cv-00165 (S.D. Cal.)**

The Honorable M. James Lorenz (June 17, 2020):  The Court approves the proposed Notice Plan for giving notice to the Settlement Class through publication, both print and digital, and through the establishment of a Settlement Website, as more fully described in the Agreement and the Claims Administrator's affidavits (docs. no. 222-9, 224, 224-1, and 232-3 through 232-6). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

## GROGAN V. AARON'S INC.

**Case No. 1:18-cv-02821 (N.D. Ga.)**

The Honorable J.P. Boulee (May 1, 2020):  The Court finds that the Notice Plan as set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and constitutes the best notice practicable under the circumstances, including direct individual notice by mail and email to Settlement Class Members where feasible and a nationwide publication website-based notice program, as well as establishing a Settlement Website at the web address of www.AaronsTCPASettlement.com, and satisfies fully the requirements the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law, such that the Settlement Agreement and Final Order and Judgment will be binding on all Settlement Class Members.

## CUMMINGS V. BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO ET AL.

**Case No. D-202-CV-2001-00579 (N.M. Jud. Dist.)**

The Honorable Carl Butkus (March 30, 2020): The Court has reviewed the Class Notice, the Plan of Allocation and Distribution and Claim Form, each of which it approves in form and substance. The Court finds that the form and methods of notice set forth in the Agreement: (i) are reasonable and the best practicable notice under the circumstances; (ii) are reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuit, of their rights to object to or opt-out of the Settlement, and of the Final Approval Hearing; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of the New Mexico Rules of Civil Procedure, the requirements of due process under the New Mexico and United States Constitutions, and the requirements of any other applicable rules or laws.

## SCHNEIDER ET AL. V. CHIPOTLE MEXICAN GRILL, INC.

**Case No. 4:16-cv-02200 (N.D. Cal.)**

The Honorable Haywood S. Gilliam, Jr. (January 31, 2020):  Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in People magazine, a nationwide publication, and the East Bay Times. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And

through "learning" technology, it continues placing ads on websites where the ad is performing well. Id. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness website with ads comparing fast casual choices). Id. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." Roes, 944 F.3d at 1045 (citation omitted).

## HANLEY V. TAMPA BAY SPORTS AND ENTERTAINMENT LLC
### Case No. 8:19-cv-00550 (M.D. Fla.)

The Honorable Charlene Edwards Honeywell (January 7, 2020):  The Court approves the form and content of the Class notices and claim forms substantially in the forms attached as Exhibits A-D to the Settlement. The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

## CORCORAN ET AL. V. CVS HEALTH ET AL.
### Case No. 4:15-cv-03504 (N.D. Cal.)

The Honorable Yvonne Gonzalez Rogers (November 22, 2019):  Having reviewed the parties' briefings, plaintiffs' declarations regarding the selection process for a notice provider in this matter and regarding Angeion Group LLC's experience and qualifications, and in light of defendants' non-opposition, the Court APPROVES Angeion Group LLC as the notice provider. Thus, the Court GRANTS the motion for approval of class notice provider and class notice program on this basis.

Having considered the parties' revised proposed notice program, the Court agrees that the parties' proposed notice program is the "best notice that is practicable under the circumstances." The Court is satisfied with the representations made regarding Angeion Group LLC's methods for ascertaining email addresses from existing information in the possession of defendants. Rule 23 further contemplates and permits electronic notice to class members in certain situations. See Fed. R. Civ. P. 23(c)(2)(B). The Court finds, in light of the representations made by the parties, that this is a situation that permits electronic notification via email, in addition to notice via United States Postal Service. Thus, the Court APPROVES the parties' revised proposed class notice program, and GRANTS the motion for approval of class notice provider and class notice program as to notification via email and United States Postal Service mail.

## PATORA v. TARTE, INC.

**Case No. 7:18-cv-11760 (S.D.N.Y.)**

The Honorable Kenneth M. Karas (October 2, 2019): The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the Proposed Settlement, and their rights under the Proposed Settlement, including but not limited to their rights to object to or exclude themselves from the Proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clauses of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

## CARTER ET AL. v. GENERAL NUTRITION CENTERS, INC., AND GNC HOLDINGS, INC.

**Case No. 2:16-cv-00633 (W.D. Pa.)**

The Honorable Mark R. Hornak (September 9, 2019): The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise proposed Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the proposed Settlement Class. The Court finds that the notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, Rule 23 of the Federal Rules of Ci vii Procedure, and any other applicable laws.

## CORZINE v. MAYTAG CORPORATION ET AL.

**Case No. 5:15-cv-05764 (N.D. Cal.)**

The Honorable Beth L. Freeman (August 21, 2019): The Court, having reviewed the proposed Summary Notice, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

## MEDNICK v. PRECOR, INC.

**Case No. 1:14-cv-03624 (N.D. Ill.)**

The Honorable Harry D. Leinenweber (June 12, 2019): Notice provided to Class Members pursuant to the Preliminary Class Settlement Approval Order constitutes the best notice practicable under the circumstances, including individual email and mail notice to all Class Members who could be identified through reasonable effort, including information provided by authorized third-party retailers of Precor. Said notice provided full and adequate notice of these proceedings and of the matter set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of F.R.C.P. Rule 23 (e) and (h) and the requirements of due process under the United States and California Constitutions.

