# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JASON BRAUN and STEPHANIE CARTER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br><br>            v.<br><br><br>THE PHILADELPHIA INQUIRER, LLC,<br><br>                    Defendant. | Case No.: 2:22-cv-04185-JMY<br><br><br>CONSOLIDATED ACTION |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE PETITION AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Jason Braun and Stephanie Carter ("Plaintiffs" or "Class Representatives") hereby move this Court for final certification of the Settlement Class as defined below and final approval of the Settlement Agreement with Defendant The Philadelphia Inquirer, LLC ("Defendant"); and for an order awarding attorneys' fees, reimbursement of litigation expenses, and service awards for the Class Representatives. In support of this motion, Plaintiffs rely on the accompanying memorandum of law; the accompanying Declaration of Steven Weisbrot, Esq. of Angeion Group, LLC, Re: Notice Implementation & Settlement Administration and its accompanying exhibits; the record in this

matter; the submissions made in connection with Plaintiffs' Motion for Preliminary Approval of

the Settlement (ECF No. 62); this Court's Order preliminarily approving the Settlement (ECF Nos.

63, 69); Plaintiffs' Motion for (a) Attorneys' Fees, (b) Reimbursement of Litigation Expenses, and

(c) Service Awards for Class Representatives (ECF No. 70); and the arguments to be made at the

March 26, 2025, Final Fairness Hearing. A proposed Order is attached.

Dated: January 27, 2025                    Respectfully submitted,

                                           */s/ Diana J. Zinser*
                                           Jeffrey L. Kodroff (PA 55780)
                                           Diana J. Zinser (PA 203449)
                                           **SPECTOR ROSEMAN & KODROFF, P.C.**
                                           2001 Market Street, Suite 3420
                                           Philadelphia, PA 19103
                                           Phone: (215) 496-0300
                                           jkodroff@srkattorneys.com
                                           dzinser@srkattorneys.com

                                           Jeffrey S. Goldenberg*
                                           **GOLDENBERG SCHNEIDER, L.P.A.**
                                           4445 Lake Forest Drive, Suite 490
                                           Cincinnati, OH 45242
                                           Phone: (513) 345-8291
                                           jgoldenberg@gs-legal.com

                                           *Class Counsel*

                                           * *Admitted Pro Hac Vice*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL AND PROCEDRUAL BACKGROUND.........................................2

III.    SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT .............................3

      A.      The Settlement Class.................................................................................3

      B.      The Settlement Benefits ...........................................................................3

            1.      The Settlement Fund ......................................................................3

            2.      Business Practice Revisions..........................................................4

      C.      Releases.....................................................................................................4

      D.      Attorneys' Fees, Litigation Expenses, and Service Awards .....................4

      E.      Expenses for Settlement Administration ..................................................5

IV.     PRELIMINARY APPROVAL AND ADMINISTRATION OF NOTICE ........................5

V.      CLAIMS PROCESS ..............................................................................................6

VI.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT..........7

      A.      The Settlement Class Meets the Requirements of Rule 23......................8

            1.      The Settlement Class Satisfies Rule 23(a). ..................................8

            2.      The Settlement Class Satisfies Rule 23(b)(3). ...........................10

      B.      The Settlement is Fair, Reasonable, and Adequate................................12

            1.      Class Counsel and Representatives Adequately Represented the
                Settlement Class...........................................................................13

            2.      The Settlement Is the Result of Arm's Length Negotiations....................13

             3.      The Settlement Provides Adequate Recovery to the Settlement Class......14

             4.      The Plan of Allocation is Reasonable and Treats Settlement Class
                Members Equitably Relative to Each Other. ...............................15

      C.      The *Girsh* Factors Weigh in Favor of Final Approval...........................15

i

1.    Complexity, Expense, and Likely Duration of the Litigation....................15

2.    Reaction of the Settlement Class to the Settlement. ..................................16

3.    The Stage of the Proceedings and the Amount of Discovery Completed..16

4.    The Risks of Establishing Liability and Damages and Maintaining a Class Action Through Trial. ................................................................................17

5.    The Ability of Defendant to Withstand a Greater Judgment. ...................18

6.    The Range of Reasonableness of the Settlement Fund in Light of Both the Best Possible Recovery and the Risks of Litigation. ................................18

VII.    CONCLUSION....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beck v. Maximums, Inc.*,
    457 F.3d 291 (3d Cir. 2006)............................................................................................9

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*,
    No. CV 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ............................................13

*Curiale v. Lenox Grp., Inc.*,
    Civil Action No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 15, 2008) ................................7

