IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON BRAUN, and STEPHANIE CARTER on behalf of themselves and all others similarly situated, | : : : | No. 22-cv-4185-JMY |
| | : | CONSOLIDATED ACTION |
| vs. | : : | |
| PHILADELPHIA INQUIRER, LLC. | : : | |

**MEMORANDUM**

**Younge, J.**                                                    **May 6, 2025**

Currently before the Court is *Plaintiffs' Motion for Final Approval of Class Action Settlement and Fee Petition and Memorandum of Law in Support.* (ECF No. 71.) Also before the Court is *Plaintiffs' Motion and Supporting Memorandum for (A) an Award of Attorneys' Fees, (B) Reimbursement of Litigation Expenses, and (C) Service Award for the Class Representatives.* (ECF No. 70.) The Court finds these Motions appropriate for resolution without oral argument. Fed. R. Civ. Pro. 78: L.R. 7.1(f). Both of the Motions filed by Plaintiffs' will be granted for the reasons set forth below and as explained in the accompanying Order entered along with this Memorandum.

**I.      PROCEDURAL AND FACTUAL BACKGROUND**:

Plaintiffs Jason Braun and Stephanie Carter (the "Plaintiffs") are Facebook users and paid subscribers to *The Philadelphia Inquirer's* digital content. (Amended Complaint, ECF No. No. 28 ("Am. Compl.") ¶¶ 14, 15.) Plaintiffs have sued the Inquirer claiming generally, that the Inquirer unlawfully disclosed to Meta Platforms, Inc., their Facebook User ID[1] and the Uniform

---

[1] A Facebook User ID is a string of numbers that Facebook assigns to a Facebook user that corresponds with the user's Facebook profile. (*Am. Compl.*, ¶ 42.) Meta Platforms, Inc., was formerly named Facebook, Inc., and it is the current owner/operator of Facebook which is an internet based social media network.

Resource Locators (URLs) to webpages that they viewed on www.Inquirer.com or on the Inquirer's mobile application – thereby disclosing the titles to specific videos that Plaintiffs requested or viewed.  (*Id.* ¶¶ 5, 6.)  Plaintiffs claim that these disclosures were made without their consent and in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("PA Wiretapping Act"), 18 Pa. C.S. § 5701, *et seq*.

The Inquirer is a news media company that owns *The Philadelphia Inquirer*.  (*Id.* ¶¶ 16, 27.)  The Inquirer also owns and operates a website, www.Inquirer.com, and a mobile application, which provide digital news coverage and community interest stories to subscribers on an ongoing basis.  (*Id.* ¶¶ 16, 27, 31.)  The news coverage and community interest stories offered on Inquirer.com, come in the form of news articles and/or a news article with an embedded video in it.  (*Id.* ¶¶ 50-51.)

Plaintiffs contend that the Inquirer allowed Facebook to install Meta Pixel tracking software on its website, Inquirer.com, and that Meta Pixel enables Meta Platforms to receive subscribers' video viewing information when they are logged in and/or when they view videos on the website or mobile application for Inquirer.com.  (*Id.* ¶ 5.)  The video viewing information that Plaintiffs claim is shared with Meta Platforms consists of a subscriber's Facebook User ID that is embedded into software code known as a digital cookie (the "Facebook Cookie") and a URL address for a webpage that was visited on Inquirer.com.  (*See id.* ¶¶ 42, 43 and 51; *see also id.* ¶ 5.)

According to the Amended Complaint, when a Facebook user with a Facebook Cookie installed on a web browser device views videos on Inquirer.com, Meta Pixel tracking software causes the Facebook user's web browser device to transmit the subscriber's video viewing

information to Meta Platforms, without their consent.  (*See id.* ¶ 43.)  To demonstrate the type of information that is shared without a subscriber's consent, the Amended Complaint contains an example of the Facebook Cookie and URL that are shared with Meta Platforms when a subscriber allegedly clicks on a webpage located on Inquirer.com.  (*See id.*, ¶¶ 51-52.)

A.    **Procedural Background:**

On October 19, 2022, Plaintiffs Jason Braun and Jim Cummings filed a Class Action Complaint against Defendant alleging Defendant violated the VPPA.  (ECF No. 1.)  On October 31, 2022, Plaintiff Stephanie Carter filed a Class Action Complaint alleging the same conduct. (*Carter v. Philadelphia Inquirer*, No. 22-cv 04355.)   The two cases were consolidated under *Braun v. Philadelphia Inquirer*, LLC, No. 22-cv-04185 on December 7, 2022.  (Stipulation & Order, ECF No. 19.)  On January 1, 2023, this Court appointed Spector Roseman & Kodroff and Goldenberg Schneider, L.P.A., as Interim Class Counsel.  (Order, ECF No. 27.)  Plaintiffs filed an Amended Consolidated Class Action Complaint on February 17, 2023.  (ECF No. 28.)