## GONZALEZ v. TCR SPORTS BROADCASTING HOLDING LLP ET AL.

### Case No. 1:18-cv-20048 (S.D. Fla.)

The Honorable Darrin P. Gayles (May 24, 2019):  The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

## ANDREWS ET AL. v. THE GAP, INC. ET AL.

### Case No. CGC-18-567237 (Cal. Super. Ct.)

The Honorable Richard B. Ulmer Jr. (May 10, 2019): The Court finds that (a) the Full Notice, Email Notice, and Publication constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.

## COLE ET AL. v. NIBCO, INC.

### Case No. 3:13-cv-07871 (D.N.J.)

The Honorable Freda L. Wolfson (April 11, 2019):  The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order. The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this..., (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

## DIFRANCESCO ET AL. v. UTZ QUALITY FOODS, INC.

### Case No. 1:14-cv-14744 (D. Mass.)

The Honorable Douglas P. Woodlock (March 15, 2019):  The Court finds that the Notice plan and all forms of Notice to the Class as set forth in the Settlement Agreement and Exhibits 2 and 6 thereto, as amended (the "Notice Program"), is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the certification of the Settlement Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program is consistent with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

## IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

### Case No. 3:17-md-02777 (N.D. Cal.)

The Honorable Edward M. Chen (February 11, 2019):  Also, the parties went through a sufficiently rigorous selection process to select a settlement administrator. See Proc. Guidance for Class Action Sett. ¶ 2; see also Cabraser Decl. ¶¶ 9-10. While the settlement administration costs are significant – an estimated $1.5 million – they are adequately justified given the size of the class and the relief being provided.

In addition, the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice...practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

Finally, the parties have noted that the proposed settlement bears similarity to the settlement in the Volkswagen MDL. See Proc. Guidance for Class Action Sett. ¶ 11.

### RYSEWYK ET AL. V. SEARS HOLDINGS CORPORATION ET AL.
**Case No. 1:15-cv-04519 (N.D. Ill.)**

The Honorable Manish S. Shah (January 29, 2019):  The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated August 6, 2018. (Dkt. 191) Based on the declaration of Steven Weisbrot, Esq. of Angeion Group (Dkt. No. 209-2), which sets forth compliance with the Notice Plan and related matters, the Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Settlement Class, thus constituting the best practicable notice and satisfying due process.

### MAYHEW ET AL. V. KAS DIRECT, LLC, AND S.C. JOHNSON & SON, INC.
**Case No. 7:16-cv-06981 (S.D.N.Y.)**

The Honorable Vincent J. Briccetti (June 26, 2018): In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

## IN RE: OUTER BANKS POWER OUTAGE LITIGATION
**Case No. 4:17-cv-00141 (E.D.N.C.)**

The Honorable James C. Dever III (May 2, 2018):  The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair, reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan.

## GOLDEMBERG ET AL. V. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.
**Case No. 7:13-cv-03073 (S.D.N.Y.)**

The Honorable Nelson S. Roman (November 1, 2017): Notice of the pendency of the Action as a class action and of the proposed Settlement, as set forth in the Settlement Notices, was given to all Class Members who could be identified with reasonable effort, consistent with the terms of the Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law in the United States. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

## HALVORSON V. TALENTBIN, INC.
**Case No. 3:15-cv-05166 (N.D. Cal.)**

The Honorable Joseph C. Spero (July 25, 2017): The Court finds that the Notice provided for in the Order of Preliminary Approval of Settlement has been provided to the Settlement Class, and the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances, and was in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution, and any other applicable law. The Notice apprised the members of the Settlement Class of the pendency of the litigation; of all material elements of the proposed settlement, including but not limited to the relief afforded the Settlement Class under the Settlement Agreement; of the res judicata effect on members of the Settlement Class and of their opportunity to object to, comment on, or opt-out of, the Settlement; of the identity of Settlement Class Counsel and of information necessary to contact Settlement Class Counsel; and of the right to appear at the Fairness Hearing. Full opportunity has been afforded to members of the Settlement Class to participate in the Fairness Hearing. Accordingly, the Court determines that all Final Settlement Class Members are bound by this Final Judgment in accordance with the terms provided herein.

## IN RE: ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION
**MDL No. 2669/Case No. 4:15-md-02669 (E.D. Mo.)**

The Honorable John A. Ross (July 21, 2017): The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —is



the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

## TRAXLER ET AL. V. PPG INDUSTRIES INC. ET AL.
### Case No. 1:15-cv-00912 (N.D. Ohio)

The Honorable Dan Aaron Polster (April 27, 2017):  The Court hereby approves the form and procedure for disseminating notice of the proposed settlement to the Settlement Class as set forth in the Agreement. The Court finds that the proposed Notice Plan contemplated constitutes the best notice practicable under the circumstances and is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e). In addition, Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Settlement Class; (iii) the claims and issues of the Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

## IN RE: THE HOME DEPOT, INC., CUSTOMER DATA SECURITY BREACH LITIGATION
### Case No. 1:14-md-02583 (N.D. Ga.)

The Honorable Thomas W. Thrash Jr. (March 10, 2017): The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

## ROY V. TITEFLEX CORPORATION T/A GASTITE AND WARD MANUFACTURING, LLC
### Case No. 384003V (Md. Cir. Ct.)

The Honorable Ronald B. Rubin (February 24, 2017): What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal. *I think the notice provisions are exquisite* [emphasis added].