*Diaz v. BTG Int'l Inc.*,
    No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021) ...........................7, 10, 14

*In re Domestic Drywall Antitrust Litig*,
    322 F.R.D. 188 (E.D. Pa. 2017)......................................................................................9

*Feldman v. Star Tribune Media Company LLC*,
    No. 22-cv-1731, 2024 WL 3026556 (D. Minn. June 17, 2024) ............................................18

*Fiorentino v. FloSports, Inc.*,
    No. 1:22-cv-11502, ECF No. 76 (D. Mass. Mar. 5, 2024) ...................................................18

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) .....................................................................................18

*Fulton-Green v. Accolade, Inc.*,
    No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)..............................................16, 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)................................................................................... *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)......................................................................................................7

*Katz v. DNC Servs. Corp.*,
    No. CV 16-5800, 2024 WL 454942 (E.D. Pa. Feb. 6, 2024)...........................................11, 14

*In re Modafinil Antitrust Litig.*,
    837 F.3d 238 (3d Cir. 2016).....................................................................................................8

*In re Mushroom Direct Purchaser Antitrust Litig.*,
  319 F.R.D. 158 (E.D. Pa. 2016) ...................................................................................11

*In re NFL Players Concussion Inj. Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015) ...................................................................................18

*In re NFL Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016)...................................................................................10, 15

*In re Onix Group, LLC Data Breach Litig.*,
  No. 23-2288-KSM, 2024 WL 5107594 (E.D. Pa. Dec. 13, 2024)..........................16

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*,
  148 F.3d 283 (3d Cir. 1998)........................................................................................17

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  421 F. Supp. 3d 12 (E.D. Pa. 2019), *aff'd sub nom.* 967 F.3d 264 (3d Cir.
  2020) .............................................................................................................................10

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011)........................................................................................16

*In re TikTok, Inc. Consumer Privacy Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) .........................................................................17

*Vinh Du v. Blackford*,
  No. 17-cv-194, 2018 WL 6604484 (D. Del. Dec. 17, 2018) ....................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................................................................................8

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)..........................................................................................8

*In re Wawa, Inc. Data Sec. Litig.*,
  No. CV 19-6019, 2023 WL 6690705 (E.D. P. Oct. 12, 2023)...........................9, 17

*In re Wellbutrin XL Antitrust Litig.*,
  282 F.R.D. 126 (E.D. Pa. 2011)...................................................................................8

**Statutes**

Pennsylvania Wiretap and Electronic Surveillance Control Act, 18 Pa. C.S. §
  5701 *et seq.* .......................................................................................................1, 15, 16

Video Privacy Protection Act, 18 U.S.C. § 2710................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) ..............................................................................................8, 9

Fed. R. Civ. P. 23(a)(1) ...............................................................................................8

Fed. R. Civ. P. 23(a)(2) ...............................................................................................8

Fed. R. Civ. P. 23(a)(3) ...............................................................................................9

Fed. R. Civ. P. 23(a)(4) ...............................................................................................9

Fed. R. Civ. P. 23(b) ...................................................................................................8

Fed. R. Civ. P.  23(b)(3) .......................................................................................10, 11

Fed. R. Civ. P. 23(e) ...................................................................................................1

Fed. R. Civ. P.  23(e)(2) ...................................................................................12, 13, 19

Fed. R. Civ. P.  23(e)(2)(A) ........................................................................................13

Fed. R. Civ. P.  23(e)(2)(B) ........................................................................................13

Fed. R. Civ. P.  23(e)(2)(C) ........................................................................................14

Fed. R. Civ. P.  23(e)(2)(C)(i) .....................................................................................14

Fed. R. Civ. P.  23(e)(2)(C)(ii) ....................................................................................14

Fed. R. Civ. P.  23(e)(2)(C)(iii) ...................................................................................14

Fed. R. Civ. P.  23(e)(2)(C)(iv) ...................................................................................15

Fed. R. Civ. P.  23(e)(2)(D) ........................................................................................15

Fed. R. Civ. P.  23(e)(3) .......................................................................................12, 14

Fed. R. Civ. P.  23(e)(c) .............................................................................................14

## I.    INTRODUCTION

Plaintiffs Jason Braun and Stephanie Carter ("Plaintiffs"), individually and on behalf of the Settlement Class (as defined in Section III.A, below), submit this memorandum in support of their Motion for Final Approval of Class Action Settlement (the "Settlement" or "Settlement Agreement") with Defendant The Philadelphia Inquirer, LLC ("Defendant") under Fed. R. Civ. P. 23(e).