On April 14, 2023, Defendant filed a Motion to Dismiss the Complaint.  (ECF No. 33.) On June 14, 2023, the Court entered a Scheduling Order that set forth case management deadlines for fact discovery, expert reports and discovery, class certification and other dispositive motions.  The Scheduling Order also referred the case to United States Magistrate Judge Carol Sandra Moore Wells for settlement purposes.  (Scheduling Order, ECF No. 43.)  On November 13, 2023, the Court denied Defendant's Motion to Dismiss after extensive briefing from both parties.  (Order & Memorandum, ECF No. 53, 54.)  The Court also ordered the Parties to participate in a settlement conference.  (Order, ECF No. 52.)  Defendant filed its Answer on December 11, 2023, wherein it denied that it violated the VPPA or the PA Wiretap Act. (Answer, ECF No. 58.)

The Parties conducted discovery and engaged in informal settlement conferences, exchanged mediation briefs, and participated in a formal mediation process before Judge Wells beginning on December 1, 2023.  (Stipulation & Order, ECF No. 60.)  The mediation process and efforts of Judge Wells proved successful, as the Parties reached an agreement in principle on January 18, 2024.  Since then, the Parties continued to negotiate the details of a fair and reasonable settlement, which is now before the Court.

The Court granted preliminary approval of the proposed class action settlement.  (Order Granting Preliminary Approval Class Action Settlement, ECF No. 63.)  The Court preliminarily certified a Settlement Class of approximately 180,000 people who established a digital subscription with Defendant between October 1, 2019, and January 16, 2024, and who also had a Facebook account.  Evidence provided by Plaintiffs establishes that following preliminary approval of the Settlement, Notice was sent to members of the Settlement Class in accordance with the approved notice plan.  (Steven Weisbrot, Esq. of Angeion Group, LLC, Re: Notice Implementation & Settlement Administration ("Weisbrot Decl.") ¶¶ 23-26, ECF No. 71-1.)  As of the October 27, 2024 deadline, there were 23,830 claims filed, only 4 requests for exclusion, and, most tellingly, zero objections to the Settlement or Class Counsel's motion for an award of attorneys' fees of $374,962.25; $15,000.00 for the reimbursement of reasonable litigation expenses; and $5,000.00 service awards for each of the two Class Representatives.  (*Id.*)

## II.    SUMMARY OF THE PROPOSED SETTLEMENT AGREEMENT:

### A.    The Settlement Class:

Under the terms of the Settlement Agreement, the Settlement Class is defined as:

> The approximately 180,000 individuals identified on the Settlement Class List generated by Defendant who established a digital subscription account with Defendant at any time from October 1, 2019 until January 16, 2024, and who used Facebook during that time.  Excluded from the Settlement Class are: (1) the Judge

presiding over this Action; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

(Motion for Preliminary Approval of Class Action Settlement, Ex. A., Declaration of John Macoretta ¶ 29, ECF No. 62-1.) The Settlement Class List is "the list generated by Defendant containing the full names, email addresses, and current or last known addresses where known for all persons who fall under the definition of the Settlement Class." (*Id*. at ¶ 30.)

**B.     Benefits Established by the Settlement Agreement:**

**1.     The Settlement Fund**:

The Settlement Agreement establishes a Settlement Fund of $1,125,000.00 which represents all of Defendant's financial obligations under the Settlement Agreement. The costs of Settlement notice and administration, attorneys' fees and litigation expenses, and service awards to Class Representatives are to be paid from the Settlement Fund. The resulting Net Settlement Fund will be used to pay all valid Claims. The value of the Settlement payment to each Settlement Class member will be determined by dividing the Net Settlement Fund amount by the number of valid Claims as approved by the Settlement Administrator, Angeion. (*Id*. at ¶¶ 16, 32-33.) Based on 23,830 claims and an estimated Net Settlement Fund of $650,080.50, the estimated settlement payment to each Class member is $27.30.

**2.     Business Practice Revisions:**

Defendant agreed to suspend operation of the Facebook or Meta Pixel on any pages of its website or app that track video content and have a URL that identifies the video content, or to obtain valid user consent that complies with requirements of the VPPA and the PA Wiretap Act.

**C.    Releases:**

In exchange for the Settlement benefits described *supra*, Settlement Class members agree to release any and all claims against Defendant as set forth in the Settlement Agreement. The release covers all claims that were asserted or could have been asserted by Settlement Class members related to or arising from Defendants' alleged actions and activities relating to its use of the Facebook or Meta Pixel.  (*Id.* at ¶¶ 24, 59-62.)

**D.    Attorneys' Fees, Litigation Expenses, and Service Awards:**

On November 22, 2024, Class Counsel filed a motion for an award of attorneys' fees of $374,962.25; $15,000.00 for the reimbursement of reasonable litigation expenses; and $5,000 service awards for each of the two Class Representatives.  (*See* Fee Petition, ECF No. 70.)  As will described in more detail hereinbelow, the requested attorneys' fees and expenses are reasonable and consistent with similar awards in similar cases.  The Service Awards are likewise reasonable and reflect the work Class Representatives performed in assisting Class Counsel throughout the litigation.