## IN RE: LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION

**Case No. 2:08-cv-00051 (D.N.J.)**

The Honorable Madeline Cox Arleo (June 17, 2016): This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated mailing and/or email address in the Company's records, and their proposal to direct the ICA to use this information to send absent class members notice both via first class   mail and email. The Court further approves the plan for the Publication Notice's publication in two national print magazines and on the internet. The Court also approves payment of notice costs as provided in the Settlement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy.

## FENLEY v. APPLIED CONSULTANTS, INC.

**Case No. 2:15-cv-00259 (W.D. Pa.)**

The Honorable Mark R. Hornak (June 16, 2016):  The Court would note that it approved notice provisions of the settlement agreement in the proceedings today. That was all handled by the settlement and administrator Angeion. The notices were sent. The class list utilized the Postal Service's national change of address database along with using certain proprietary and other public resources to verify addresses. the requirements of Fed.R.Civ.P. 23(c)(2), Fed.R.Civ.P. 23(e) (l), and Due Process....

The Court finds and concludes that the mechanisms and methods of notice to the class as identified were reasonably calculated to provide all notice required by the due process clause, the applicable rules and statutory provisions, and that the results of ***the efforts of Angeion were highly successful and fulfilled all of those requirements*** [emphasis added].

## FUENTES ET AL. V. UNIRUSH, LLC D/B/A UNIRUSH FINANCIAL SERVICES ET AL.

**Case No. 1:15-cv-08372 (S.D.N.Y.)**

The Honorable J. Paul Oetken (May 16, 2016): The Court approves, as to form, content, and distribution, the Claim Form attached to the Settlement Agreement as Exhibit A, the Notice Plan, and all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B-D, thereto, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of the Actions, the terms of the Settlement Agreement, and the right to object to the settlement and to exclude themselves from the Settlement Class. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy or formatting for publication.



**IN RE: WHIRLPOOL CORP. FRONTLOADING WASHER PRODUCTS LIABILITY LITIGATION**

**MDL No. 2001/Case No. 1:08-wp-65000 (N.D. Ohio)**

The Honorable Christopher A. Boyko (May 12, 2016): The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

**SATERIALE ET AL. V. R.J. REYNOLDS TOBACCO CO.**

**Case No. 2:09-cv-08394 (C.D. Cal.)**

The Honorable Christina A. Snyder (May 3, 2016): The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

**FERRERA ET AL. V. SNYDER'S-LANCE, INC.**

**Case No. 0:13-cv-62496 (S.D. Fla.)**

The Honorable Joan A. Lenard (February 12, 2016): The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

**IN RE: POOL PRODUCTS DISTRIBUTION MARKET ANTITRUST LITIGATION**

**MDL No. 2328/Case No. 2:12-md-02328 (E.D. La.)**

The Honorable Sarah S. Vance (December 31, 2014): To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web- based forms of communication in the plan. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion

that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

### SOTO ET AL. V. THE GALLUP ORGANIZATION, INC.

**Case No. 0:13-cv-61747 (S.D. Fla.)**

The Honorable Marcia G. Cooke (June 16, 2015): The Court approves the form and substance of the notice of class action settlement described in ¶ 8 of the Agreement and attached to the Agreement as Exhibits A, C and D. The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights.

### OTT V. MORTGAGE INVESTORS CORPORATION OF OHIO, INC.

**Case No. 3:14-cv-00645 (D. Or.)**

The Honorable Janice M. Stewart (July 20, 2015): The Notice Plan, in form, method, and content, fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto. The Court finds that the Notice Plan is reasonably calculated to, under all circumstances, reasonably apprise the persons in the Settlement Class of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.

# EXHIBIT D

<u>LEGAL NOTICE</u>

Braun v. The Philadelphia Inquirer, LLC
Case No. No. 2:22-cv-04185-JMY
(E.D. Pa.)

If you had a digital subscription with The Philadelphia Inquirer, LLC at any time from October 1, 2019, and January 16, 2024, and used Facebook during that time, a class action settlement may affect your rights.

This is <u>not</u> a solicitation from a lawyer.

You are <u>not</u> being sued.

For more information, please visit
InquirerClassActionSettlement.com

The Philadelphia Inquirer Video Privacy Settlement
Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

«ScanString»
Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

WEBSITE or call toll-free 1-XXX-XXX-XXXX

NOTICE ID: «NOTICE ID»

THE PHILADELPHIA INQUIRER VIDEO PRIVACY CLAIM FORM

«FIRST NAME» «LAST NAME»

«BARCODE»

«ADDRESS»

## UPDATE CONTACT INFORMATION

Please use the fields below if you need to provide updated contact information.