On August 5, 2024, this Court preliminarily approved the Settlement between Plaintiffs, individually and as Class Representatives, and Defendant (collectively, the "Parties"). ECF No. 63.[1] The Settlement will resolve Plaintiffs' allegations that Defendant violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and the Pennsylvania Wiretap and Electronic Surveillance Control Act ("PA Wiretap Act"), 18 Pa. C.S. § 5701 *et seq.*, and thus violated Plaintiffs' and Class Members' statutorily protected right to privacy related to their video-watching habits by knowingly sharing without consent their personal viewing information and personally identifiable information with Facebook ("Meta"). Defendant denies the allegations and denies it has any liability for the claims asserted in the litigation. The Court preliminarily certified a Settlement Class of approximately 180,000 people who established a digital subscription with Defendant between October 1, 2019, and January 16, 2024, and who also had a Facebook account.

---

[1] On November 21, 2024, the Court amended the Preliminary Approval Order to set a November 22, 2024, deadline for Plaintiffs to file an application for attorneys' fees, reimbursement of litigation expenses, and service awards, and to set the January 27, 2025, deadline for the instant motion. *See* ECF Nos. 69, 70.

Following preliminary approval of the Settlement, notice was sent to members of the Settlement Class in accordance with the approved notice plan. The response to the Settlement has been almost exclusively positive. As of the October 27, 2024 deadline, there were 23,830 claims filed, only 4 requests for exclusion, and, most tellingly, zero objections to the Settlement or Class Counsel's motion for an award of attorneys' fees of $374,962.25; $15,000.00 for the reimbursement of reasonable litigation expenses; and $5,000.00 service awards for each of the two Class Representatives. *See* ECF No. 70; *see also* Steven Weisbrot, Esq. of Angeion Group, LLC, Re: Notice Implementation & Settlement Administration ("Weisbrot Decl.") ¶¶ 23-26.

As the Court recognized in granting preliminary approval, the Settlement is fair, reasonable, and adequate. It has been positively received by Settlement Class members, and it satisfies all the criteria for final approval. Plaintiffs therefore respectfully request that the Court grant final approval of the Settlement so that the Settlement proceeds can be distributed to Settlement Class members who have filed claims, and so that this matter may be concluded.

## II.    FACTUAL AND PROCEDRUAL BACKGROUND

In the interests of efficiency and concision, Plaintiffs incorporate by reference the factual and procedural background as summarized in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support ("Motion for Preliminary Approval") (ECF No. 62), and Plaintiffs' Motion and Supporting Memorandum for (a) An Award of Attorneys' Fees, (b) Reimbursement of Litigation Expenses, and (c) Service Awards for the Class Representatives ("Fee Petition") (ECF No. 70).

### III.    SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT

#### A.  The Settlement Class

Under the terms of the Settlement Agreement, the Settlement Class is defined as

The approximately 180,000 individuals identified on the Settlement Class List generated by Defendant who established a digital subscription account with Defendant at any time from October 1, 2019 until January 16, 2024, and who used Facebook during that time. Excluded from the Settlement Class are: (1) the Judge presiding over this Action; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

*See* ECF No. 62-1, Ex. A at ¶ 29. The Settlement Class List is "the list generated by Defendant containing the full names, email addresses, and current or last known addresses where known for all persons who fall under the definition of the Settlement Class." *Id*. at ¶ 30.

#### B.  The Settlement Benefits

##### 1.    The Settlement Fund

The Settlement Agreement establishes a Settlement Fund of $1,125,000.00 which represents all of Defendant's financial obligations under the Settlement Agreement. The costs of Settlement notice and administration, attorneys' fees and litigation expenses, and service awards to Class Representatives are to be paid from the Settlement Fund. The resulting Net Settlement Fund will be used to pay all valid Claims. The value of the Settlement payment to each Settlement Class member will be determined by dividing the Net Settlement Fund amount by the number of valid Claims as approved by the Settlement Administrator, Angeion. *Id.* at ¶¶ 16, 32-33. Based on 23,830 claims and an estimated Net Settlement Fund of $650,080.50, the estimated settlement

3

payment to each Class member is $27.30.[2]

### 2.    Business Practice Revisions

Defendant agreed to suspend operation of the Facebook or Meta Pixel on any pages of its website or app that track video content and have a URL that identifies the video content, or to obtain valid user consent that complies with requirements of the VPPA and the PA Wiretap Act.