**E.    Expenses for Settlement Administration:**

Through December 31, 2024, Angeion has incurred $74,957.25 in Notice and administration costs for the Settlement.  Angeion has represented that it will provide a final number for these costs prior to distribution of Settlement payments to Settlement Class members. (Weisbrot Decl. ¶ 28.)

**III.    DISCUSSION:**

To approve the settlement, the Court must first certify the Settlement Class and determine that Notice to the Class was appropriate and in accordance with the preliminary order approving class action settlement.  The Court must then determine whether the settlement is fair, reasonable

and adequate.  The Court must also appoint Class Counsel to administer the settlement fund and

approve compensation for Class Counsel and the named Plaintiffs as class representatives.

**A.      The Proposed Class Meets the Requirements of Rule 23(a):**

The Court finds that the Settlement Class meets all of the requirements of Fed. R. Civ. P.

23(a).  Fed. R. Civ. P. 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all members only if: (1) the class is so numerous that joinder of all
> members is impracticable; (2) there are questions of law or fact common to the
> class; (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties will fairly and
> adequately protect the interests of the class.

**Numerosity:**

To establish numerosity, the Court must find that the proposed class is so numerous that

joinder of all class members is impracticable.  Fed. R. Civ. P. 23(a)(1).  The Parties in this case

have established that the Settlement Class consists of approximately 180,000 individuals who

established digital subscriptions with Defendant between October 1, 2019 and January 16, 2024,

and who had Facebook accounts.  This class size is sufficiently large that joinder of all members

would be impracticable.  *See, e.g., In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir.

2016) (numerosity met if potential number of plaintiffs exceeds 40); *Steward v. Abraham*, 275

F.3d 220, 226-227 (3d Cir. 2001) (stating in dicta, "No minimum number of plaintiffs is required

to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

Accordingly, this class satisfies the numerosity requirement of Rule 23(a).

**Commonality:**

Commonality requires the existence of at least one question of law and/or fact common to

the class members.  Fed. R. Civ. P. 23(a)(2).  A common question is one that "is capable of

class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A finding of commonality does not require that all class members share identical claims." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004). A "single common question is sufficient" to establish commonality. *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011).

Common questions in the case *sub judice* include whether Defendant knowingly disclosed Settlement Class members' personal viewing information to Meta, whether Defendant gave sufficient notice to Settlement Class members of such disclosure, and whether the information Defendant disclosed constitutes "personally identifiable information" under the VPPA. (ECF No. 63 at 3.) These are common questions subject to common proof that can be answered on a class-wide basis. Therefore, the Court finds questions of fact and law common to the Settlement Class.

**Typicality:**

To establish typicality, the claims of the named Plaintiffs must be typical of the claims of the class. The Court must discern whether the named Plaintiffs and the other members of the class are challenging the same unlawful conduct. The "typicality requirement [contained in Rule 23(a)(3)] is designed to align the interests of the class and the class representative so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004); *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."). Typicality is satisfied where Class representatives'

claims and those of the putative class members arise from the same conduct. *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2023 WL 6690705 at *4 (E.D. Pa. Oct. 12, 2023).

Here, Plaintiffs' claims are essentially identical to those of the other Settlement Class members. They are all predicated on the same alleged conduct by Defendant, and Defendant's liability does not depend on the individualized circumstances of Plaintiffs or any Settlement Class member. Accordingly, the proposed class satisfies the typicality requirement.

**Adequacy of Representation:**

The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement 'encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Ripley v. Sunoco, Inc.*, No. 10-cv-1194, 287 F.R.D. 300, 309 (E.D. Pa. 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181-182 (3d Cir. 2012). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). In the case *sub judice*, both prongs of the adequacy test are met.

First, there is no apparent conflict between the interests of the named Plaintiffs and the claims asserted on behalf of the Settlement Class. Therefore, the Court finds that the named Plaintiffs adequately represent the interests of the Settlement Class. Named Plaintiffs have no apparent interests antagonistic to those of the absent Settlement Class Members as demonstrated by the fact that, ultimately, named Plaintiffs seek to establish that Defendant disclosed their

video viewing habits without permission.  As such, each member of the Settlement Class, just like the named Plaintiffs, has a similar interest in recovering losses suffered as a result of the alleged wrongful conduct.

As will be discussed in more detail below, Class Counsel have represented to the Court that they possess extensive experience in class action litigation and have successfully reached an agreement to settle this matter.  Attorneys for the Settlement Class are qualified to represent the Settlement Class, and their performance is and was adequate to represent the interests of the Settlement Class.  Therefore, the second prong of the adequacy analysis has been satisfied.  *Diaz v. BTG International, Inc.,* No. 19-cv-1664, 2021 WL 2414580, at \*7-8 (E.D. Pa. 2021) (finding adequacy satisfied where the attorneys representing plaintiffs and the class were highly qualified and experienced in the subject litigation).

**B.      Class Certification is Appropriate Under Fed. R. Civ. P. 23(b)(3):**

Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) when common questions of law or fact "predominate" over individual questions, and a class action is "superior" to individual actions.  The Settlement Class satisfies both of these requirements.