Street: _____ City: _____ State: _____ Zip: _____

Email Address: _____ Phone Number: _____

## SETTLEMENT CLASS ATTESTATION

☐ By checking this box, I hereby attest to having a digital subscription with The Philadelphia Inquirer, LLC at any time from October 1, 2019, and January 16, 2024, and I used Facebook during that time.

PAYMENT OPTIONS (SELECT ONE): ☐ PayPal  ☐ Venmo  ☐ Zelle  ☐ Virtual Prepaid Card  ☐ Check
Please provide the email address or phone number associated with your PayPal, Venmo or Zelle account, or email address for the Virtual Prepaid card: _____

CERTIFICATION & SIGNATURE: I swear and affirm that I am a Settlement Class Member and the information provided in this Claim Form is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

Signature: _____ Printed Name: _____ Date: _____

A proposed Settlement has been reached with The Philadelphia Inquirer, LLC ("Defendant") over allegations that Defendant intercepted the Plaintiffs' and Settlement Class Members' electronic communications without the proper consent, and then disclosed to Facebook the contents of these electronic communications, which included (i) Plaintiffs' Facebook ID ("FID") and (ii) software code containing the name of a video allegedly watched and corresponding URL.

Who is Included? The Settlement Class includes approximately 180,000 individuals who maintained a digital subscription with the Defendant at any time from October 1, 2019 until January 16, 2024 and who used Facebook during that time. You are receiving this Notice because the records of The Philadelphia Inquirer, LLC indicate that you are a Settlement Class Member.

What does the Settlement Provide? The Defendant has agreed to establish a $1,125,000.00 Settlement Fund to pay all the costs associated with the administration of this Settlement, issuing class notice, paying Approved Claims, paying Service Award Payments, paying the Fee Award and Costs and paying any Taxes and Tax-Related Expenses. The value of each Settlement Payment shall be determined by dividing the Net Settlement Fund by the number of valid Claim Forms approved by the Settlement Administrator.

How To Submit a Claim: Visit InquirerClassActionSettlement.com to submit your claim online or to download a full Claim Form to complete and return it by mail. Claim Forms must be submitted online by DATE. Claim Forms submitted by mail must be postmarked no later than DATE.

Your Other Options: If you do not want to be legally bound by the Settlement, you must exclude yourself by DATE. If you do not exclude yourself, you will release any claims you may have against the Defendant related to the legal issues this Settlement resolves. If you do not exclude yourself, you may object to the Settlement by DATE. Please visit InquirerClassActionSettlement.com for complete details on how to exclude yourself from or object to the Settlement, or for more information about the Released Claims.

<u>The Lawyers Representing You</u>. The Court has appointed Spector Roseman & Kodroff, P.C. and Goldenberg Schneider, LPA as Class Counsel to represent you and all Settlement Class Members. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you. Class Counsel shall apply to the Court for an award to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund for fees, or $374,962.25 plus 33.33% of any interest earned, and reimbursement of expenses not to exceed $15,000.00. The Fee Application will also include a request for Service Award Payments for each of the Settlement Class Representatives in recognition of their contributions to this Action in an amount not to exceed $5,000 each.

<u>The Final Approval Hearing:</u> The Court has scheduled a hearing for DATE/TIME at ADDRESS, to consider whether to approve the Settlement, Service Awards, Attorneys' Fees, and Costs, as well as any objections. You or your attorney may request to appear at the hearing, but you are not required to do so. The date or time of the hearing may change, so please check InquirerClassActionSettlement.com for updates.

This Notice is only a Summary. Please visit InquirerClassActionSettlement.com or call toll-free 1-XXX-XXX-XXXX for more information.

_____

_____

_____

The Philadelphia Inquirer Video Privacy Settlement
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

# EXHIBIT E

To:      <<Class Member email address>>
From:   Settlement Administrator
Subject Line: Notice of Class Action Settlement – *Braun, et al. v. The Philadelphia Inquirer, LLC*

---

<<NAME>>
Notice ID: <<Notice ID>>
Confirmation Code: <<*Confirmation Code*>>

**You are receiving this Notice because the records of The Philadelphia Inquirer, LLC indicate that you are a Settlement Class Member. Please read this notice carefully.**

<u>**LEGAL NOTICE**</u>
*Braun and Carter v. The Philadelphia Inquirer, LLC*
Case No. No. 2:22-cv-04185-JMY (E.D. Pa.)

**If you had a digital subscription with The Philadelphia Inquirer, LLC at any time from October 1, 2019, and January 16, 2024, and used Facebook during that time, a class action settlement may affect your rights.**

*This is <u>not</u> a solicitation from a lawyer.  You are <u>not</u> being sued.*

A proposed Settlement has been reached with The Philadelphia Inquirer, LLC ("Defendant") over allegations that Defendant knowingly intercepted the Plaintiffs' and Settlement Class Members' electronic communications without the proper consent, and then disclosed to Facebook the contents of these electronic communications, which included (i) Plaintiffs' Facebook ID ("FID") and (ii) software code containing the name of any videos watched and corresponding URL.  The Defendant has denied these allegations.