### C.  Releases

In exchange for the Settlement benefits described *supra*, Settlement Class members agree to release any and all claims against Defendant as set forth in the Settlement Agreement. The release covers all claims that were asserted or could have been asserted by Settlement Class members related to or arising from Defendants' alleged actions and activities relating to its use of the Facebook or Meta Pixel. *Id.* at ¶¶ 24, 59-62.

### D.  Attorneys' Fees, Litigation Expenses, and Service Awards

On November 22, 2024, Class Counsel filed a motion for an award of attorneys' fees of $374,962.25; $15,000.00 for the reimbursement of reasonable litigation expenses; and $5,000 service awards for each of the two Class Representatives. *See* Fee Petition, ECF No. 70. As described in that Motion, the requested attorneys' fees and expenses are reasonable and consistent with similar awards in similar cases. The Service Awards are likewise reasonable and reflect the work Class Representatives performed in assisting Class Counsel throughout the litigation.

-----

[2] Through December 31, 2024, Angeion has incurred $74,957.25 in notice and administration costs. *See* Weisbrot Decl. ¶ 28. Class Counsel has requested attorneys' fees of $374,962.25; total litigation expenses not to exceed $15,000; and services awards for both Class Representatives totaling $10,000.00. *See* Fee Petition, ECF No. 70. Thus, the estimated Net Settlement Fund is $1,125000 – ($74,957.25 + $15,000 + $10,000 + $374,962.25) = $650,080.50. Dividing the estimated Net Settlement Fund by 23,830 claims yields an estimated settlement payment to each Class member of $27.30.

### E.  Expenses for Settlement Administration

Through December 31, 2024, Angeion has incurred $74,957.25 in notice and administration costs for the Settlement. Angeion will provide a final number for these costs prior to distribution of Settlement payments to Settlement Class members. *See* Weisbrot Decl. ¶ 28.

## IV.    PRELIMINARY APPROVAL AND ADMINISTRATION OF NOTICE

In its order preliminarily approving the Settlement, the Court certified the Settlement Class; appointed Jason Braun and Stephanie Carter as Class Representatives; and appointed Spector Roseman & Kodroff P.C. and Goldenberg Schneider LPA as Class Counsel. *See* ECF No. 63 at 2, 4. The Court also appointed Angeion to serve as Settlement Administrator and directed Angeion and Class Counsel to issue Notice to the Settlement Class in accordance with the proposed Notice Plan. *Id.* at 6-7.

Pursuant to the Settlement Agreement, on or about August 12, 2024, Defendant provided Angeion with records identifying members of the Settlement Class (i.e., the approximately 180,000 individuals who established a digital subscription account with Defendant at any time from October 1, 2019 until January 16, 2024 and who used Facebook during that time) along with their email addresses and last known or current addresses. *See* Settlement Agreement, ECF No. 62-1, Ex. A at ¶¶ 29-30; Weisbrot Decl. ¶ 8. Angeion reviewed the Settlement Class List information received from Defendant for duplicative records and assigned unique identification numbers to each record to create a final Settlement Class List. *See* Weisbrot Decl. ¶ 8.

The final Settlement Class List comprised 180,154 unique Settlement Class member records. *See id.* Of these, 169,007 contained the Settlement Class members' full name, 178,321 contained the last known mailing address, and 180,118 contained an email address. *Id.* Prior to

sending notice of the Settlement, Angeion subjected the email addresses in the Settlement Class List to a cleansing and verification process, resulting in 165,804 valid emails. *Id.* ¶ 9. In accordance with the approved Notice Plan, Angeion caused notice of the Settlement to be sent to the 165,804 valid emails. *Id.* ¶ 10. Of the 165,804 email Notices sent, 163,908 were delivered, and 1,896 were undeliverable. *Id.* For the undelivered Notice emails, Angeion conducted a reverse lookup in order to identify updated email address. This resulted in identifying 7,800 updated email addresses. On September 23, 2024, Angeion sent email notices to these 7,800 updated emails, of which 5,648 were able to be delivered. *Id.* ¶¶ 11-12. On September 27, 2024, Angeion also sent 22,369 notices via first-class US Mail to Settlement Class Members for whom email notice was unsuccessful and for whom a mailing address was available. *See* Weisbrot Decl. ¶¶ 15-16. Through these methods, Angeion estimates that direct notice reached approximately 99 percent percent of the total Class. *See id.* ¶ 28.

Angeion also created a publicly available Settlement website at www.inquirerclassactionsettlement.com. Using the Settlement website, Settlement Class members were able to file a claim online or download and print a paper claim form to mail. Settlement Class members could also find general information about the Settlement in the Frequently Asked Questions section, important dates related to the litigation and Settlement, and review important documents. Angeion also established a toll-free hotline which Settlement Class members could call for additional information about the Settlement. *See* Weisbrot Decl. ¶¶ 18-22.