**Predominance:**

The predominance requirement is similar to commonality and tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation.  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 49 (E.D. Pa. 2019), *aff'd sub nom.* 967 F.3d 264 (3d Cir. 2020).  The questions of law and fact discussed *supra* that are common to the Settlement Class predominate over any individual questions and can be answered with the same evidence: evidence of Defendant's installation of the Meta Pixel on its website; evidence as to what information, if any, Meta received from

10

Defendant via the Meta Pixel; and whether Settlement Class members were notified of and/or given enough information to consent to the disclosure of their information to Meta when they opened a digital subscription with Defendant.  Thus, predominance is satisfied.

**Superiority:**

Rule 23(b)(3)'s superiority requirement requires the court to consider "class members' interest in pursuing separate actions, the extent of any independent litigation already begun by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of a class action."  *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 208 (E.D. Pa. 2016).  Here, any Settlement Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of a class action.  Approximately 180,000 individuals had digital subscriptions to Defendant's website or app and Facebook accounts during the Settlement Class period.  Setting these claims in the context of a class action conserves private and judicial resources and hastens Settlement Class members' recovery.  Moreover, the fact that there were no class members who objected to this Settlement and only 4 opt-outs (representing less than 0.002 percent of the Settlement Class) also supports a finding that the superiority element has been satisfied.  Finally, because there are no other pending cases asserting the same claims, concentrating the litigation in a single forum is desirable.  *See Katz v. DNC Servs. Corp.*, No. 16-cv-5800, 2024 WL 454942, at *6 (E.D. Pa. Feb. 6, 2024).

**C.    Notice to the Settlement Class was Appropriate and in Accordance with the Order Preliminarily Approving Class Action Settlement:**

Plaintiff provided evidence to establish that Notice to the Settlement Class was appropriate and in accordance with the Order entered by this Court that preliminarily approved the Class Action Settlement.  (Order Granting Preliminary Approval Class Action Settlement,

ECF No. 63; Weisbrot Decl. ¶¶ 8-16.).  Therefore, the Court finds that Notice to the Settlement Class was adequate and appropriate.

**D.    The Settlement is Fair, Reasonable and Adequate After Evaluating and Weighing the Factors Set Forth in Fed R. Civ. P. 23(e)(2) and *Girsh v. Jepson*:**

This Court has found that the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(a) and 23(b).  This Court has also found that the requirements for notice to the Settlement Class have been met.  Prior to final approval of a class action settlement the Court must also determine whether the terms of the settlement agreement are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The terms of the settlement agreement itself must be reviewed to determine if the settlement is "fair, reasonable and, adequate."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (citing Fed. R. Civ. P. 23(e)(2).)  The Court must also keep in mind that "the law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding litigation."  *Id.* at 784.  In conducting the analysis of whether a settlement is "fair, reasonable and adequate", the Court weighs the relevant factors set forth in Federal Rule of Civil Procedure 23(e)(2) to determine whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts located in the Third Circuit also evaluate whether a settlement is "fair, reasonable and adequate" by applying the test set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d. Cir. 1975), which requires analysis and balancing of the following nine factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risk of litigation.

*Girsh*, 521 F.2d at 157.

The Court will now evaluate and weigh the factors set forth in Fed. R. Civ. P. 23(e)(2) and *Girsh* to determine whether the settlement is fair, reasonable and adequate to warrant final approval.

**E.    The Court's Evaluation of Factors Set Forth in Fed. R. Civ. P. 23(e)(2) Support Final Approval of the Settlement Agreement:**

**1.    Class Counsel and Representatives Adequately Represent the Settlement Class:**

Rule 23(e)(2)(A)'s requirement that "class representatives and class counsel have adequately represented the class" is easily met.  Plaintiffs' motion for an award of attorneys' fees and costs along with the supporting documentation and exhibits describes the work performed by Class Counsel on behalf of the Settlement Class from the inception of the case, over the course of the litigation, during settlement negotiations, and throughout the claims process.  (Plaintiffs' Motion and Supporting Memorandum for (A) an Award of Attorneys' Fees, (B) Reimbursement of Litigation Expenses, and (C) Service Award for the Class Representatives, ECF Nos. 70, 70-1, 70-2 & 70-3.)  The Class Representatives aver that they devoted considerable time and effort assisting Class Counsel during the litigation in reviewing the Complaint and other filings,

searching for documents in response to discovery requests, responding to written discovery, and engaging in a day-long mediation session to resolve the case for the Settlement Class. (*Id.*)

2.       **The Settlement Is the Result of Arm's Length Negotiations:**

Another element of procedural fairness mandated by Rule 23(e)(2)(B) is that the settlement "was negotiated at arm's length."  The Settlement is the result of non-collusive, good faith negotiations between experienced counsel to resolve the case at an early stage before costly discovery, dispositive motion, or trial.  Plaintiffs' and Defendant's participation in a full day of mediation before Magistrate Judge Wells is further evidence of arm's length negotiations. *See, e.g., Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-cv-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.").  The Parties continued the negotiations over the course of the next five months to finalize the Settlement Agreement.  Class Counsel engaged in discussions with both Defendant's Counsel and Defendant's insurance counsel, and the Parties also worked with Magistrate Judge Wells to confirm Defendant's representations about its financial status.  These facts taken together weigh in favor of finding that the terms of the settlement are fair, reasonable and adequate warranting final approval.