<u>**Who is Included?**</u> The Settlement Class includes approximately 180,000 individuals who had a digital subscription account with the Defendant at any time from October 1, 2019 until January 16, 2024 and who used Facebook during that time. Records of The Philadelphia Inquirer, LLC indicate that you are within the Settlement Class.

<u>**What does the Settlement Provide?**</u> The Defendant has agreed to establish a $1,125,000.00 Settlement Fund to pay all the costs associated with the administration of this Settlement, issuing class notice, paying Approved Claims, paying Service Award Payments, paying the Fee Award and Costs and paying any Taxes and Tax-Related Expenses. The value of each Settlement Payment will be determined by dividing the Net Settlement Fund by the number of valid Claim Forms approved by the Settlement Administrator. The Settlement also includes injunctive relief halting the challenged practices.

<u>**How To Submit a Claim:**</u> Visit InquirerClassActionSettlement.com to submit your claim online or to download a full Claim Form to complete and return it by mail. Claim Forms must be submitted online by **DATE**. Claim Forms submitted by mail must be postmarked no later than **DATE**.

| **CLICK <u>HERE</u>**<br>**TO FILE A CLAIM** |
| :---: |

{00056271; 1}

## FOR A CASH PAYMENT

**Your Other Options:** If you do not want to be legally bound by the Settlement, you must **exclude yourself** by **DATE**. If you do not exclude yourself, you will release any claims you may have against the Defendant related to the legal issues this Settlement resolves. If you do not exclude yourself, you may **object** to the Settlement by **DATE**. Please visit InquirerClassActionSettlement.com for complete details on how to exclude yourself from or object to the Settlement, or for more information about the Released Claims.

**The Lawyers Representing You**. The Court has appointed Spector Roseman & Kodroff, P.C. and Goldenberg Schneider, LPA as Class Counsel to represent you and all Settlement Class Members. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you. Class Counsel will apply to the Court for an award to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund for fees, or $374,962.25 plus 33.33% of any interest earned, and reimbursement of expenses not to exceed $15,000.00. The Fee Application will also seek Service Award Payments for the two Settlement Class Representatives in recognition of their contributions to this Action in an amount not to exceed $5,000 each.

**The Final Approval Hearing:** The Court has scheduled a hearing for **DATE/TIME** at **ADDRESS**, to consider whether to approve the Settlement, Service Awards, Attorneys' Fees, and Costs, as well as any objections. You or your attorney may request to appear at the hearing, but you are not required to do so. The date or time of the hearing may change, so please check InquirerClassActionSettlement.com for updates.

**This Notice is only a Summary. Please visit** InquirerClassActionSettlement.com **or call toll-free 1-XXX-XXX-XXXX for more information.**

*Unsubscribe*

# EXHIBIT F

## Notice of Proposed Class Action Settlement
## Braun v. The Philadelphia Inquirer, LLC

*This is not a solicitation from a lawyer.*
*The United States District Court for the Eastern District of Pennsylvania authorized this Notice.*

- A proposed Settlement has been reached with The Philadelphia Inquirer, LLC ("Defendant") over allegations that Defendant knowingly intercepted the Plaintiffs' and Settlement Class Members' electronic communications without the proper consent, and then disclosed to Facebook the contents of these electronic communications, which included (i) Plaintiffs' Facebook ID ("FID") and (ii) software code containing the name of a video allegedly watched and corresponding URL ("Video Media" and collectively the FID and Video Media are referred to as the "Personal Viewing Information"), stemming from the Defendant's use of Facebook's Meta Pixel on its website, www.inquirer.com, and its mobile application.

- The Defendant has agreed to establish a $1,125,000.00 Settlement Fund to pay all the costs associated with the administration of this Settlement, issuing class notice, paying Approved Claims, paying Service Award Payments, paying the Fee Award and Costs and paying any Taxes and Tax-Related Expenses. The value of each Settlement Payment shall be determined by dividing the Net Settlement Fund by the number of valid Claim Forms approved by the Settlement Administrator. The Settlement also includes injunctive relief to address the Defendant's alleged use of the challenged technology.

- Your legal rights will be affected whether you act or do not act. <u>You should read this entire Notice carefully.</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM**<br>**DEADLINE: DATE** | Submitting a Claim Form is the only way to be eligible to receive a pro-rata Settlement Payment from the Net Settlement Fund under the terms of the Settlement. |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT**<br>**DEADLINE: DATE** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against the Defendant and Defendant Releasees, for the claims this Settlement resolves.<br>If you exclude yourself, you will give up the right to receive a Settlement Payment. |
| **OBJECT TO OR COMMENT ON THE SETTLEMENT**<br>**DEADLINE: DATE** | You may object to the Settlement by writing to the Court and informing it why you do not think the Settlement should be approved. If you exclude yourself from the Settlement, you cannot object to it.<br>If you object, you may also file a Claim Form to receive a Settlement Payment. |
| **GO TO THE FINAL APPROVAL HEARING**<br>**DATE** | You may attend the Final Approval Hearing where the Court may hear arguments concerning approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. You are <u>not</u> required to attend the Final Approval Hearing. |
| **DO NOTHING** | If you do nothing, you will not receive a Settlement Payment and you will give up your rights to sue the Defendant and Defendant Releasees for the claims this Settlement resolves. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement Payments will be issued unless the Court approves the Settlement, and it becomes final.