## V.    CLAIMS PROCESS

The Notice Plan approved by the Court informed each Settlement Class member of their right to object to the Settlement by submitting a written objection to the settlement to Angeion

before the Objection deadline. *See* ECF No. 62-1, Ex. A at ¶ 47. The deadline to file a claim, object

to the Settlement, or opt out of the Settlement was October 27, 2024. As of the October 27, 2024,

Deadline, Angeion received 23,830 claims,[3] 4 opt-out requests,[4] and no objections to the

Settlement. *See* Weisbrot Decl. ¶¶ 23-25.

On November 21, 2024, the Court extended the deadline for Class Counsel to file the Fee

Petition, and also set a December 26, 2024, deadline for Settlement Class members to file any

objections to the Fee Petition. *See* ECF No. 70. Angeion has not received any objections to the Fee

Petition. *See* Weisbrot Decl. ¶ 27.

## VI.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

In order to grant final approval of a class action settlement, the court must certify the

settlement class, determine that notice to the class was appropriate, that the terms of the settlement

are fair, reasonable, and adequate, and appoint class counsel. *See Diaz v. BTG Int'l Inc.*, No. 19-

cv-1664-JMY, 2021 WL 2414580, at *2 (E.D. Pa. June 14, 2021). There is a strong judicial policy

favoring settlements. *Curiale v. Lenox Grp., Inc.*, Civil Action No. 07-1432, 2008 WL 4899474,

at *5 (E.D. Pa. Nov. 15, 2008) (internal citation omitted). Settlements are especially favored in

"class actions and other complex cases where substantial judicial resources can be conserved by

avoiding litigation." *Diaz*, 2021 WL 2414580, at *5 (quoting *In re GMC Pick-Up Truck Fuel Tank*

---

[3] Angeion has received 23,830 claim forms which are subject to ongoing audit and review. Angeion will provide an update on the final determination of valid submitted claims when that information is available. *See* Weisbrot Decl. ¶ 23.

[4] Angeion received what appeared to be six requests to be excluded from the Class. However, upon further review it is evident that two of those requests are from people who did not have Facebook accounts during the Class Period. According to the definition of the Settlement Class, *see* ECF No. 62-1 at ¶ 29, these individuals are not members of the Settlement Class and therefore cannot exclude themselves from it.

*Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995).

### A. The Settlement Class Meets the Requirements of Rule 23.

In its order preliminarily approving the Settlement, the Court determined that the Settlement Class satisfied the requirements of Rule 23(a) and Rule 23(b). ECF No. 63 at 2-4. The Settlement Class still meets each of these requirements, warranting certification.

### 1. The Settlement Class Satisfies Rule 23(a).

Numerosity. Rule 23(a)'s numerosity element requires that the class be of sufficient size such that joinder of all member is "impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of approximately 180,000 individuals who established digital subscriptions with Defendant between October 1, 2019 and January 16, 2024, and who had Facebook accounts. This readily satisfies Rule 23(a)'s numerosity requirement. *See, e.g., In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016) (numerosity met if potential number of plaintiffs exceeds 40).

Commonality. Rule 23(a)'s commonality requirement is also met. This requires that there be "questions of law or fact common to the members of the class." Fed. R. Civ. P. 23(a)(2). A common question is one that "is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A finding of commonality does not require that all class members share identical claims." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004). A "single common question is sufficient" to establish commonality. *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (citation omitted). Here, the central issues in this litigation include whether Defendant knowingly disclosed Settlement Class members' personal viewing information to Meta, whether Defendant gave

sufficient notice to Settlement Class members of such disclosure, and whether the information Defendant disclosed constitutes "personally identifiable information" under the VPPA. *See* ECF No. 63 at 3. These are common questions subject to common proof that can be answered on a class-wide basis.

Typicality. Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality factor examines "whether the named plaintiff' claims are typical, in common-sense terms, of the class, this suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximums, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). Typicality is satisfied where Class representatives' claims and those of the putative class members arise from the same conduct. *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2023 WL 6690705 at *4 (E.D. P. Oct. 12, 2023). Here, Plaintiffs' claims are identical to those of the other Settlement Class members. They are all predicated on the same alleged conduct by Defendant, and Defendant's liability does not depend on the individualized circumstances of Plaintiffs or any Settlement Class member. Therefore, typicality is satisfied.