3.       **The Settlement Provides Adequate Recovery to the Settlement Class:**

Rule 23(e)(2)(C)'s requirement that the settlement provide adequate relief for the class largely overlaps with the *Girsh* factors.  *See, e.g., Diaz*, 2021 WL 2414580, at *5 n.4 (recognizing that the factors in Rule 23(e)(c) codify the *Girsh* factors); *Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) (same); *Katz v. DNC Servs. Corp.*, 2024 WL 454942, at *7 (E.D. Pa. Feb. 4. 2024) ("Rule 23(e)(2)(C)(i) partly echoes the first

*Girsh* factor"). Therefore, the *Girsh* factors and the adequacy of recovery are discussed in greater detail hereinbelow.

The other subparts of Rule 23(e)(2)(C) are also satisfied and weigh in favor of final approval of the Settlement. Rule 23(e)(2)(C)(ii) requires the Court to consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

In the case *sub judice*, the Notice plan preliminarily approved by the Court and administered by Angeion was clearly effective, as approximately 99 percent of the Settlement Class received notice, and 23,380 claims were filed. (Weisbrot Decl. ¶¶ 23, 30.) The Rule 23(e)(2)(C)(iii) subpart regarding the "terms of any proposed award of attorneys' fees" also weighs in favors of final approval because the requested attorneys' fees are reasonable as described in Class Counsel's Fee Petition. (*Plaintiffs' Motion and Supporting Memorandum for (A) an Award of Attorneys' Fees, (B) Reimbursement of Litigation Expenses, and (C) Service Award for the Class Representatives*.) Finally, the only agreement at issue is the Settlement Agreement itself – there is no other agreement that is "required to be identified under Rule 23(e)(3)," so the Rule 23(e)(2)(C)(iv) subpart is also satisfied.

**4.    The Plan of Allocation is Reasonable and Treats Settlement Class Members Equitably Relative to Each Other:**

The Settlement also satisfies Rule 23(e)(2)(D)'s requirement that it "treat[] class members equitably relative to each other." Under the Settlement, each Settlement Class member is afforded the same financial and equitable relief. All Settlement Class members who submit valid claim forms will receive a *pro rata* settlement payment from the Settlement Fund. (Macoretta Decl. ¶ 33, ECF No. 62-1.) Additionally, and perhaps even more importantly, Defendant has agreed to prospectively suspend operation of the Meta Pixel on any pages of its

website or app that track video content and have a URL that identifies the video content viewed. (*Id.* at ¶ 43.)  This change in Defendant's business practices will benefit all Settlement Class members equally.

**F.    The Settlement Agreement Appears Fair, Reasonable and Adequate after Balancing and Weighing the Factors Set Forth in *Girsh v. Jepson*:**

**1.    The Complexity, Expense and Likely Duration of Litigation:**

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'"  *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535-36); see also *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812.  Approval of the Settlement Agreement makes sense under the circumstances because this litigation carries a high probability of high costs in both time and money if it is continued until final disposition on its merits.  Given the complex technical nature of data privacy cases such as this one, and the fact that it involves unsettled questions of law related to the VPPA and PA Wiretap Act, any dispositive decision could potentially result in costly appellate litigation.  Therefore, final approval of the class action Settlement Agreement will significantly reduce litigation expenses to both Parties which supports finding the Settlement Agreement fair, reasonable, and adequate.

**2.    Reaction of the Class to the Settlement:**

The settlement fund administer, Angeion, provided evidence to establish that it mailed Notice to all Settlement Class members, advising them of the terms of the settlement agreement, proposed attorneys' fees and special awards, and their right to file written objections prior to the Final Fairness Hearing.  (Weisbrot Decl. ¶ 30.)  There were 23,830 claims filed by the October 27, 2024, deadlines. (*Id.* 23, 30.)  Neither the Plaintiffs nor the Court received any objections to the the class action settlement, and only four Settlement Class members requested to exclude

themselves.  (Weisbrot Decl. ¶ 24.)  These facts support find that the proposed settlement is fair, reasonable and adequate.  *See In re Onix Group, LLC Data Breach Litig.*, No. 23-cv-2288, 2024 WL 5107594, at *9 (E.D. Pa. Dec. 13, 2024) (a "minimal number of objections and requests for exclusion" favor final approval).