## BASIC INFORMATION

### 1.    Why is there a Notice?

The Court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to receive those benefits.

The case is known as *Braun, et al. v. The Philadelphia Inquirer, LLC*, Case No. 2:22-cv-04185-JMY ("Action"), pending in the U.S. District Court for the Eastern District of Pennsylvania. The people who filed this lawsuit are called the "Plaintiffs" and the company they sued, The Philadelphia Inquirer, LLC, is called the "Defendant."

### 2.    What is this lawsuit about?

Plaintiffs allege Defendant knowingly intercepted Plaintiffs' and Participating Settlement Class Members' electronic communications without the proper consent, then disclosed to Facebook the contents of these electronic communications, which included (i) Plaintiffs' Facebook ID ("FID") and (ii) software code containing the name of a video allegedly watched and corresponding URL ("Video Media" and collectively the FID and Video Media are referred to as the "Personal Viewing Information"). The Defendant denies these allegations.

Two class actions were originally filed alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701 et seq. ("Pennsylvania Wiretap Act"): *Jason Braun, et al., v. The Philadelphia Inquirer*, Case No. 2:22-cv-04185-JMY, and *Stephanie Carter v. The Philadelphia Inquirer*, Case No. 2:22-cv-04355-JMY. These actions were consolidated under the *Braun* case.

### 3.    Why is this a class action?

In a class action, one or more people called the "Plaintiffs," or "Class Representatives" sue on behalf of all people who have similar claims. Together, all of these people are called a "class" or "class members." One court resolves the issues for all class members, except for those class members who exclude themselves from the class.

The Plaintiffs and Settlement Class Representatives in this case are Jason Braun and Stephanie Carter.

### 4.    Why is there a Settlement?

The Plaintiffs and Defendant disagree over the legal claims made in this Action. Defendant has denied and continues to deny any wrongdoing whatsoever. The Action has not gone to trial, and the Court has not decided in favor of the Plaintiffs or the Defendant (collectively referred to as the "Parties"). Instead, the Parties have agreed to settle the Action and agree that the Settlement Agreement offers significant benefits to all Settlement Class Members and is fair, reasonable, adequate, and in the best interest of the Plaintiffs and all Settlement Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT?

### 5.    How do I know if I am part of the Settlement?

The Settlement Class includes approximately 180,000 individuals who maintained a digital subscription account with the Defendant at any time from October 1, 2019 until January 16, 2024, and who used Facebook during that time.

**Questions? Visit** InquirerClassActionSettlement.com **or call toll-free** 1-XXX-XXX-XXXX.

2

**6.      Are there exceptions to individuals who are included in the Settlement Class?**

Yes, excluded from the Settlement Class are: (1) the Judge presiding over this Action; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

**7.      What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class Member, you may go to the Settlement Website at InquirerClassActionSettlement.com, or call toll-free 1-XXX-XXX-XXXX. You may also email the Settlement Administrator at EMAIL.

| THE SETTLEMENT CLASS MEMBER BENEFITS |
|---|

**8.      What does the Settlement provide?**

The Settlement provides for a $1,125,000.00 Settlement Fund to pay all the costs associated with the administration of this Settlement, issuing class notice, paying Approved Claims, paying Service Award Payments, paying the Fee Award and Costs, and paying any Taxes and Tax-Related Expenses.

**9.      Are there other Settlement benefits?**

The Defendant has also agreed to certain business practice revisions. Within ninety (90) days of service of the Preliminary Approval Order, Defendant will suspend operation of the Facebook or Meta Pixel on any pages on its website or app that track video content and have a URL that identifies the video content viewed (if any), unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision on the use of website pixel technology by the U.S. Supreme Court, any federal court of appeals, any U.S. Federal District Court in located in the Commonwealth of Pennsylvania, or a Pennsylvania state court of general jurisdiction). Nothing herein shall prohibit the use of the Facebook or Meta Pixel where the disclosure of information to Facebook does not identify specific video materials that a user has requested or where Defendant has obtained consent that is compliant with the VPPA and Pennsylvania Wiretap Act. Defendant shall provide written certification of its compliance with the practice revisions in this paragraph at or before the Final Approval Hearing.

**10.      What am I giving up in order to receive a Settlement Payment or stay in the Class?**

Unless you exclude yourself, you are choosing to remain in the Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against The Philadelphia Inquirer, LLC about the legal issues in this Action, resolved by this Settlement, and released by the Settlement Agreement and Release. The specific rights you are giving up are called Released Claims (*see* next question).