Adequacy. The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy prong has two objectives: (1) to "ensure that the named plaintiff[s] and its counsel have the ability and the incentive to represent the claims of the class vigorously," and (2) to ensure "that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Domestic Drywall Antitrust Litig*, 322 F.R.D. 188, 199 (E.D. Pa. 2017). The standard is met here. First, Plaintiffs are represented by experienced counsel thoroughly familiar with litigating complex class actions. Over

the past two years, Class Counsel have demonstrated their willingness and ability to fairly and adequately represent the Settlement Class, and have devoted the time and resources to achieve the best possible result for the Settlement Class. *See Diaz*, 2021 WL 2414580, at *7-8 (finding adequacy satisfied where the attorneys representing plaintiffs and the class were highly qualified and experienced in the subject litigation).

The second objective of the adequacy inquiry serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent. *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 431 (3d Cir. 2016). Here, the interests of Plaintiff and the Settlement Class are aligned, and by pursuing the litigation, each Plaintiff has advanced the common interests of the entire Settlement Class. Plaintiffs have no interests antagonistic to the Settlement Class, and in fact have vigorously pursued their claims for the benefit of the Settlement Class and actively participated in the mediation session leading to the Settlement. Therefore, adequacy is satisfied.

### 2.    The Settlement Class Satisfies Rule 23(b)(3).

Class certification appropriate under Rule 23(b)(3) when common questions of law or fact "predominate" over individual questions, and a class action is "superior" to individual actions. The Settlement Class satisfies both of these requirements.

<u>Predominance.</u> The predominance requirement is similar to commonality and tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 49 (E.D. Pa. 2019), *aff'd sub nom.* 967 F.3d 264 (3d Cir. 2020) (internal citation omitted). The questions of law and fact discussed *supra* that are common to the Settlement Class predominate over any individual questions and can be answered with the same evidence: evidence of Defendant's installation of the

10

Meta Pixel on its website; evidence as to what information, if any, Meta received from Defendant via the Meta Pixel; and whether Settlement Class members were notified of and/or given enough information to consent to the disclosure of their information to Meta when they opened a digital subscription with Defendant. Thus, predominance is satisfied.

Superiority. Rule 23(b)(3)'s superiority requirement requires the court to consider "class members' interest in pursuing separate actions, the extent of any independent litigation already begun by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of a class action." *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 208 (E.D. Pa. 2016). Here, any Settlement Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of a class action. Approximately 180,000 individuals had digital subscriptions to Defendant's website or app and Facebook accounts during the Settlement Class period. Setting these claims in the context of a class action conserves private and judicial resources and hastens Settlement Class members' recovery. Moreover, the fact that there were no class members who objected to this Settlement and only 4 opt-outs (representing less than 0.002 percent of the Settlement Class) also supports a finding that the superiority element has been satisfied. Finally, because there are no other pending cases asserting the same claims, concentrating the litigation in a single forum is desirable. *See Katz v. DNC Servs. Corp.*, No. CV 16-5800, 2024 WL 454942, at *6 (E.D. Pa. Feb. 6, 2024).

Because common questions predominate and a class action is the superior method for fair and efficient adjudication of the matter, the Settlement Class satisfies Rule 23(b)(3).

**B. The Settlement is Fair, Reasonable, and Adequate.**

In granting preliminary approval of the Settlement, this Court concluded it would likely be able to approve the settlement and certify the Settlement Class after considering the factors in Rule 23(e)(2). ECF No. 63 at 4. Final approval requires the Court to consider many of the same factors it already considered and found satisfied at the preliminary approval stage.

Under the Federal Rules of Civil Procedure, class action settlements must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The relevant factors the Court must consider are whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial of appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Third Circuit evaluate the fairness, reasonableness, and adequacy of a Settlement by considering the nine *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement to a possible recover in light of all the attended risk of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). This Settlement meets Rule 23(e)(2)'s standards for final approval and satisfies the *Girsh* factors, and the Court should grant final approval.

### 1. Class Counsel and Representatives Adequately Represented the Settlement Class.

Rule 23(e)(2)(A)'s requirement that "class representatives and class counsel have adequately represented the class" is easily met. The previously filed Fee Petition, supporting Declaration, and exhibits (ECF Nos. 70, 70-1, 70-2, 70-3) detail Class Counsel's work on behalf of the Settlement Class from the inception of the case, over the course of the litigation, during settlement negotiations, and throughout the claims process. The Class Representatives devoted considerable time and effort assisting Class Counsel during the litigation in reviewing the complaint and other filings, searching for documents in response to discovery requests, responding to written discovery, and engaging in a day-long mediation session to resolve the case for the Settlement Class.