### 3.      The Stage of the Proceedings and the Amount of Discovery Completed:

The third *Girsh* factor "asks whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Onix*, 2024 WL 5107594, at *9.  The Court is confident that Class Counsel developed a clear opinion as to the value of this case, and that they have "a fairly accurate view of continued litigation."  *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *10 (E.D. Pa. Sept. 24, 2019).  Before filing the initial complaint, Class Counsel thoroughly investigated Defendant's website and the Meta Pixel and researched the caselaw interpreting and applying both the VPPA and PA Wiretap Act.  Defendant filed a motion to dismiss, which the Parties fully briefed.  The Court ultimately denied Defendant's motion to dismiss.  Class Counsel also reviewed discovery produced by Meta in response to a third-party subpoena and responded to discovery propounded by Defendant.  The Parties attended formal mediation and negotiated the Settlement over the course of several months.  Therefore, the third *Girsh* factor weighs in favor of finding that settlement of disputed claims is fair, reasonable and adequate.  *See In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *8 (E.D. Pa. Oct 12, 2023) (finding the third *Girsh* factor weighed in favor of approval despite limited discovery where the parties "exerted significant effort in the settlement negotiation").

### 4-6.      The Risk of Establish Liability and Damages:

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d at 814.  This inquiry "survey[s] the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 319 (3d Cir. 1998).  To determine if the settlement offer is fair, reasonable and adequate the likelihood of establishing liability must be evaluated in conjunction with the ability to obtain a damage award in excess of the settlement offer – in this case an amount in excess of $1,125,000.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 237-239 (3d Cir. 2001).

By its very nature, continued litigation involves inherent risk of Plaintiff receiving an adverse result – especially considering the cutting-edge areas of data privacy law involved in this litigation.  *See In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty" in litigating.).  Finally, even if the litigation proceeded to the class certification stage and the Court certified a litigation class, there is a risk that the class could be de-certified.  *See In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 312 (3d Cir. 1998) (recognizing there "will always be a 'risk' or possibility of decertification").  For that reason, these three factors also weigh in favor of finding that the settlement of disputed claims is fair, reasonable and adequate.

### 7.    The Ability of Defendant to Withstand a Greater Judgment:

The seventh *Girsh* factor – the ability of Defendant to withstand a greater judgment – is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *In re NFL Players Concussion Inj. Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015).  Defendant's ability to withstand a greater judgment at trial is highly relevant here.  After the Parties engaged in

mediation, Magistrate Judge Wells conducted an *in camera* review of Defendant's audited financial statements to confirm Defendant's representations about its financial status and ability to withstand a greater judgment. Under the circumstances, it would appear that Defendant's offer to settle disputed claims is fair, reasonable and adequate.

**8-9.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risk of Litigation:**

The test for whether settlement is reasonable in light of the best possible recovery "test[s] two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Flonase Antitrust Litig.*, No. 08-cv-3149, 951 F. Supp. 2d 739, 745 (E.D. Pa. June 14, 2013) (citing *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d at 538). As the Third Circuit has explained, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

As discussed hereinabove, the Settlement Agreement is reasonable in terms of the best possible recovery for the Settlement Class weighed against the risks associated with continued class action litigation up to and including trial. Plaintiffs potentially face litigating a costly and time-consuming case with the possible risk of recovering no financial compensation for the Settlement Class. In contrast, final approval of the Settlement Agreement provides guaranteed financial compensation to the Settlement Class members in the form of monetary benefits while at the same time the settlement provides enhanced privacy protections. Additionally, the Settlement is comparable with other data privacy settlements involving VPPA claims that have received final approval. *See, e.g., Feldman v. Star Tribune Media Company LLC*, No. 22-cv-

1731, 2024 WL 3026556 (D. Minn. June 17, 2024) (granting final approval of a $2.9 million

settlement for over 300,000 potential class members in a VPPA case); *Fiorentino v. FloSports,*

*Inc.*, No. 22-cv-11502, ECF No. 76 (D. Mass. Mar. 5, 2024) (final approval of a $2,625,000

settlement for a class numbering hundreds of thousands).  Thus, the final *Girsh* factor supports

approval of the Settlement Agreement.

**G.    Spector, Roseman & Kodoff, P.C., and Goldenberg Schneider, LPA, Fairly and Adequately Represent the Interests of the Settlement Class:**

Federal Rule 23(g) specifies that, unless a statute provides otherwise, a court that certifies

a class must appoint Class Counsel, and that an attorneys appointed to serve as Class Counsel

"must 'fairly and adequately represent the interests of the class.'"  *Donovan v. St. Joseph County*

*Sheriff*, No. 11-cv-0133, 2012 U.S. Dist. LEXIS 63847, 26 (N.D. Ind. May 3, 2012) (quoting

Fed. R. Civ. P. 23(g)(4)).  Rule 23(g) directs consideration of: "(i) the work counsel has done in

identifying or investigating potential claims in the action; (ii) counsel's experience in handling

class actions, other complex litigation, and the types of claims asserted in the action; (iii)

counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

representing the class."  *In re: Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 262 (E.D.

Pa. 2012) (citing Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv)).