**11.      What are the Released Claims?**

Released Claims include any and all claims, liabilities, rights, demands, suits, obligations, or damages whatsoever, including but not limited to consequential damages, losses or costs, punitive damages, attorneys' fees and costs, action or causes of action, penalties, remedies, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted or could have been asserted, liquidated or unliquidated, legal, administrative, statutory, or equitable—that relate to or arise from the actions and activities alleged in the Action including, but not limited to, actions and activities relating to Defendant's use of the Facebook or Meta Pixel.

**Questions? Visit** InquirerClassActionSettlement.com **or call toll-free** 1-XXX-XXX-XXXX.

3

More information is provided in the Settlement Agreement and Release, which is available at InquirerClassActionSettlement.com.

| HOW TO GET A SETTLEMENT PAYMENT — SUBMITTING A CLAIM FORM |
| --- |

**12.    How do I make a claim for a Settlement Payment?**

Visit **InquirerClassActionSettlement.com** to submit your claim online or to download a full Claim Form to complete and return it by mail. Claim Forms must be submitted online by ==DATE==. Claim Forms submitted by mail must be postmarked no later than ==DATE==. Settlement Class Members can also complete and submit the Claim Form that was included with the notice that was mailed to them.

Settlement Class Members can also request a Claim Form by calling toll-free 1-==XXX-XXX-XXXX== or by writing to the Settlement Administrator:

> Mail: The Philadelphia Inquirer Video Privacy Settlement, Attn: Claim Form Request, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

> Email: ==EMAIL==

**13.    Where do I send my completed Claim Form?**

Completed Claim Forms must be mailed to the Settlement Administrator at: The Philadelphia Inquirer Video Privacy Settlement, Attn: Claim Form Submissions, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Claim Forms submitted by mail must be postmarked no later than ==DATE==.

**14.    What happens if my contact information changes after I submit a claim?**

If you need to update your contact information after you submit a Claim Form, you may notify the Settlement Administrator of any changes by writing to the Settlement Administrator via mail or email. Please include your Notice ID number with any written requests to assist the Settlement Administrator in identifying you.

**15.    When and how will I receive a Settlement Payment?**

Settlement Payments will be issued by the Settlement Administrator after the Settlement is approved and becomes Final. Settlement Payments will be issued via the payment selection made on the Claim Form. It is your responsibility to tell the Settlement Administrator of any updates to your payment information.

The Settlement approval process may take time and there may be appeals that must be resolved before any Settlement Payments can be issued. Please be patient and check InquirerClassActionSettlement.com for updates.

| THE LAWYERS REPRESENTING YOU |
| --- |

**16.    Do I have a lawyer in this case?**

Yes, the Court has appointed Spector Roseman & Kodroff, P.C. and Goldenberg Schneider, LPA as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Action.

**17.    How will Class Counsel be paid?**

Class Counsel shall apply to the Court for an award to be paid from the Settlement Fund not to exceed one-third (33.33%) of the Settlement Fund for fees, or $374,962.25 plus 33.33% of any interest earned, and reimbursement of expenses not to exceed $15,000.00. The Fee Application will also include a request for Service Award Payments for both of the Settlement Class Representatives in recognition of their contributions to this Action in an amount not to exceed $5,000 each. The Court may award less than these amounts.

**Questions? Visit** InquirerClassActionSettlement.com **or call toll-free** ==1-XXX-XXX-XXXX==.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Defendant and/or the other Defendant Releasees on your own based on the claims raised in this Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting out" of—the Settlement.

### 18.    How do I get out of the Settlement?

To exclude yourself from the Settlement, you must complete and sign a Request for Exclusion. The Request for Exclusion must be in writing and identify the case of the proceeding, *Braun v. The Philadelphia Inquirer, LLC,* Case No. 2:22-cv-04185-JMY (E.D. Pa.), include the full name and current address of the individual requesting exclusion, and include a statement indicating a request to be excluded from the Settlement Class.

The Request for Exclusion must be postmarked or received by the Settlement Administrator at the address below no later than **DEADLINE**:

The Philadelphia Inquirer Video Privacy Settlement
Attn: Exclusion Requests
P.O. Box 58220
Philadelphia, PA 19102

You cannot exclude yourself by telephone or by email.

### 19.    If I exclude myself, can I still receive a Settlement Payment?

No. If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You are only eligible to receive a Settlement Payment if you stay in the Settlement and submit a valid Claim Form.

### 20.    If I do not exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendant and Defendant Releasees for the claims that this Settlement resolves. You must exclude yourself from this Action to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or Defendant Releasees. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECT TO OR COMMENT ON THE SETTLEMENT

### 21.    How do I tell the Court that I do not like the Settlement?

Settlement Class Members may object to the Settlement or Fee Application by submitting written objections to the Court no later than **DEADLINE**. Any objection to the proposed Settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. For an objection to be considered by the Court, the objection must also set forth:

(i)      The name of the proceedings;
(ii)     The Settlement Class Member's full name, current mailing address, email address, and telephone number;
(iii)    A statement of the specific grounds for the objection, as well as any documents supporting the objection;
(iv)     The identity of any attorneys representing the objector;
(v)      A statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing;
(vi)     A statement identifying all class action settlements objected to by the Settlement Class Member in the previous 5 years; and
(vii)    The signature of the Settlement Class Member or the Settlement Class Member's attorney.