### 2. The Settlement Is the Result of Arm's Length Negotiations.

Another element of procedural fairness mandated by Rule 23(e)(2)(B) is that the settlement "was negotiated at arm's length." The Settlement is the result of non-collusive, good faith negotiations between experienced counsel to resolve the case at an early stage before costly discovery, dispositive motion, or trial. Plaintiffs' and Defendant's participation in a full day of mediation before Magistrate Judge Moore-Wells is further evidence of arm's length negotiations. *See, e.g., Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. CV 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.") (internal citation omitted). The Parties continued the

negotiations over the course of the next five months to finalize the Settlement Agreement. Class Counsel engaged in discussions with both Defendant's Counsel and Defendant's insurance counsel, and the parties also worked with Magistrate Judge Moore-Wells to confirm Defendant's representations about its financial status. Together these facts weigh in favor of final approval.

### 3. The Settlement Provides Adequate Recovery to the Settlement Class.

Rule 23(e)(2)(C)'s requirement that the settlement provide adequate relief for the class largely overlaps with the *Girsh* factors. *See, e.g., Diaz*, 2021 WL 2414580, at *5 n.4 (recognizing that the factors in Rule 23(e)(c) codify the *Girsh* factors); *Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) (same); *Katz v. DNC Servs. Corp.*, 2024 WL 454942, at *7 (E.D. Pa. Feb. 4. 2024) ("Rule 23(e)(2)(C)(i) partly echoes the first *Girsh* factor"). Therefore, the *Girsh* factors and the adequacy of recovery are discussed in greater detail in Section VI.C, *infra*.

The other subparts of Rule 23(e)(2)(C) are also satisfied and weigh in favor of final approval of the Settlement. Rule 23(e)(2)(C)(ii) requires the Court to consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the Notice plan preliminarily approved by the Court and administered by Angeion was clearly effective, as approximately 99 percent of the Settlement Class received notice, and 23,380 claims were filed. *See* Weisbrot Decl ¶¶ 23, 30. The Rule 23(e)(2)(C)(iii) subpart regarding the "terms of any proposed award of attorneys' fees" also weighs in favors of final approval because the requested attorneys' fees are reasonable as described in Class Counsel's Fee Petition. *See* ECF No. 70. Finally, the only agreement at issue is the Settlement Agreement itself; there is no other agreement that is "required to be identified under Rule 23(e)(3)," so the

Rule 23(e)(2)(C)(iv) subpart is also satisfied.

### 4. The Plan of Allocation is Reasonable and Treats Settlement Class Members Equitably Relative to Each Other.

The Settlement also satisfies Rule 23(e)(2)(D)'s requirement that it "treat[] class members equitably relative to each other." Under the Settlement, each Settlement Class member is afforded the same financial and equitable relief. All Settlement Class members who submit valid claim forms will receive a pro rata settlement payment from the Settlement Fund. *See* ECF No. 62-1, Ex. A at ¶ 33. Additionally, and perhaps even more importantly, Defendant has agreed to prospectively suspend operation of the Meta Pixel on any pages of its website or app that track video content and have a URL that identifies the video content viewed. *Id.* at ¶ 43. This change in Defendant's business practices will benefit all Settlement Class members equally.

### C. The *Girsh* Factors Weigh in Favor of Final Approval.

### 1. Complexity, Expense, and Likely Duration of the Litigation.

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *NFL Players*, 821 F.3d at 437 (internal citation omitted). This factor weighs in favor of final approval. In the absence of a settlement, it is highly likely that this litigation will be lengthy and costly, involving motions practice, extensive discovery, and numerous experts relating to the technology at issue. Given the complex technical nature of data privacy cases such as this one, and the fact that it involves unsettled questions of law related to the VPPA and PA Wiretap Act, any dispositive decision would almost certainly be appealed. For these reasons, this factor weighs heavily in favor of final approval.

### 2. Reaction of the Settlement Class to the Settlement.

As described *supra*, the Settlement Class's reaction to the Settlement has been overwhelmingly positive. The approved Notice plan was successful in reaching 99 percent of the Class. *See* Weisbrot Decl. ¶ 30. There were 23,830 claims filed by the October 27, 2024 claims deadline. *See id.* ¶¶ 23, 30.This is notably higher than the typical claims rates in consumer class action settlements. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (noting that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"). There have been no objections to the Settlement or to Class Counsel's Fee Petition, and only four Settlement Class members requested to exclude themselves. *See* Weisbrot Decl. ¶ 24. These facts support approval of the Settlement. *See In re Onix Group, LLC Data Breach Litig.*, No. 23-2288-KSM, 2024 WL 5107594, at *9 (E.D. Pa. Dec. 13, 2024) (a "minimal number of objections and requests for exclusion" favor final approval) (internal citation omitted).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed.

The third *Girsh* factor "asks whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Onix*, 2024 WL 5107594, at *9 (internal citation omitted). While the parties reached a Settlement at a relatively early stage of the litigation before discovery was complete, Class Counsel has thoroughly developed the case, and the Parties have "a fairly accurate view of continued litigation." *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *10 (E.D. Pa. Sept. 24, 2019). Before filing the initial complaint, Class Counsel thoroughly investigated Defendant's website and the Meta Pixel and researched the caselaw interpreting and applying both the VPPA and PA Wiretap Act. Defendant filed a motion to dismiss, which the

Parties fully briefed and which Plaintiffs survived. Class Counsel also reviewed discovery produced by Meta in response to a third-party subpoena and responded to discovery propounded by Defendant. The Parties also attended formal mediation and negotiated the Settlement over the course of several months. Even at this relatively early stage of the proceedings this factor weighs in favor of approving the Settlement. *See In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *8 (E.D. Pa. Oct 12, 2023) (finding the third *Girsh* factor weighed in favor of approval despite limited discovery where the parties "exerted significant effort in the settlement negotiation").

### 4. The Risks of Establishing Liability and Damages and Maintaining a Class Action Through Trial.

"These three *Girsh* factors [factors 4 through 6] require the Court to survey the potential risk and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Fulton-Green*, 2019 WL 4677954, at *10 (internal citation omitted). Plaintiffs' claims are well supported, but there are always substantial risks in continuing litigation, especially in cutting-edge areas of law such as data privacy cases. *See In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty" in litigating.). Finally, even if the litigation proceeded to the class certification stage and the Court certified a litigation class, there is a risk that the class could be de-certified. *See In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 312 (3d Cir. 1998) (recognizing there "will always be a 'risk' or possibility of decertification"). For that reason, these three factors also weigh in favor of approving the settlement.

17

### 5.    The Ability of Defendant to Withstand a Greater Judgment.

The seventh *Girsh* factor – the ability of Defendant to withstand a greater judgment – is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *In re NFL Players Concussion Inj. Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015). Defendant's ability to withstand a greater judgment at trial is highly relevant here. After the parties engaged in mediation, Magistrate Judge Moore Wells conducted an *in camera* review of Defendant's audited financial statements to confirm Defendant's representations about its financial status.

### 6.    The Range of Reasonableness of the Settlement Fund in Light of Both the Best Possible Recovery and the Risks of Litigation.

The eighth and ninth *Girsh* factors "test two sides the same coin: reasonableness in light of the best possible recovery, and reasonableness in light of the risks the parties would face if the case went to trial." *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 745 (E.D. Pa. 2013). Here, the Settlement is reasonable in terms of the best possible recovery for the Settlement Class weighed against the risks in litigating any class action up to and including trial. As discussed *supra*, Plaintiffs face the potential for litigating a costly and time-consuming case with a very real risk of no recovery for the Settlement Class. In contrast, the Settlement, if approved, provides guaranteed value to Settlement Class members in the form of both monetary benefits and enhanced privacy protections. Additionally, the Settlement is comparable with other data privacy settlements involving VPPA claims that have received final approval. *See, e.g., Feldman v. Star Tribune Media Company LLC*, No. 22-cv-1731, 2024 WL 3026556 (D. Minn. June 17, 2024) (granting final approval of a $2.9 million settlement for over 300,000 potential class members in a VPPA case); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502, ECF No. 76 (D. Mass. Mar. 5, 2024) (final

approval of a $2,625,000 settlement for a class numbering hundreds of thousands). Thus, the final *Girsh* factors support approval of the Settlement.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs Jason Braun and Stephanie Carter respectfully request that the Court (1) certify the Settlement Class; (2) grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); and (3) grant Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives; and (4) enter a final judgment after the Final Approval Hearing.

Dated: January 27, 2025                          Respectfully submitted,

*/s/ Diana J. Zinser*
Jeffrey L. Kodroff (PA 55780)
Diana J. Zinser (PA 203449)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300
jkodroff@srkattorneys.com
dzinser@srkattorneys.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
jgoldenberg@gs-legal.com

*Class Counsel*

* *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system for electronic service on all counsel of record.

Dated: January 27, 2025                    /s/     *Diana J. Zinser*
                                                                Diana J. Zinser