When ruling on competing dual motions to appoint interim class counsel, the Court

previously found that attorneys employed by Spector Roseman & Kodroff, P.C., and Goldenberg

Schneider, L.P.A., where qualified to represent the proposed class.  (Order, ECF No. 27.)  The

Court applies that same logic and reasoning previously applied when ruling on motions to

appoint interim class counsel and will now appoint Spector Roseman & Kodroff, P.C., and

Goldenberg Schneider, L.P.A., as Co-Lead Class Counsel to represent the Settlement Class.

Both firms have established that they possess prior experience litigating similar privacy data

breach class actions and in handling complex litigation. (Motion for Appointment of Spector, Roseman & Kodroff and Goldenberg Schneider as Interim Class Counsel, ECF No. 22.) They appear well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement. (*Id.*) As explained throughout this Memorandum and accompanying Order, Class Counsel expended substantial amounts of time and energy investigating the various claims, drafting pleadings which included to the Amended Class Action Complaint, and responding to Defendant's motion to dismiss. Class Counsel also invested time and energy in negotiating a settlement and drafting the motion for preliminary and final approval of the class action settlement. Therefore, the Court appoints Spector Roseman & Kodroff, P.C., and Goldenberg Schneider, L.P.A., as Co-Lead Class Counsel.

**H.      Motion for Award of Attorneys' Fees, Costs and Class Representative Awards:**

**1.      Award of Attorneys' Fees and Expenses:**

Plaintiffs' attorneys in a class action may petition the court for compensation for any award to the class resulting from the attorneys' efforts. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Under Fed. R. Civ. P. 23, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Courts utilize two main approaches in analyzing a request for attorneys' fees by class counsel: the percentage-of-recovery method and the lodestar method. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). Under the percentage-of-recovery method, "the court awards counsel a percentage of the amount recovered for the class in order to reward counsel for their success or penalize them for their failure." *Local 56, United Food and Commer. Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1003 (D. N.J. 1997) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)). The lodestar method, on the other hand, "calculates fees by

multiplying the number of hours expended by some hourly rate appropriate for the region and for the experience of the lawyer." *In re GMC. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 n. 37 (3d Cir. 1995). The Third Circuit favors the percentage-of-recovery method in common fund cases. *Sullivan*, 667 F.3d at 330; *Local 56, United Food and Commer. Workers Union v. Campbell Soup Co.,* 954 F. Supp. at 1003; *Corra v. ACTS Retirement Services, Inc.*, No. 22-cv-2917, 2024 WL 22075, at *10 (E.D. Pa. Jan. 2, 2024). A one-third flat percentage fee award has been approved in data privacy case that resolved by settlement. *See In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (awarding 33% of the common fund).

At inception of this litigation, Class Counsel faced the very real prospect of obtaining no financial recovery for their clients; therefore, the contingency arraignment is appropriate. Class Counsel invested significant time and resources into litigating a novel, complex case – devoting over 705 hours to litigating the matter since the complaint was first filed in 2022. (Declaration of Diana J. Zinser, Esquire ("Zinser Decl.") ¶ 19; ECF No. 70-1.) Counsel drafted a Complaint, responded to a motion to dismiss, reviewed discovery and negotiated a class action settlement. Counsel then filed motions in connection with preliminary and final approval of class action settlement. Class Counsel obtained a monetary settlement for the Settlement Class – as well as even more valuable privacy protections – by settling this litigation prior to resolving uncertain questions about liability and damages at summary judgment or trial. Class Counsel represented the Settlement Class on a fully contingent basis, risking delay in payment or even non-payment. *See Fulton-Green*, 2019 WL 4677954 at *13 ("Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis."). *Carroll v. General Mills, Inc.*, No. 23-cv1746, 2023 WL 6373868

(C.D. Cal. Sept. 1, 2023); *Salazar v. Paramount Global*, 683 F. Supp. 3d 727 (M.D. Tenn. 2023); *Carter v. Scripps Network, LLC*, No. 22-cv-2031, 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023). These factors provide clear support for the Court's approval of the percentage-of-recovery, contingency agreement requested by Class Counsel.

Approval of the percentage-of-recovery method of awarding attorneys' fees furthers the public policy goals established by the Third Circuit Court of Appeals. The Third Circuit has reasoned that the goal of a percentage-of-recovery award is to ensure "that competent counsel continue to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *see also In re TikTok*, 617 F. Supp. 3d at 941 ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel.").

Approval of the percentage-of-recovery method of calculating attorneys' fees is also consistent with the results reached in other similar data privacy cases alleging violations of the VPPA which resulted in attorneys' fee awards comparable to the fee sought here. *See, e.g., Fiorentino v. FloSports, Inc.*, No. 22-cv-11502, ECF No. 76 (D. Mass. Mar. 5, 2024) (approving attorneys' fees of $875,000, or one-third of $2,625,000 settlement fund in a VPPA case); *Beltran v. Sony Pictures Entertainment, Inc.*, No. 22-cv-04858, ECF No. 54 (N.D. Ill. Dec. 19, 2023) (approving attorneys' fees of one-third of the $16 million settlement fund, or $5,333,333.33, in case alleging VPPA violations); *Ambrose v. Boston Globe Media Partners LLC*, No. 22-cv-10195, ECF No. 61 (D. Mass. Aug. 10, 2023) (approving attorneys' fees of $1,666,666.67, or one-third the common fund, in VPPA case). Because Class Counsel's percentage-of-recovery fee request is consistent with the one-third approved in other VPPA cases, this factor supports approval of the requested fees.

It is appropriate to use the lodestar method '"to cross-check the reasonableness of a percentage-of-recovery fee award."' *Sullivan*, 667 F.3d at 330. The lodestar cross check "is performed by dividing the total recovery requested under the percentage-of-recovery method by counsel's lodestar value, yielding a 'lodestar multiple.'" *In re Domestic Drywall Antitrust Litig.*, MDL No. 2437, No. 13-MD-2437, 2018 WL 3439454, at *3 (E.D. Pa. July 17, 2018).

As of October 28, 2024, Plaintiffs' Counsel had spent 705 hours litigating this case for the benefit of the Settlement Class. (Zinser Decl. ¶ 19.) These hours were spent investigating claims, preparing the Class Action Complaint, opposing Defendant's motion to dismiss, preparing discovery requests and responding to Defendant's requests, extensive negotiating with Defendant and working with Magistrate Judge Wells, drafting the settlement agreement, preparing settlement notices and responding to Class Members' communications about the settlement, and drafting the motion for preliminary approval. (*Id.* ¶¶ 19, 21.) Class Counsel spent additional time drafting the motion for final settlement approval and attending the Final Fairness Hearing. The reasonable hourly rates and time expended result in a total lodestar of $562,088.25. Dividing Class Counsel's requested attorney's fees of $374,962.25 by the total lodestar yields a multiplier of 0.667. (*Id.* ¶ 23.) This negative multiplier is well below the accepted range within the Third Circuit. *Caroll v. Stettler*, No. 10-2262, 2011 WL 5008361, at *6 (E.D. Pa. Oct. 19, 2011) ("A lodestar multiplier of less than one reveals that the fee request constitutes only a fraction of the work that the attorneys billed and is within the accepted range in the Third Circuit."). Accordingly, the lodestar cross-check further supports the reasonableness of Class Counsel's fee request.

As previously mentioned hereinabove, no member of the Settlement Class filed an objection to the Settlement Agreement or the Class Counsel's motion for attorneys' fees and

costs.  For these reasons, the Court will grant Class Counsel's request for attorneys' fees and costs to be paid from the settlement fund.

2.        **Award to Named Plaintiffs as Class Representatives:**

Named Plaintiffs Jason Braun and Stephanie Carter are appointed as Class Representatives.  Each Class Representative now seeks a $5,000.00 service award for a total award of $10,000.00 to be paid from the Settlement Fund to which there is no objection from the Settlement Class.  "The approval of contribution or incentive awards is common, especially when the settlement establishes a common fund."  *In re CertainTeed Fiber Cement Siding Litig.*, No. MDL 2270, 303 F.R.D. 199, 225 (E.D. Pa. March 20, 2014) ('''The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'''').  Factors that courts consider in determining service awards include the risks to the plaintiffs in commencing the litigation (financially and otherwise), the extent of the plaintiffs' personal involvement in the lawsuit, the duration of the litigation, and the plaintiffs' personal benefits (or lack thereof) purely in their capacity as members of the class.  *See McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014).

Class Representatives have expended substantial time and effort on this litigation.  They sought counsel to assist them (and other Class Members) in initiating this lawsuit and enforcing their rights against Defendant.  Throughout the litigation, they provided relevant documents, responded to discovery, reviewed pleadings, met with Class Counsel and were responsive by phone and email.  (Zinser Decl. ¶¶ 25, 26.)  Under these circumstances, the $5,000.00 service award to each named Class Representative is reasonable and warranted.  *See, e.g., Clemens v.*

*ExecuPharm, Inc.*, No. 20-cv-3383, 2024 WL 4530310 (E.D. Pa. Oct. 1, 2024) (granting final approval of $5,000 service award in data breach class action settlement); *Diaz v. BTG Int'l Inc.*, Case No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021) (approving $10,000 service awards for each of two Class Representatives); *Feldman v. Star Tribune Media Company LLC*, 2024 WL 3026556 (D. Minn. June 17, 2024) (finding $5,000 service award reasonable in a VPPA settlement); *In re Google Location History Litig.*, No. 5:18-cv-05062, 2024 WL 1975462 (N.D. Cal. May 3, 2024) (granting final approval of $5,000 service awards to individual class representatives in data privacy settlement); *Starts v. Little Caesar Enterprises, Inc.*, No. 1:19-cv-01757, ECF No. 120 (N.D. Ill. Dec. 20, 2023) (granting final approval of $15,000 service award to individual class representative in data privacy settlement).

## IV.    CONCLUSION:

For these reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff Case Contribution Award will be granted.  Appropriate Orders will be entered.

BY THE COURT:

   /s/ John Milton Younge   
Judge John Milton Younge