**Questions? Visit** InquirerClassActionSettlement.com **or call toll-free** 1-XXX-XXX-XXXX.
5

For an objection to be considered, it must be filed with the Court no later than **DEADLINE**. . A copy of the objection must also be mailed to Class Counsel at the address below, so it is postmarked no later than **DEADLINE**.

| Court | Class Counsel |
|---|---|
| Clerk of the Court<br>James A. Byrne U.S. Courthouse<br>601 Market Street<br>Philadelphia, PA 19106 | Spector Roseman & Kodroff, P.C.<br>Attn:  Braun v. The Philadelphia Inquirer Objections<br>2001 Market Street, Suite 3420<br>Philadelphia, PA 19103 |

**22.    What is the difference between objecting and requesting exclusion?**

Objecting is telling the Court you do not like something about the Settlement. You can object only if you stay in the Settlement Class (that is, do not exclude yourself). Requesting exclusion is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement because it no longer affects you.

**THE FINAL APPROVAL HEARING**

**23.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **DATE & TIME** in Courtroom **X**, located at **ADDRESS**.

The date and time of the Final Approval Hearing is subject to change without further notice to the Settlement Class, so please check InquirerClassActionSettlement.com for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will decide whether to approve the Settlement, Class Counsel's application for Attorneys' Fees and Costs and Expenses, and the Service Awards for the Class Representatives. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**24.    Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you submit a timely and complete objection, the Court will consider it, and you do not have to come to Court to talk about it.

**25.    May I speak at the Final Approval Hearing?**

Yes. If you wish to attend and speak at the Final Approval Hearing, you must indicate this in your written objection (*see* Question 21). Your objection must state that it is your intention to appear at the Final Approval Hearing and must identify any witnesses you may call to testify or exhibits you intend to introduce into evidence at the Final Approval Hearing. If you plan to have your attorney speak for you at the Final Approval Hearing, your objection must also include your attorney's name, address, and phone number.

**IF YOU DO NOTHING**

**26.    What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will not receive a Settlement Payment. You will also give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant or Defendant Releasees about the legal issues in this Action and released by the Settlement.

| GETTING MORE INFORMATION |
|---|

**27.    How do I get more information?**

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at InquirerClassActionSettlement.com. You may also contact the Settlement Administrator by mail or email:

Mail: The Philadelphia Inquirer Video Privacy Settlement, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

Email: Email Address

<strong><u>PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE<br>TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.</u></strong>

**Questions? Visit** InquirerClassActionSettlement.com **or call toll-free 1-XXX-XXX-XXXX.**

7

# EXHIBIT G

<table>
<tr><td>

Your claim must
be submitted
online or
postmarked by:
[DEADLINE]

</td><td>

Braun, et al. v. The Philadelphia Inquirer, LLC
Case No. No. 2:22-cv-04185-JMY
United States District Court for the Eastern District of Pennsylvania

THE PHILADELPHIA INQUIRER VIDEO PRIVACY CLAIM FORM

</td><td>

PHI-CLAIM

</td></tr>
</table>

## I. SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Please provide your name and contact information below. It is your responsibility to notify the Settlement Administrator if your contact information changes after you submit your Claim Form.

First Name

Last Name

Street Address

City

State

Zip Code

Email Address

Phone Number

Notice ID

## II. SETTLEMENT CLASS ATTESTATION

☐ By checking this box, I hereby attest to having a digital subscription with The Philadelphia Inquirer, LLC at any time from October 1, 2019 , and January 16, 2024, and I used Facebook during that time.

## III. PAYMENT SELECTION

Please select one of the following payment options:

☐ PayPal - Enter your PayPal email address: _____

☐ Venmo - Enter the mobile number associated with your Venmo account: _____-_____-_____

☐ Zelle - Enter the mobile number or email address associated with your Zelle account:

Mobile Number: _____-_____-_____ or Email Address: _____

☐ Virtual Prepaid Card - Enter your email address: _____

☐ Physical Check - Payment will be mailed to the address provided in Section I above.

## IV. CERTIFICATION & SIGNATURE

I swear and affirm that I am a Settlement Class Member and the information provided in this Claim Form is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

_____     _____     _____

SIGNATURE                           PRINTED NAME                         DATE (MM/DD/YYYY)

MAIL YOUR COMPLETED CLAIM FORM TO:
THE PHILADELPHIA INQUIRER VIDEO PRIVACY SETTLEMENT, c/o SETTLEMENT ADMINISTRATOR
1650 ARCH ST., STE. 2210, PHILADELPHIA, PA 19103

{00056269; 1}

| Your claim must be submitted online or postmarked by: [DEADLINE] | Braun v. The Philadelphia Inquirer, LLC<br>Case No. No. 2:22-cv-04185-JMY<br>United States District Court for the Eastern District of Pennsylvania<br><br>CLAIM FORM | PHI-CLAIM |

QUESTIONS? VISIT WWW. InquirerClassActionSettlement._ COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX